Matthew B. Lehr (Bar No. 213139)
Suong T. Nguyen (Bar No. 237557)
David J. Lisson (Bar No. 250994)
Chung G. Suh (Bar No. 244889)
Jeremy Brodsky (Bar No. 257674)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone:  (650) 752-2000
Facsimile:   (650) 752-2111

Attorneys for Plaintiff
Tyco Healthcare Group LP
d/b/a VNUS Medical Technologies

(additional counsel on signature page)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP d/b/a VNUS MEDICAL TECHNOLOGIES, <br><br>  Plaintiff, <br><br> v. <br><br> BIOLITEC, INC., DORNIER MEDTECH AMERICA, INC., and NEW STAR LASERS, INC. d/b/a COOLTOUCH, INC., <br><br> Defendants. | LEAD CASE NO. C08-03129 MMC <br><br> CASE NO. C08-3129 MMC <br><br> **JOINT STATEMENT CONCERNING EXPERT DISCOVERY DISPUTE** |
| TYCO HEALTHCARE GROUP LP d/b/a VNUS MEDICAL TECHNOLOGIES, <br><br>  Plaintiff, <br><br> v. <br><br> TOTAL VEIN SOLUTIONS, LLC d/b/a TOTAL VEIN SYSTEMS, <br><br> Defendant. | CASE NO. C08-04234 MMC <br> (consolidated with Case No. C08-03129 MMC) |

Pursuant to Item 8 of Magistrate Judge Larson's Standing Orders, Plaintiff Tyco Healthcare Group LP d/b/a VNUS Medical Technologies ("VNUS") and Defendant Total Vein Solutions, LLC d/b/a Total Vein Systems ("TVS") respectfully submit this Joint Statement outlining the parties' dispute concerning TVS's expert opinions of non-enablement.[1]

This is a patent infringement case brought by VNUS against TVS and three other defendants. These defendants have asserted various counterclaims against VNUS, including claims of patent invalidity. On May 7, 2010, TVS served expert reports from Dr. Wayne Gradman ("Gradman") and David Draper ("Draper"), both of which included opinions that the patents asserted by VNUS in this lawsuit are invalid for non-enablement. Upon receiving the reports, VNUS informed TVS that it objected to the non-enablement opinions as untimely under the Court's November 20, 2009 scheduling order, which set a deadline of April 2, 2010 for expert reports on issues for which the parties bear the burden of proof. Counsel for TVS responded that the non-enablement portions of the Draper and Gradman reports were offered to rebut opinions presented in the report of VNUS's expert, Dr. Robert T. Andrews ("Andrews"), and were thus timely served. The parties exchanged correspondence and met and conferred on May 13 and 17. While the parties were able to resolve two other issues related to expert discovery, they were unable to reach a resolution regarding TVS's non-enablement opinions. Accordingly, VNUS now requests that the opinions relating to enablement be struck and that TVS be precluded from relying on those opinions in motions or at trial. TVS opposes this request.

**1. VNUS's Position**

The Court's November 20, 2009 order set a deadline of April 2, 2010 for expert reports on issues for which the parties bear the burden of proof. Instead of submitting any expert reports on that date, however, TVS served VNUS with written notice of its intent to rely on non-enablement opinions expressed in expert reports timely served by its co-defendant biolitec, Inc. Presumably due to the late retention of its own experts, TVS attempted to submit non-enablement opinions a

---

[1] On March 8, 2010, Judge Chesney referred all discovery matters to a Magistrate Judge to be heard and considered at the assigned Magistrate Judge's convenience. On March 10, 2010, the Honorable Judge Larson was assigned as the Magistrate Judge in this matter.

1
JOINT STATEMENT CONCERNING EXPERT DISCOVERY DISPUTE
CASE NOs. C08-03129 MMC & C08-04234 MMC

1  month later—on the same day that rebuttal reports were due—by bootstrapping them to non-
2  infringement opinions properly served in rebuttal to VNUS's infringement expert report.  TVS's
3  unjustifiably late submission of expert opinions concerning enablement violated the Court's order
4  and prejudiced VNUS, whose rebuttal experts submitted reports without opportunity to respond.
5        Under FED. R. CIV. P. 26(a)(2)(C), "[a] party must make [expert disclosures] at the times
6  and in the sequence that the court orders."  Rule 26 and the Court's scheduling orders ensure the
7  orderly completion of discovery and avoid unfair surprise and prejudice to litigants.  See Thibeault
8  v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) ("Rule 26 promotes fairness both in the
9  discovery process and at trial.").  Pursuant to FED. R. CIV. P. 37(c)(1),  "[i]f a party fails to provide
10 information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use
11 that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the
12 failure was substantially justified or is harmless."  See also Pickern v. Pier 1 Imports (U.S.), Inc.,
13 457 F.3d 963, 969, n.5 (9th Cir. 2006) (affirming the exclusion of expert testimony disclosed after
14 the scheduling deadline); Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th
15 Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any
16 information required to be disclosed by Rule 26(a) that is not properly disclosed.").
17       TVS, as the party asserting patent invalidity for non-enablement, undeniably bears the
18 burden of proof on that issue.  See WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1355
19 (Fed. Cir. 1999); Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc., 501 F.3d 1274, 1281 (Fed. Cir.
20 2007).  Accordingly, TVS faced an April 2, 2010 deadline to disclose any expert opinions
21 regarding non-enablement.  There is no justification for TVS's month-long delay.  The Court's
22 scheduling order put the parties on notice of the deadline for opening expert reports months before
23 they were due.  TVS could have retained its experts with ample time to prepare and timely disclose
24 their non-enablement opinions, particularly in view of its pre-existing relationships with these
25 individuals.  Gradman is a long-standing TVS customer, and Draper has been a TVS laser service
26 consultant since 2009.
27       In contrast to TVS, other parties in this case complied with the Court's scheduling order.
28 On April 2, 2010, VNUS submitted expert reports on infringement and damages, the issues on

1  which it bears the burden of proof.  On the same day, TVS's co-defendant, biolitec, Inc., submitted
2  four expert reports concerning invalidity issues, including non-enablement.  On May 7, 2010,
3  VNUS submitted its rebuttal expert reports responding to biolitec's invalidity opinions.  VNUS's
4  experts were clearly unable to respond to TVS's non-enablement opinions, however, since they
5  were due the same day.  VNUS would be prejudiced if TVS is permitted to rely on expert opinions
6  to which VNUS's experts could not respond.  Even if VNUS's experts were permitted to update
7  their reports, requiring them to do so would cost VNUS additional time, effort and expense.

8        In an attempt to circumvent the deadlines set for expert discovery, TVS now disingenuously
9  suggests that its non-enablement opinions somehow "rebut" VNUS's April 2, 2010 expert reports
10 and are therefore timely.  Contrary to TVS's unsupportable assertion, neither of VNUS's expert
11 reports submitted on April 2, 2010 contain enablement opinions.  Rather, they opine on issues for
12 which VNUS bears the burden of proof:  infringement and damages.  In any event, even if VNUS's
13 April 2, 2010 expert reports had included opinions of enablement, the Court's scheduling order
14 nonetheless required TVS to provide its opinions on that issue on the same day.  Pursuant to Rules
15 26 and 37, VNUS accordingly requests that the non-enablement opinions in the Gradman and
16 Draper reports be struck and that TVS be precluded from relying on such opinions.  VNUS also
17 may seek attorneys' fees and expenses resulting from TVS's untimely disclosure and its baseless
18 refusal to strike those opinions.  See FED. R. CIV. P. 37(c)(1)(A).

19     **2.  TVS's Position**

20       TVS asserts: (1) that the disputed portions of the Gradman and Draper opinions are proper
21 rebuttal opinions in response to expert opinions proffered by VNUS relating to issues of
22 enablement; and (2) that even, for arguments sake, if this Court determines that those portions of
23 the Gradman and Draper reports are not properly characterized as rebuttal reports, good cause
24 exists to allow TVS's submission of the entire reports and VNUS will suffer no prejudice if the
25 reports are admitted in full.  The expert discovery deadline in this case has not passed and VNUS
26 still has a full opportunity to explore the opinions of TVS's experts at depositions.  Gradman and
27 Draper possess important rebuttal opinions on the issues of enablement.  Good cause and the
28 interests of fairness support that the trial Court should have the benefit of their expertise.

1     First, despite VNUS's claims to the contrary, the portions of the Gradman and Draper
2  reports directed to enablement are in direct response to portions of VNUS's expert, Andrews, who
3  in fact does opine on enablement issues.  As commonly noted in the criminal context, when a party
4  presents evidence which opens a door, that party "cannot now complain that the [opposing party]
5  stepped through that door and rose to the challenge he presented."  U.S. v. Frazier, 387 F.3d 1244
6  (11th Cir. 2004) (brackets added).  The same principle should apply here.  The Andrews report
7  opened a door by including opinions, that although styled as infringement opinions, assert that the
8  laser-based embodiments of the patents-in-suit were fully enabled.  (See, e.g, Andrews Report at
9  11, "In all meaningful ways, the procedures for and clinical outcomes with the VNUS Closure
10 technique and those of the various laser systems for endovenous ablation are nearly identical.
11 These procedures are covered by the patent claims at issue in this lawsuit and addressed in this
12 report;" see also Id. at 37, "Laser energy and thermal energy are both among the forms of energy
13 covered by the Patents-in-Suit…"; Id. at 57, "The application of laser energy generates intense, but
14 localized, heat within the vein.  As previously explained and demonstrated with citation to
15 representative evidence relating to the Defendants' Accused Products, the resulting thermal damage
16 to connective tissue of the vein wall causes a reduction in vein diameter and ultimate occlusion of
17 the vein."; Id. at 58, "A lengthy occlusion is formed along this area by virtue of physicians'
18 pullback of a fiber (see Sections VI.A.8) while the laser console is activated and energy is being
19 delivered to and along the vein."; Id. at 94, "Endovenous ablation procedures, as performed today,
20 are complex and were unknown and unaccepted in the medical field until after the commercial
21 release of Closure in 1999.").  These statements are just a few examples of Andrews testifying to
22 the scope of the patent and how the allegedly claimed methods are performed by those skilled in the
23 art – in short, enablement issues.
24     Second, even if VNUS can establish that the disputed portions of the Gradman and Draper
25 reports constitute non-rebuttal opinions, and were thus presumably filed after the deadline, the
26 Court should not strike such opinions as untimely since VNUS will suffer no prejudice if the
27 opinions are admitted.  Contrary to VNUS's assertion, TVS exhibited no dilatory conduct in
28 submitting its expert opinions and timely submitted notice to VNUS of its intent to rely on expert

1  opinions on issues of non-enablement.  TVS timely and specifically adopted the opinions submitted
2  by the experts retained by co-defendant biolitec, Inc. ("biolitec"), including the opinion of Dr.
3  Victor Ross on laser non-enablement, since non-enablement is a common defense.  Thus, TVS did
4  timely adopt an opinion on enablement, to which VNUS timely submitted the rebuttal report of Dr.
5  Warren Grundfest.  To the extent the Draper and Gradman reports contain enablement opinions in
6  addition to those contained in Dr. Ross's report, such additions are very limited rebuttals to
7  statements made by Andrews.  Moreover, VNUS still has the opportunity to depose Gradman and
8  Draper at their upcoming scheduled depositions on all topics contained in their reports, including
9  their non-enablement views.  It is disingenuous for VNUS to allege it is suffering some severe
10 harm, when in fact it already has its own laser enablement expert report submitted by Dr.
11 Grundfest, and it has ample time to prepare an examination of Gradman and Draper at their
12 depositions.
13         In the patent case context, this Court has refused to strike rebuttal opinions which are
14 asserted to be untimely submitted after the expert report deadline when good cause exists for such a
15 rebuttal.  In Ultratech Inc. v. Tamarack Scientific Co., 2005 WL 856408 at *2-3, Magistrate Judge
16 Larson denied a motion to strike Tamarack's rebuttal expert report, despite the report containing
17 opinions on issues Tamarack carried the burden of proof on and being filed two months after the
18 expert deadline and one month after the rebuttal expert deadline.  Magistrate Larson noted that,
19 despite Ultratech's argument that the opinion violated Rule 26 and contained invalidity opinions on
20 which Tamarack carried the burden, Tamarack had good cause to enter the opinion based on new
21 constructions of terms at issue.  Id.  Likewise, here TVS has good cause to submit the non-
22 enablement portions of the Gradman and Draper reports because VNUS is laying the groundwork
23 for its own enablement opinions under the guise of an infringement expert report.  In addition,
24 VNUS accuses TVS of infringing acts amounting to tens of millions of dollars in damages.
25 Allowing the full reports of Gradman and Draper will promote the just resolution of this case on the
26 merits, substantial justice, and fair play.  Since VNUS cannot substantiate any real prejudice, and
27 since TVS has good cause, the Court should deny the Motion to Strike and allow the full opinions
28 of Gradman and Draper to be considered.

5
JOINT STATEMENT CONCERNING EXPERT DISCOVERY DISPUTE
CASE NOs. C08-03129 MMC & C08-04234 MMC

| | | |
|---|---|---|
| 1 | Dated:   May 25, 2010 | Respectfully Submitted, |
| 2 | | ATTORNEYS FOR PLAINTIFF<br>VNUS TYCO HEALTHCARE GROUP LP d/b/a |
| 3 | | MEDICAL TECHNOLOGIES |
| 4 | | |
| 5 | | By:  /s/ Diem-Suong T. Nguyen |
| 6 | | Matthew B. Lehr (Bar No. 213139)<br>Diem-Suong T. Nguyen (Bar No. 237557) |
| 7 | | David J. Lisson (Bar No. 250994)<br>Chung G. Suh (Bar No. 244889) |
| 8 | | Jeremy Brodsky (Bar No. 257674)<br>DAVIS POLK & WARDWELL LLP |
| 9 | | 1600 El Camino Real<br>Menlo Park, CA  94025 |
| 10 | | (650) 752-2000/(650) 752-2111 (fax)<br>mlehr@dpw.com |
| 11 | | nguyen@dpw.com<br>dlisson@dpw.com |
| 12 | | gsuh@dpw.com<br>jbrodsky@dpw.com |
| 13 | Dated:   May 25, 2010 | ATTORNEYS FOR DEFENDANT TOTAL<br>VEIN SOLUTIONS, LLC d/b/a TOTAL VEIN |
| 14 | | SYSTEMS |
| 15 | | |
| 16 | | By:  /s/ John Karl Buche |
| 17 | | John Karl Buche (Bar No. 239477)<br>Sean Sullivan (Bar No. 254372) |
| 18 | | BUCHE & ASSOCIATES, PC<br>875 Prospect, Suite 305 |
| 19 | | La Jolla, CA  92037<br>(858) 459-9111/(858) 459-9120 (fax) |
| 20 | | jbuche@buchelaw.com<br>ssullivan@buchelaw.com |
| 21 | | |

22  I hereby attest that I have on file written permission to sign this joint statement from all

23 parties whose signatures are indicated by a "conformed" signature (/s/) within this e-filed

24 document.

25

26                                                           /s/ Diem-Suong T. Nguyen
                                                                Diem-Suong T. Nguyen
27

28