UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Vnus Medical Technologies Inc, | No. C 08-3129 MMC (JL) |
| Plaintiffs, | |
| v. | **DISCOVERY ORDER** |
| Biolitec, et al., | |
| Defendants. | |

### I.    Introduction

As provided by this Court's Standing Order, Plaintiff Tyco Healthcare Group LP d/b/a VNUS Medical Technologies ("VNUS") and Defendant Total Vein Solutions, LLC d/b/a Total Vein Systems ("TVS") submitted their Joint Statement outlining the parties' dispute concerning TVS's expert opinions of non-enablement. (Docket # 174)

All discovery in this case has been referred by the district court (Hon. Maxine M. Chesney) under 28 U.S.C. §636(b). This is a patent infringement case brought by VNUS against TVS and three other defendants. These defendants have asserted various counterclaims against VNUS, including claims of patent invalidity. At the last case management conference, the case was continued to September 14, 2010 for Pretrial Conference and to October 18 for jury trial expected to continue for four to six weeks.

(Minute Order at Docket # 173). On June 25, 2010, Co-Defendants each filed two motions for summary judgment (Docket Numbers 178, 179, 183 and 184).

## II. Discovery in Dispute

On May 7, 2010, TVS served expert reports from Dr. Wayne Gradman ("Gradman") and David Draper ("Draper"), both of which included opinions that the patents asserted by VNUS in this lawsuit are invalid for non-enablement. Upon receiving the reports, VNUS informed TVS that it objected to the non-enablement opinions as untimely under the Court's November 20, 2009 scheduling order, which set a deadline of April 2, 2010 for expert reports for issues on which the parties bear the burden of proof. Counsel for TVS responded that the non-enablement portions of the Draper and Gradman reports were offered to rebut opinions presented in the report of VNUS's expert, Dr. Robert T. Andrews ("Andrews"), and were thus timely served.

The parties exchanged correspondence and met and conferred on May 13 and 17. While the parties were able to resolve two other issues related to expert discovery, they were unable to reach a resolution regarding TVS's non-enablement opinions. Accordingly, VNUS requested that the opinions relating to enablement be stricken and that TVS be precluded from relying on those opinions in motions or at trial. TVS opposed this request.

### 1. VNUS's Position

The Court's November 20, 2009 order set a deadline of April 2, 2010 for expert reports for issues on which the parties bear the burden of proof. Instead of submitting any expert reports on that date, however, TVS served VNUS with written notice of its intent to rely on non-enablement opinions expressed in expert reports timely served by its co-defendant Biolitec, Inc. Presumably due to the late retention of its own experts, TVS attempted to submit non-enablement opinions a month later—on the same day that rebuttal reports were due—by bootstrapping them to non-infringement opinions properly served in rebuttal to VNUS's infringement expert report. TVS's unjustifiably late submission of expert opinions concerning enablement violated the Court's order and prejudiced VNUS, whose rebuttal experts submitted reports without an opportunity to respond.

Under FED. R. CIV. P. 26(a)(2)(C), "[a] party must make [expert disclosures] at the times and in the sequence that the court orders." Rule 26 and the Court's scheduling orders ensure the orderly completion of discovery and avoid unfair surprise and prejudice to litigants. See *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) ("Rule 26 promotes fairness both in the discovery process and at trial."). Pursuant to FED. R. CIV. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." See also *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 969, n.5 (9th Cir. 2006) (affirming the exclusion of expert testimony disclosed after the scheduling deadline); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) adds teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

TVS, as the party asserting patent invalidity for non-enablement, undeniably bears the burden of proof on that issue. See *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007).

Accordingly, TVS faced an April 2, 2010 deadline to disclose any expert opinions regarding non-enablement. There is no justification for TVS's month-long delay. The Court's scheduling order put the parties on notice of the deadline for opening expert reports months before they were due. TVS could have retained its experts with ample time to prepare and timely disclose their non-enablement opinions, particularly in view of its pre-existing relationships with these individuals. Gradman is a long-standing TVS customer, and Draper has been a TVS laser service consultant since 2009. In contrast to TVS, other parties in this case complied with the Court's scheduling order.

On April 2, 2010, VNUS submitted expert reports on infringement and damages, the issues on which it bears the burden of proof. On the same day, TVS's co-defendant, Biolitec, Inc., submitted four expert reports concerning invalidity issues, including

non-enablement. On May 7, 2010, VNUS submitted its rebuttal expert reports responding to Biolitec's invalidity opinions. VNUS's experts were clearly unable to respond to TVS's non-enablement opinions, however, since they were due the same day. VNUS would be prejudiced if TVS is permitted to rely on expert opinions to which VNUS's experts could not respond. Even if VNUS's experts were permitted to update their reports, requiring them to do so would cost VNUS additional time, effort and expense.

In an attempt to circumvent the deadlines set for expert discovery, TVS now disingenuously suggests that its non-enablement opinions somehow "rebut" VNUS's April 2, 2010 expert reports and are therefore timely. Contrary to TVS's unsupportable assertion, neither of VNUS's expert reports submitted on April 2, 2010 contain enablement opinions. Rather, they opine on issues for which VNUS bears the burden of proof: infringement and damages. In any event, even if VNUS's April 2, 2010 expert reports had included opinions regarding enablement, the Court's scheduling order nonetheless required TVS to provide its opinions on that issue on the same day. Pursuant to Rules 26 and 37, VNUS accordingly requests that the non-enablement opinions in the Gradman and Draper reports be stricken and that TVS be precluded from relying on such opinions. VNUS also may seek attorneys' fees and expenses resulting from TVS's untimely disclosure and its baseless refusal to strike those opinions. See FED. R. CIV. P. 37(c)(1)(A).

**2.  TVS's Position**

TVS asserts: (1) that the disputed portions of the Gradman and Draper opinions are proper rebuttal opinions in response to expert opinions proffered by VNUS relating to issues of enablement; and (2) that even, for arguments sake, if this Court determines that those portions of the Gradman and Draper reports are not properly characterized as rebuttal reports, good cause exists to allow TVS's submission of the entire reports and VNUS will suffer no prejudice if the reports are admitted in full. The expert discovery deadline in this case has not passed and VNUS still has a full opportunity to explore the opinions of TVS's experts at depositions. Gradman and Draper possess important rebuttal

United States District Court
For the Northern District of California

opinions on the issues of enablement. Good cause and the interests of fairness support the conclusion that the trial Court should have the benefit of their expertise.

First, despite VNUS's claims to the contrary, the portions of the Gradman and Draper reports directed to enablement are in direct response to portions of VNUS's expert Andrews, who in fact does opine on enablement issues. As commonly noted in the criminal context, when a party presents evidence which opens a door, that party "cannot now complain that the [opposing party] stepped through that door and rose to the challenge he presented." *U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (brackets added). The same principle should apply here. The Andrews report opened a door by including opinions, that although styled as infringement opinions, assert that the laser-based embodiments of the patents-in-suit were fully enabled. (See, e.g, Andrews Report at 11:

> "In all meaningful ways, the procedures for and clinical outcomes with the VNUS Closure technique and those of the various laser systems for endovenous ablation are nearly identical. These procedures are covered by the patent claims at issue in this lawsuit and addressed in this report;"

see also *Id.* at 37,

> "Laser energy and thermal energy are both among the forms of energy covered by the Patents-in-Suit…";

*Id.* at 57,

> "The application of laser energy generates intense, but localized, heat within the vein. As previously explained and demonstrated with citation to representative evidence relating to the Defendants' Accused Products, the resulting thermal damage to connective tissue of the vein wall causes a reduction in vein diameter and ultimate occlusion of the vein.";

*Id.* at 58,

> "A lengthy occlusion is formed along this area by virtue of physicians' pullback of a fiber (see Sections VI.A.8) while the laser console is activated and energy is being delivered to and along the vein.";

*Id.* at 94,

> "Endovenous ablation procedures, as performed today, are complex and were unknown and unaccepted in the medical field until after the commercial release of Closure in 1999.").

These statements are just a few examples of Andrews' testimony regarding the scope of the patent and how the claimed methods are performed by those skilled in the art – in short, enablement issues.

Second, even if VNUS can establish that the disputed portions of the Gradman and Draper reports are not rebuttal opinions, and were thus presumably filed after the deadline, the Court should not strike such opinions as untimely since VNUS will suffer no prejudice if the opinions are admitted. Contrary to VNUS's assertion, TVS was not dilatory in submitting its expert opinions and timely gave notice to VNUS of its intention to rely on expert opinions on issues of non-enablement. TVS timely and specifically adopted the opinions submitted by the experts retained by co-defendant Biolitec, Inc. ("Biolitec"), including the opinion of Dr. Victor Ross on laser non-enablement, since non-enablement is a common defense. Thus, TVS did timely adopt an opinion on enablement, to which VNUS timely submitted the rebuttal report of Dr. Warren Grundfest.

To the extent the Draper and Gradman reports contain enablement opinions in addition to those contained in Dr. Ross's report, such additions are very limited rebuttals to statements made by Andrews. Moreover, VNUS still has the opportunity to depose Gradman and Draper at their upcoming scheduled depositions on all topics contained in their reports, including their non-enablement views. It is disingenuous for VNUS to allege it is suffering some severe harm, when in fact it already has its own laser enablement expert report submitted by Dr. Grundfest, and it has ample time to prepare an examination of Gradman and Draper at their depositions.

In the patent case context, this Court has refused to strike rebuttal opinions which are asserted to be untimely submitted after the expert report deadline when good cause exists for such a rebuttal. In *Ultratech Inc. v. Tamarack Scientific Co.*, 2005 WL 856408 at *2-3, this Court denied a motion to strike Tamarack's rebuttal expert report, despite the report containing opinions on issues Tamarack carried the burden of proof on and being filed two months after the expert deadline and one month after the rebuttal expert deadline.

1  The Court noted that, despite Ultratech's argument that the opinion violated Rule 26 and
2  contained invalidity opinions on which Tamarack carried the burden, Tamarack had good
3  cause to enter the opinion based on new constructions of terms at issue. *Id.* Likewise, here
4  TVS has good cause to submit the non-enablement portions of the Gradman and Draper
5  reports because VNUS is laying the groundwork for its own enablement opinions under the
6  guise of an infringement expert report. In addition, VNUS accuses TVS of infringing acts
7  amounting to tens of millions of dollars in damages.

Allowing the full reports of Gradman and Draper will promote the just resolution of this case on the merits, substantial justice, and fair play. Since VNUS cannot substantiate any real prejudice, and since TVS has good cause, the Court should deny the Motion to Strike and allow the full opinions of Gradman and Draper to be considered.

### III.   Analysis, Conclusion and Order

This Court carefully considered the positions of both parties and the record in this case. This Court agrees with VNUS that TVS offers no valid excuse for its one-month delay in filing its expert reports. TVS had adequate notice of the deadline for its expert reports and in fact advised VNUS that it would rely on the timely submissions by its co-defendant, Biolitec:

> "TVS timely and specifically adopted the opinions submitted by the experts retained by co-defendant Biolitec, Inc. ("Biolitec"), including the opinion of Dr. Victor Ross on laser non-enablement, since non-enablement is a common defense."

(TVS position, *supra.*

TVS must be bound by this representation, otherwise VNUS is unfairly blindsided. VNUS expert Andrews testified in his report regarding the scope of the patent and how the allegedly claimed methods are performed by those skilled in the art – which are enablement issues. However, TVS offers nothing to support its claim that those opinions significantly deviate from the non-enablement opinions of Biolitec's experts, which TVS adopted. The *Ultratech* case is absolutely distinguishable from this case. In *Ultratech*, the Court ruled:

> This Court finds that Tamarack shows good cause for submitting its rebuttal report of Dr. Horn later than the date provided by the Scheduling Order in this case. The good cause is Ultratech's belated introduction of its new construction of the claim terms "learning" and "storing." Accordingly, Ultratech's motion to strike the Horn report and its requests for sanctions are denied.

*Ultratech,* 2005 WL 856408, at 3.

In this case, however, TVS does not contend that the VNUS experts raise either a new claim construction or any other issue of which TVS did not have notice prior to the filing of Biolitec's expert Dr. Ross, which TVS adopted. TVS argues only that:

> " to the extent the Draper and Gradman reports contain enablement opinions in addition to those contained in Dr. Ross's report, such additions are very limited rebuttals to statements made by Andrews. Moreover, VNUS still has the opportunity to depose Gradman and Draper at their upcoming scheduled depositions on all topics contained in their reports, including their non-enablement views."

(TVS position, *supra*)

TVS fails to argue that the Draper and Gradman reports respond to any new claim construction or other novel issue of which they had no prior notice, and therefore fail to justify extending the deadline for their reports. In effect they ask this Court to give them double the opportunity to address the non-enablement issue. Its first opportunity was in the Biolitec report by Dr. Ross, which TVS adopted, and again in the Draper and Gradman reports, which it asks this Court to permit it to file one month after the deadline set by Judge Chesney for addressing issues on which it has the burden of proof, such as non-enablement.

TVS also fails to convince the Court that VNUS would not be prejudiced by the necessity to depose Goodman and Draper in the midst of opposing the summary judgment motions just filed by both Defendants at Docket Numbers 178, 179, 183 and 184. The Court finds that VNUS would suffer prejudice by being forced to respond to reports outside the district court's previously ordered schedule, and to depose the experts who submitted them.

1  Accordingly, it is hereby ordered that the TVS expert reports of Dr. Gradman and Dr.
2  Draper are stricken, and TVS is precluded from relying on them in motions or at trial.
3  IT IS SO ORDERED.
4  DATED: June 29, 2010

_____
JAMES LARSON
United States Magistrate Judge

G:\JLALL\CASES\CIV-REF\08-3129\Order re 174.wpd