1   Matthew B. Lehr (Bar No. 213139)
    Diem-Suong T. Nguyen (Bar No. 237557)
2   David J. Lisson (Bar No. 250994)
    Chung G. Suh (Bar No. 244889)
3   Jeremy Brodsky (Bar No. 257674)
    DAVIS POLK & WARDWELL LLP
4   1600 El Camino Real
    Menlo Park, California  94025
5   Telephone:  (650) 752-2000
    Facsimile:   (650) 752-2111
6
    Attorneys for Plaintiff
7   Tyco Healthcare Group LP d/b/a
    VNUS Medical Technologies
8

9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  TYCO HEALTHCARE GROUP LP d/b/a      )   LEAD CASE NO. C08-03129 MMC
    VNUS MEDICAL TECHNOLOGIES,          )
13                                      )   CASE NO. C08-03129 MMC
                 Plaintiff,             )
14                                      )   **PLAINTIFF'S OPPOSITION TO
         v.                             )   BIOLITEC'S MOTION FOR SUMMARY
15                                      )   JUDGMENT OF NONINFRINGEMENT
    BIOLITEC, INC., DORNIER MEDTECH     )   AND IN THE ALTERNATIVE
16  AMERICA, INC., and NEW STAR LASERS, )   SUMMARY ADJUDICATION
    INC. d/b/a COOLTOUCH, INC.,         )   LIMITING DAMAGES**
17                                      )
                 Defendants.            )   **[REDACTED]**
18                                      )
19                                      )
                                        )   Date:    July 30, 2010
20                                      )   Time:    9:00 a.m.
                                        )   Judge:  Hon. Maxine M. Chesney
21  _____)

22  TYCO HEALTHCARE GROUP LP d/b/a      )   CASE NO. C08-04234 MMC
    VNUS MEDICAL TECHNOLOGIES,          )   (consolidated with C08-03129 MMC)
23                                      )
                 Plaintiff,             )
24                                      )
         v.                             )
25                                      )
    TOTAL VEIN SOLUTIONS, LLC d/b/a     )
26  TOTAL VEIN SYSTEMS,                 )
                                        )
27               Defendant.             )
28  _____)

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF DISPUTED FACTS ...................................................................... 1

    A.   biolitec's Accused Products ............................................................................ 1

    B.   Infringement When Practicing Endovenous Ablation with
        biolitec Products .............................................................................................. 3

    C.   biolitec's                    REDACTED
        REDACTED .................................................................................................. 4

III.  ARGUMENT ............................................................................................................ 6

IV.   THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING
    BIOLITEC's CONTRIBUTORY INFRINGEMENT ............................................... 6

    A.   Applicable Legal Principles ............................................................................ 6

    B.   Abundant Evidence Demonstrates That There Are No Substantial
        Noninfringing Uses for biolitec's Endovenous Ablation Products ............... 7

V.    THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING
    BIOLITEC'S INDUCEMENT OF INFRINGEMENT ............................................. 9

    A.   Applicable Legal Principles ............................................................................ 9

    B.   Abundant Evidence Establishes biolitec's Intent to Induce
        Infringement .................................................................................................... 10

VI.   LIMITING DAMAGES ON VNUS'S INDUCEMENT CLAIMS WOULD
    BE PREMATURE .................................................................................................... 12

VII.  CONCLUSION ........................................................................................................ 13

i

PLAINTIFF'S OPPOSITION TO biolitec'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
CASE NOS. C08-03129 MMC & C08-04234 MMC

1

## **TABLE OF AUTHORITIES**

2
Page

3

### **CASES**

4
*ACCO Brands, Inc. v. ABA Locks Mfg. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)...................................................................... 13

5

6
*Astrazeneca LP v. Apotex, Inc.*,
    623 F. Supp. 2d 615 (D.N.J. 2009) ................................................................ 11

7
*Aventis Pharm., Inc. v. Barr Labs., Inc.*,
    411 F. Supp. 2d 490 (D.N.J. 2006) ................................................................ 10

8

9
*Boston Scientific Corp. v. Johnson & Johnson*,
    534 F. Supp. 2d 1062 (N.D. Cal. 2007) ......................................................... 11

10
*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed Cir. 2008)......................................................................... 10

11

12
*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    576 F.3d 1348 (Fed. Cir. 2009)...................................................................... 13

13
*Diomed, Inc. v. AngioDynamics, Inc.*,
    450 F. Supp. 2d 130 (D. Mass. 2006) ......................................................... 9, 13

14

15
*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) .................................................................. 9, 11

16
*Gammino v. Cellco P'ship*,
    527 F. Supp. 2d 395 (E.D. Pa. 2007) ............................................................ 11

17

18
*Hoffmann-La Roche, Inc. v. Promega Corp.*,
    33 U.S.P.Q.2d 1641 (N.D. Cal. 1994) .......................................................... 6, 8, 9

19
*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010).................................................... 6, 7, 8, 9, 11

20

21
*ICN Pharms., Inc. v. Geneva Pharms. Tech. Corp.*,
    272 F. Supp. 2d 1028 (C.D. Cal. 2003) ........................................................ 11

22
*Jurgens v. CBK, Ltd.*,
    80 F.3d 1566 (Fed. Cir. 1996)....................................................................... 10

23

24
*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004)....................................................................... 7

25
*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...................................................................... 13

26

27
*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
    633 F. Supp. 2d 361 (E.D. Tex. 2009) ....................................................... 6, 12

28

ii

*Masson v. New Yorker Magazine,*
501 U.S. 496 (1991) ............................................................................. 6, 7

*Medtronic Xomed, Inc. v. Gyrus ENT LLC,*
440 F. Supp. 2d 1300 (M.D. Fla. 2006) ............................................. 9

*Medtronic, Inc. v. AGA Med. Corp.,*
No. C-07-0567 MMC, 2009 U.S. Dist. LEXIS 36168
(N.D. Cal. Apr. 28, 2009) .................................................................. 11

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
370 F.3d 1354 (Fed. Cir. 2004) ......................................................... 12

*Pickholtz v. Rainbow Techs., Inc.,*
260 F. Supp. 2d 980 (N.D. Cal. 2003) ............................................ 6, 8

*Rackable Sys., Inc. v. Super Micro Computer, Inc.,*
No. C 05-3561 PJH, 2007 U.S. Dist. LEXIS 33824
(N.D. Cal. Apr. 25, 2007) ................................................................. 12

*Ricoh Co., Ltd. v. Quanta Computer Inc.,*
550 F.3d 1325 (Fed. Cir. 2008) ........................................................... 6

*Sandisk Corp. v. Lexar Media,*
91 F. Supp. 2d 1327 (N.D. Cal. 2000) ................................................ 6

*SRI Int'l v. Matsushita Elec. Corp.,*
775 F.2d 1107 (Fed. Cir. 1985) ........................................................... 6

*SRI Int'l. Inc. v. Internet Security Sys., Inc.,*
647 F. Supp. 2d 323 (D. Del. 2009) .................................................. 13

*Standard Havens Prods., Inc. v. Gencor Indus. Inc.,*
953 F.2d 1360 (Fed. Cir. 1991) ......................................................... 13

*Vita-Mix Corp. v. Basic Holding, Inc.,*
581 F.3d 1318 (Fed. Cir. 2009) ......................................................... 11

*Water Techs. Corp. v. Calco, Ltd.,*
850 F.2d 660 (Fed. Cir. 1988) ........................................................... 10

**RULES & STATUTES**

35 U.S.C. § 271(c) ................................................................................... 6

Fed. R. Civ. P. 56(c) ............................................................................... 6

iii

I.     PRELIMINARY STATEMENT

Defendant biolitec, Inc. moves for summary judgment of no contributory infringement or inducement primarily on the grounds that physicians allegedly do not compress the vein when using biolitec's products to perform endovenous ablation.  biolitec does so despite significant and unrebuttable evidence demonstrating that (1) compression using tumescent anesthesia is a vital step in successful endovenous ablation procedures and is the established standard of care, REDACTED

Indeed, the record shows that                         REDACTED

biolitec now tries to deny the necessity of the compression REDACTED

Instead of addressing this record directly, biolitec first asks the Court to ignore expert opinion and testimony that the accused products have no substantial noninfringing uses and that physicians performing nonexperimental endovenous ablation procedures always compress the vein. Next, it asks the Court to find as a matter of law that certain aberrant procedures—[ REDACTED

REDACTED                               ]—constitute substantial noninfringing uses.  Finally, biolitec asks the Court to believe that it does not intend for physicians to use its products consistently with the established standard of care.  biolitec cannot, however, avoid the numerous genuine issues of material fact that run throughout its motion. Indeed, the evidence in this case would overwhelmingly support a jury finding of contributory infringement and inducement as well as an award of damages that encompasses all sales of biolitec's endovenous ablation products.  Accordingly, biolitec's motion must be denied.

II.     STATEMENT OF DISPUTED FACTS

A.     *biolitec's Accused Products*

Three years after Plaintiff Tyco Healthcare Group LP d/b/a VNUS Medical Technologies ("VNUS") introduced its Closure® product line commercializing the inventive methods described

1

1   in the Patents-in-Suit, biolitec introduced its ELVeS product line—which stands for Endo Laser

2   Vein System—for performing the same procedure but with laser energy.       **REDACTED**

3

4

5                                                As part of its ELVeS line, biolitec sells laser consoles, laser

6   fibers, and endovenous ablation procedure kits.[2]

7        biolitec began by selling 810 and 980 nm laser consoles for use in endovenous ablation both

8   directly to physicians                      **REDACTED**

9

10

11

12

13

14

15        After this lawsuit was filed, biolitec began selling 1470 nm laser consoles and fibers for use

16  in endovenous ablation.[6]                   **REDACTED**

17            This  **REDACTED**  is confirmed by Dr. Andrews and       **REDACTED**

18

19

20
   _____
21        [1] *See* Ex. 95 at BIO002762 and BIO002778 (unless otherwise noted, citations to exhibits
      refer to those attached to the accompanying Declaration of David J. Lisson).

22        [2] *See* Ex. 96 at 2-4.

23        [3]                              **REDACTED**

24        [4] *See* Ex. 31 (Andrews Depo. at 31:11-19).

25        [5] *See* Ex. 99 at VNUS_150334.

26        [6] *See* Exs. 100 at 10; 96 at 2-4.
          [7]                              **REDACTED**
27

28

                                           2

1    both of whom agreed that the 1470 nm laser and fibers have no use other than endovenous ablation

2    procedures.[8]

3        **B.    *Infringement When Practicing Endovenous Ablation with biolitec Products***

4            The Patents-in-Suit describe compressing the vein prior to the application of energy in some

5    form and, as Dr. Andrews testified and explained in detail in his expert report, physicians who

6    perform effective, nonexperimental endovenous ablation always compress the vein by applying

7    tumescent anesthesia prior to the application of energy.[9]  The established and standard procedure

8    followed by virtually every single practitioner using biolitec's products for endovenous ablation

9    therefore infringes the Patents-In-Suit.[10]  Indeed, biolitec's infringement expert, Dr. Do, admitted

10   that using tumescent anesthesia is the accepted procedure and that "if someone were to use the

11   tumescent technique, then that may indeed infringe."[11]  Multiple physicians, including  REDACTED

12                        REDACTED                      a former biolitec customer who trains for one

13   of its codefendants, have similarly testified that tumescent anesthesia compresses the vein when

14   performing endovenous ablation even if they may not subjectively be seeking compression.[12]

15           The evidence demonstrates                       REDACTED

16

17

18

---

19      [8] *See* Exs. 41 at 75, 83 (opining that "[i]t is my opinion that biolitec's 1470 nm laser console
     is not suitable for any substantial non-infringing use");                    REDACTED
     REDACTED

21      [9] *See* Ex. 31 (Andrews Depo. at 137:14-18) ("[T]he standard way of performing endovenous
     ablation is to introduce a thermal device through a sheath positioned with ultrasound guidance
22   followed by the infusion of compressive tumescent anesthesia.").

        [10] *See id.* at 136:10-13 ("[E]very person I personally know or have ever spoken to about
23   endovenous laser ablation does it in a way that would infringe.") and 137:6-11 ("[E]very person
     I've spoken to about vein ablation, regardless of what device he or she may use, does perform it in
24   the same way, so that if they did use the biolitec product, they would be using it in an infringing
     way."); and Ex. 41 at 10 and 73.

25      [11] *See* Ex. 103 (Do Depo. at 51:17-52:6, 63:19-21).
        [12] *See*                              REDACTED
        REDACTED 52 (Bardwil Depo. at 25:1-10; 39:19-40:) ("A: . . . [Y]ou'll see the vein is a
     circle; and that circle appears to become small."); and               REDACTED
27                                        REDACTED

28

PLAINTIFF'S OPPOSITION TO BIOLITEC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
CASE NOS. C08-03129 MMC & C08-04234 MMC

1

**REDACTED**

2

3

4

5

6

7

**REDACTED**

8    but it distributed instructions for use ("IFUs") instructing

9 physicians to administer it.  biolitec's IFUs stated that phyicians performing endovenous ablation

10 with biolitec products should administer 100 to 150 ml of perivenous anesthesia.[15]  Dr. Andrews

11 has opined that administering this volume into the saphenous compartment, as physicians would

12 understand the term "perivenous" to mean in connection with endovenous ablation, will cause

13 compression of the vein.[16]  This conclusion was confirmed by    **REDACTED**

14    and by published studies using biolitec's products.[18]  To the extent this volume would

15 not be sufficient to compress the vein in any abnormal patient, physicians performing the

16 endovenous ablation procedure will use additional tumescent anesthesia if necessary to compress

17 the vein, consistent with the established standard of care.[19]

18    **C.**    ***biolitec's***    **REDACTED**

19

20

21

22    [13] *See* Ex. 104 at BIO001803 (emphasis added).

23    [14]    **REDACTED**

24    [15] *See* Ex. 105 at BIO004975-76.

25    [16] *See* Ex. 41 at 27-28.

26    [17]    **REDACTED**

27    [18] *See* Exs. 106 at VNUS_044898 (concluding that 60 to 120 ml of lidocaine compressed the greater saphenous vein during endovenous ablation procedures); and 81 at VNUS2_083402-03.

28    [19] *See* Ex. 41 at 27-29, 31-35.

4

1    REDACTED                          REDACTED

2

3

4

5

6                                  Second, biolitec attempted to develop a

7    femoral nerve block technique, without the use of tumescent anesthesia, but has not obtained FDA

8    510(k) approval to promote it.  It also has not sent a single physician to be trained on the femoral

9    nerve block procedure by Dr. Do, its nominal trainer, nor has it identified a single doctor other than

10   Dr. Do who is currently using the technique.[26]  Indeed, the evidence shows that Dr. Do's technique

11   is unlikely to be successful for multiple reasons including the same reason that biolitec's first

12   design around failed:  a successful procedure requires tumescent anesthesia to compress and

13   insulate the vein.[27]

14

15

16   ————————————                        REDACTED
        [20]

17

18      [21] See Ex. 107 at BIO016002.

        [22]        REDACTED
19
        [23] See Ex. 81 at VNUS2_083404.
20      [24]                    REDACTED

21      [25]                    REDACTED

22

23      [26] See Ex. 103 (Do Depo. at 46:21-24) ("Q:  And have you actually trained people to do
     endovenous ablation using the femoral nerve block?  A. No I have not."), and 48:20-49:10 (Dr. Do.
     does not know of one person other than himself performing the femoral nerve block procedure in
24   the United States)).                                REDACTED
                                              REDACTED
25

26      [27] See Exs. 41 at 34-35; and 31 (Andrews Depo. at 140:17-141:14) (explaining that Dr. Do's
     nerve block procedures may not be successful because he uses far less energy than the standard).
27                                            REDACTED

        REDACTED and 103 (Do Depo. at 110:24-112:3) (admitting that the nerve block results in "some
28   loss of motor strength").

                                            5

1    III.   **ARGUMENT**

2          Summary judgment is inappropriate where there are genuine issues as to any material fact.

3    FED. R. CIV. P. 56(c); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1331 (Fed. Cir.

4    2008).  The record must be viewed in the light most favorable to the party opposing the motion

5    with all doubts resolved in its favor.  *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991);

6    *Ricoh*, 550 F.3d at 1331.  Moreover, because infringement is an issue of fact, "a district court must

7    approach a motion for summary judgment of infringement or noninfringement with a care

8    proportioned to the likelihood of its being inappropriate."  *Sandisk Corp. v. Lexar Media*, 91 F.

9    Supp. 2d 1327, 1331 (N.D. Cal. 2000) (quoting *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107,

10   1116 (Fed. Cir. 1985)).  biolitec's motion raises numerous issues of material fact including

11   (1) whether any alleged noninfringing uses of its products are substantial, and (2) its intent to

12   induce infringement.  Moreover, it rests on a faulty understanding of the law of inducement and

13   damages.  Accordingly, the motion must be denied.

14   IV.   **THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING
         BIOLITEC's CONTRIBUTORY INFRINGEMENT**
15

16         A.    *Applicable Legal Principles*

17         A noninfringing use of an accused product is a defense to contributory infringement only if

18   the noninfringing use is *substantial*.  35 U.S.C. § 271(c).[28]  Unusual, far-fetched, illusory,

19   impractical, occasional, aberrant or experimental uses are not substantial noninfringing uses.  *i4i*

20   *Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010); s*ee also Hoffmann-La Roche,*

21   *Inc. v. Promega Corp.*, 33 U.S.P.Q.2d 1641, 1648 (N.D. Cal. 1994) ("[O]ccasional aberrant use of

22   a product does not make that use 'substantial.'") (emphasis in original); *Mass Engineered Design,*

23   *Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 377-78 (E.D. Tex. 2009) (holding that the jury could

24   have concluded "that the 'noninfringing' use was occasional rather than substantial").  Summary

25   judgment of no contributory infringement is inappropriate if evidence shows that the noninfringing

26   use is inferior to the patented use.  *Pickholtz v. Rainbow Techs., Inc.*, 260 F. Supp. 2d 980, 988-89

27   ───────────────

28   [28] Because the contributory infringement portion of biolitec's motion is limited to the issue
     of substantial noninfringing use, this opposition will only address that issue.

6

1   (N.D. Cal. 2003).  A party is not entitled to summary judgment where, as here, a reasonable jury

2   could find biolitec liable for contributory infringement.  *See Linear Tech. Corp. v. Impala Linear*

3   *Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) (vacating summary judgment of no contributory

4   infringement even though plaintiff's evidentiary showing was "sparse and not altogether clear").

5       **B.     Abundant Evidence Demonstrates That There Are No Substantial**
            **NonInfringing Uses for biolitec's Endovenous Ablation Products**
6

7           While biolitec concedes that VNUS has evidence establishing that biolitec's ELVeS

8   products lack substantial noninfringing uses, it asks the Court to improperly discount that evidence

9   and draw weakly supported conclusions in its favor.  *See* biolitec Br. at 7-8.  More fundamentally,

10  biolitec wholly fails to address whether the allegedly noninfringing uses it proposes are *substantial*

11  as opposed to occasional or experimental.  This omission is fatal given VNUS's evidence.  *See i4i*

12  *Ltd. P'ship*, 598 F.3d at 850-51 (finding contributory infringement despite admission that products

13  could be used in noninfringing ways because substantial noninfringing uses "cannot be evaluated in

14  a vacuum" and the noninfringing uses were not "practical or worthwhile" for the intended market).

15  At the very least, the evidence raises numerous material issues of fact regarding any purported

16  substantial noninfringing uses and mandates that this case proceed to trial.

17          First, Dr. Andrews unambiguously concluded that biolitec's products do not have

18  substantial noninfringing uses after considering and rejecting the arguments advanced in biolitec's

19  brief.[29]  Dr. Andrews specifically addressed biolitec's argument that its customers do not compress

20  the vein.[30]  biolitec's request that the Court ignore Dr. Andrews's opinions, which were based on

21  peer-reviewed studies,                    **REDACTED**                    and his own extensive experience,

22  is impermissible in a motion for summary judgment where the evidence must be viewed in the light

23  most favorable to VNUS.  *Masson*, 501 U.S. at 520.[31]

24
    ───────────────
25      [29] *See* Ex. 41 at 68-69, 75-77, and 82-83 (concluding that biolitec's 1470 nm laser console,
    laser fibers, and ELVeS procedure kits "do not have any substantial non-infringing uses").

26      [30] *See id.* at 25-35; Ex. 31 (Andrews Depo. at 136:6-138:8).

27      [31] biolitec relies heavily on the suggestion that Dr. Andrews did not specifically recall
    talking about biolitec's products with other physicians, for example,        **REDACTED**
                                        **REDACTED**
28

PLAINTIFF'S OPPOSITION TO BIOLITEC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
CASE NOS. C08-03129 MMC & C08-04234 MMC

1    Second, significant evidence supports Dr. Andrews's opinion, including testimony from <sup>REDACTED</sup>

2    <span style="font-weight:bold;text-align:center">REDACTED</span>                                  acknowledging compression of

3    the vein during endovenous ablation.[32]  A number of studies describing the use of biolitec's

4    products have confirmed that volumes of tumescent anesthesia well within the range recommended

5    in biolitec's IFUs and now purportedly noninfringing—60 to 120 ml in one study and an average of

6    128 ml in the other—compress the vein.[33]  In fact, such compression is important for effective

7    procedures.[34]  Thus, a study paid for by biolitec to examine the use of its 1470 nm laser concluded

8    that "vein compression with the tumescent technique augments closure,"[35] while another study

9    examining the 980 nm console concluded that "tumescent anesthesia is very important to reduce the

10   lumen of the treated veins, maintain the tip of the fiber close to the endothelium and reduce the

11   diameter of the vein."[36]  Summary judgment of a substantial noninfringing use is all the more

12   inappropriate when, as here, the alleged noninfringing use is inferior.  *See Pickholtz*, 260 F. Supp.

13   2d at 988-89.

14           Third, as described above, the evidence shows that              **REDACTED**

15

16

17

18   *i4i Ltd. P'ship*, 598 F.3d at 851; *Hoffmann-La Roche*, 33 U.S.P.Q.2d at 1648.

19           Finally, biolitec asserts that its 810 and 980 nm lasers and laser fibers have substantial uses

20

---

21           [32] *See, supra*, n. 12.

22           [33] *See* Exs. 106 at VNUS_044898; and 81 at VNUS2_083402-03.  These volumes are well
     within those recommended in biolitec's IFUs and those biolitec relies upon as noninfringing uses.
23   *See* Ex. 105 at BIO004975-76 and biolitec Br. at 8.

24           [34] *See* Exs. 110 at BIO010271 (describing compression as necessary to "maximize
     circumferential energy transfer to the vein wall"); and 111 at BIO010278 (describing the benefit of
25   using tumescent anesthesia to compress the vein and maximize energy transfer).

             [35] *See* Ex. 81 at VNUS2_083404.

26           [36] *See* Exs. 112 at BIO045735.

27           [37] *See, supra*, fns. 13-14 and accompanying text.

28           [38] *See, supra*, fns. 20-27 and accompanying text; Exs. 41 at 33-35; and 81.

PLAINTIFF'S OPPOSITION TO BIOLITEC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
CASE NOS. C08-03129 MMC & C08-04234 MMC

1   other than endovenous ablation.  *See* biolitec Br. at 10.  Yet, as described in detail in Dr. Andrews's

2   report,                                          **REDACTED**

3                                        Moreover, biolitec sold those lasers and fibers to physicians

4   who only use them for endovenous ablation.[40]  Thus, summary judgment is improper because

5   biolitec fails to establish any substantial noninfringing uses for the lasers and fibers it has actually

6   sold.  *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1311-13 (M.D. Fla.

7   2006) (denying summary judgment because accused products were specifically designed, marketed

8   and sold for use in infringing procedures); *Hoffmann-La Roche, Inc.*, 33 U.S.P.Q.2d at 1648-49;

9   (no summary judgment where kit was optimized for an infringing use); *i4i Ltd. P'ship*, 598 F.3d at

10   851 (holding that the intended market may be considered when assessing whether a noninfringing

11   use is substantial).

12        Notably, this case is very similar to *Diomed, Inc. v. AngioDynamics, Inc.*, 450 F. Supp. 2d

13   130, 152 (D. Mass. 2006), which also dealt with endovenous ablation and a similar issue regarding

14   vein compression.  While the court acknowledged that the defendants offered evidence that their

15   products could theoretically be used in a noninfringing manner, the evidence was counterbalanced

16   by facts implying infringement.  The court concluded that "[g]iven the genuine dispute concerning

17   the extent to which defendants' products rely upon physical contact between a laser tip and blood

18   vessel wall, summary judgment on the issue of contributory infringement would be premature."  *Id.*

19   The same result should hold here.

20   **V.    THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING
21         BIOLITEC'S INDUCEMENT OF INFRINGEMENT**

22        **A.    Applicable Legal Principles**

23        The requisite intent to induce infringement exists so long as the alleged infringer "knew or

24   should have known his actions would induce actual infringements."  *DSU Med. Corp. v. JMS Co.*,

25   471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc).  Intent to induce infringement is a factual

---
39                                        **REDACTED**

[40] *See* Ex. 100 at 10.

9

1    determination particularly within the province of the trier of fact and may be inferred from all of the

2    circumstances. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988).

3         To prevail on inducement, VNUS need only show that biolitec "is aware of the patent,

4    knows or should have known that the encouraged acts constitute infringement of the patent, and has

5    an intent to cause the encouraged acts." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 698

6    (Fed Cir. 2008). Such infringement occurs regardless of whether physicians subjectively intend to

7    compress the vein. *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 n.2 (Fed. Cir. 1996). It is

8    likewise immaterial whether biolitec intends for physicians to compress the vein or even considers

9    compression to be important. *See* Defs.' Mot. at 12-13; *Aventis Pharm., Inc. v. Barr Labs., Inc.*,

10   411 F. Supp. 2d 490, 518 (D.N.J. 2006), *aff'd*, 208 F.App'x. 842 (Fed. Cir. 2006) ("The Court

11   determines what is affirmative or purposeful from an objective viewpoint, not by undertaking an

12   analysis of whether the accused inducer subjectively experienced a purpose or an intent that the

13   steps affirm. Put more simply, if one could escape liability for inducing infringement just by

14   saying, 'I never wanted anyone to infringe,' this would eviscerate the statutory protection.").

15   Accordingly, whether biolitec or physicians want compression of the vein is irrelevant so long as

16   physicians performing endvoenous ablation do, in fact, compress the vein and biolitec encourages

17   those procedures with the knowledge that they do so.

18        **B.    Abundant Evidence Establishes biolitec's Intent to Induce Infringement**

19        The evidence detailed above clearly raises genuine issues of material fact regarding

20   biolitec's intent to induce infringement. Through its IFUs and other culpable conduct, biolitec

21   intentionally encourages physicians to perform acts constituting infringement: endovenous ablation

22   procedures in which administering anesthesia compresses the vein being treated.[41]  VNUS's

23   evidence shows that that administering 100 to 150 ml of anesthesia perivenously as directed by

24   biolitec's IFUs compresses the vein, that compression of the vein is a necessary component of the

25   established standard of care, and that biolitec distributed its products and IFUs despite its awareness

26   of the compression caused by tumescent anesthesia and of the VNUS patents.[42]  This evidence

27   _____

      [41] *See, e.g.*, Ex. 41 at 25-29 and tabs E-F.

28   [42] *See, supra*, fns. 9-19 and accompanying text.

                                                      10

1    directly contradicts biolitec's suggestion that compression of the vein during its procedure

2    constitutes an "off-label" use, *see* biolitec Br. at 12-13, and, instead, shows biolitec's "affirmative

3    intent that the product be used to infringe." *DSU*, 471 F.3d at 1305; *see also Medtronic, Inc. v.*

4    *AGA Med. Corp.*, No. C-07-0567 MMC, 2009 U.S. Dist. LEXIS 36168, at *5-8 (N.D. Cal. Apr. 28,

5    2009) (finding triable issue as to whether defendant induced physicians to infringe where

6    defendant's IFUs instructed the practice of the patented methods).   Moreover, regardless of whether

7    biolitec's IFUs instruct compression, summary judgment is improper since specific intent may be

8    inferred from the fact that                                        **REDACTED**

9                                  Finally, far from evidencing a lack of intent, biolitec's    **REDACTED**

10         **REDACTED**         and continued sales of the accused products support a finding of inducement.

11   *See Astrazeneca LP v. Apotex, Inc.*, 623 F. Supp. 2d 615, 618 (D.N.J. 2009) ("[W]hatever 'good'

12   intent Apotex may have shown in trying to work around the infringement issue was overcome when

13   Apotex moved forward with an infringing label.").[44]

14          These facts distinguish this case from those relied upon by biolitec, which presented no

15   evidence of culpable conduct or intent.[45]  Unlike in *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d

16   1318, 1329 (Fed. Cir. 2009), for example, where the instructions taught a substantial use the

17   defendant "could have reasonably believed was non-infringing" and another use that was

18   noninfringing, here biolitec knew its instructions taught a "tumescent" procedure and accordingly

19   would result in infringing use.[46]  *See i4i*, 598 F.3d at 852 (distinguishing *Vita-Mix* and upholding

20   ―――――――――――――――                    **REDACTED**

21

22          [44]                          **REDACTED**

23

24

25          [45] *See ICN Pharms., Inc. v. Geneva Pharms. Tech. Corp.*, 272 F. Supp. 2d 1028, 1049-50
     (C.D. Cal. 2003) (labeling instructions indisputably did not encourage an infringing use); *Gammino
26   v. Cellco P'ship*, 527 F. Supp. 2d 395, 397 (E.D. Pa. 2007) (defendant merely purchased infringing
     features from other sources without knowledge as to "what processes, methods, or apparatuses"
     were employed to provide those features); *Boston Scientific Corp. v. Johnson & Johnson*, 534 F.
27   Supp. 2d 1062, 1079 (N.D. Cal. 2007) (defendant did not instruct the patented process or even
     know it was being practiced by the direct infringer).

28          [46] *See, supra*, fns. 9-19 and accompanying text.

                                                   11

1   inducement verdict on these grounds).                **REDACTED**

2                                      Accordingly, biolitec's motion for summary judgment on

3   inducement must be denied.

4   **VI.     LIMITING DAMAGES ON VNUS'S INDUCEMENT CLAIMS WOULD BE**
           **PREMATURE**
5

6           biolitec's request for limitation of damages on VNUS's inducement claims to specific,

7   proven instances of direct infringement is both premature and legally unfounded, and should be

8   denied.  At this stage, the issues before the Court are whether biolitec can establish that it is not

9   liable for contributory infringement or inducing infringement as a matter of law.  The proper

10  calculation of VNUS's damages is for the fact-finder to determine after a finding of liability on

11  either ground.

12          To establish biolitec's liability for indirect infringement, VNUS may identify individual acts

13  of direct infringement or an entire category of infringers.  *See, e.g., Metabolite Labs., Inc. v. Lab.*

14  *Corp. of Am. Holdings*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004) (circumstantial evidence that it

15  would be malpractice for physicians not to perform the infringing step permitted inference that

16  physicians directly infringe); *Rackable Sys., Inc. v. Super Micro Computer, Inc.*, No. C 05-3561

17  PJH, 2007 U.S. Dist. LEXIS 33824, at *27-28 (N.D. Cal. Apr. 25, 2007).  As previously discussed,

18  extensive evidence supports a finding that compression is necessary for safe and effective EVA,

19  and therefore that the class of biolitec's ELVeS customers necessarily use the accused products in

20  an infringing manner.[48]  *See, e.g., Metabolite Labs.*, 370 F.3d at 1364-65 (Fed. Cir. 2004).  The

21  existence of any insubstantial noninfringing use, such as Dr. Do's femoral nerve block procedure,

22  cannot overcome VNUS's ability to establish this class of infringers at trial.  *See Mass Engineered*

23  *Design*, 633 F. Supp. 2d at 378 (rejecting defendant's argument that any device with a

24

25

26  _____
    [47]                                    **REDACTED**

27

28          [48] *See, supra*, fns. 9-19 and accompanying text.

                                               12
    PLAINTIFF'S OPPOSITION TO BIOLITEC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
    CASE NOS. C08-03129 MMC & C08-04234 MMC

1 noninfringing configuration cannot necessarily infringe).[49]

2    Once again, this situation is substantially identical to that considered in *Diomed*. Like

3 biolitec, the *Diomed* defendants sought to limit damages to particular acts of infringement.

4 *Diomed*, 450 F. Supp. 2d. at 151. The court held that the damages claim could not be resolved on

5 summary judgment due to the existence of genuine issues of material fact regarding whether the

6 class of defendants' customers infringed. *Id.* at 151-52. Notably, VNUS's arguments and evidence

7 concerning the necessity of compression are virtually indistinguishable from the arguments and

8 evidence submitted by Diomed, who was represented by biolitec's counsel in this case. *Id.* In

9 contrast, the cases upon which biolitec relies are wholly inapposite. See biolitec Br. at 14-15.[50] In

10 sum, biolitec's request for summary adjudication of damages, based on evidence of aberrant,

11 insubstantial uses that defy the standard of care and intended use of the accused products, invites

12 legal error and should be denied.

13 **VII.   CONCLUSION**

14    In light of the numerous genuine issues of material fact, VNUS respectfully requests that

15 this Court deny biolitec's Motion for Summary Judgment of Noninfringement and in the

16 Alternative for Summary Adjudication Limiting Damages.

---

21 [49] biolitec implicitly concedes this point by not seeking to limit VNUS's damages to specific instances of direct infringement in the event that VNUS prevails on its contributory infringement claim.

22 [50] *See ACCO Brands, Inc. v. ABA Locks Mfg. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)
23 (addressing the proof of liability, not damages, where defendant's instructions instructed a noninfringing use and the record was devoid of evidence of actual users having used the product in an infringing manner); *Standard Havens Prods., Inc. v. Gencor Indus. Inc.*, 953 F.2d 1360, 1374
24 (Fed. Cir. 1991) (denying damages for products that the patentee either did not accuse of infringement or that were sold in a foreign country); *SRI Int'l. Inc. v. Internet Security Sys., Inc.*,
25 647 F. Supp. 2d 323, 343-44 (D. Del. 2009) (granting JMOL where there was no affirmative evidence that customers infringed or that the defendant provided instructions for use in an
26 infringing manner); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1323-24, 1334-35 (Fed. Cir. 2009) (vacating damages award in view of substantial infirmities, including absence of any
27 evidence regarding how often consumers used the infringing feature, while rejecting defendant's argument that method claims require damages to be limited to the number of instances of actual
28 infringing use); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009) (neither the class of infringers nor indirect infringement were at issue).

13

PLAINTIFF'S OPPOSITION TO BIOLITEC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
CASE NOS. C08-03129 MMC & C08-04234 MMC

1   Dated:   July 9, 2010                    ATTORNEYS FOR PLAINTIFF
                                            TYCO HEALTHCARE GROUP LP d/b/a
2                                           VNUS MEDICAL TECHNOLOGIES

3

4                                           By:   /s/ David J. Lisson
                                                 Matthew B. Lehr (Bar No. 213139)
5                                                Diem-Suong T. Nguyen (Bar No. 237557)
                                                 David J. Lisson (Bar No. 250994)
6                                                Chung G. Suh (Bar No. 244889)
                                                 Jeremy Brodsky (Bar No. 257674)
7                                                DAVIS POLK & WARDWELL LLP
                                                 1600 El Camino Real
8                                                Menlo Park, CA  94025
                                                 (650) 752-2000/(650) 752-2111 (fax)
9                                                mlehr@dpw.com
                                                 nguyen@dpw.com
10                                               dlisson@dpw.com
                                                 gsuh@dpw.com
11                                               jbrodsky@dpw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO BIOLITEC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND DAMAGES
CASE NOS. C08-03129 MMC & C08-04234 MMC