United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TYCO HEALTHCARE GROUP LP d/b/a
VNUS MEDICAL TECHNOLOGIES

      Plaintiff

  v.

BIOLITEC, INC., et al.,

      Defendants
_____/

No. C-08-3129 MMC

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
THAT ASSERTED '433 AND '970
CLAIMS ARE INVALID FOR LACK OF
WRITTEN DESCRIPTION**

      Before the Court is defendants "Motion for Summary Judgment that the Asserted
'433 and '970 Claims are Invalid for Lack of Written Description," filed June 25, 2010.
Plaintiff Tyco Healthcare Group LP has filed opposition, to which defendants have replied.
Having read and considered the papers filed in support of and in opposition to the motion,
the Court rules as follows.[1]

## BACKGROUND

      In the instant action, plaintiff alleges defendants have infringed the claims of U.S.
Patent Nos. 6,769,433 ("'433 Patent") and 7,406,970 ("'970 Patent").  By the instant motion,
defendants argue they are entitled to summary judgment on their respective counterclaims
that Claims 1, 2, and 10 of the '433 Patent and Claims 1, 2, 3, 8, 9, 13, 15, 17, 19 and 20 of
the '970 Patent are invalid for failure to satisfy the written description requirement in 35
U.S.C. § 112.

_____

      [1]By a Clerk's notice filed July 22, 2010, the matter was taken under submission.

Claim 1 of the '433 Patent is an independent claim that claims a "method of applying energy to a vein to cause the vein to durably assume a reduced diameter," specifically, a method comprising the following steps:  (1) "introducing a catheter having a working end into a vein having an inner wall"; (2) "pre-shaping the vein such that the inner wall of the vein is brought toward the working end of the catheter so as to reduce the diameter of the vein"; (3) "applying energy from the working end of the catheter to the vein so as to cause the vein to durably assume a diameter of at least as small as the reduced diameter achieved in the step of pre-shaping the inner wall of the vein toward the working end of the catheter"; and (4) "moving the catheter along the vein during the step of applying energy." See '433 Patent, col. 19, ll. 15-30.  Claim 2 of the '433 Patent claims the method of Claim 1 with the additional limitation that "a lengthy occlusion is formed along the area of the vein in which the catheter is moved."  See '433 Patent, col. 19, ll. 31-33.  Claim 10 of the '433 Patent claims the method of Claim 1 with the additional limitation that the "energy" that is applied is "light energy."  See '433 Patent, col. 19, ll. 50-51.

Claim 1 of the '970 Patent is an independent claim that claims a "method of treating venous insufficiency," specifically, a method comprising the following steps:  (1) "introducing an elongate member into a vein having an inner wall"; (2) "flattening the vein such that the inner wall of the vein is brought toward a distal region of the elongate member"; (3) "applying energy from the distal region of the elongate member to the vein to create a thermal effect in the vein so as to reduce the diameter of the vein and lead to occlusion of the vein"; and (4) "retracting the elongate member along the vein during the step of applying energy."  See '970 Patent, col. 18, ll. 53-64.  Claim 2 of the '970 Patent claims the method of Claim 1 with the additional limitation that "a lengthy occlusion is formed along the area of the vein in which the elongate member is retracted during the step of applying energy."  See '970 Patent, col. 18, ll. 65-68.  Claim 3 of the '970 Patent claims the method of Claim 1 with an additional step, specifically, "delivering fluid to the vein where the distal region of the elongate member is located."  See '970 Patent, col. 19, ll. 1-3.  Claim 8 of the '970 Patent claims the method of Claim 1 with the additional limitation

that the "energy" applied is "light energy."  <u>See</u> '970 Patent, col. 19, ll. 9-11.  Claim 9 claims

the method of claim 8 with the additional limitations that the "elongate member" is "a fiber

optic" and that the "light energy" is applied with "the fiber optic."  <u>See</u> '970 Patent, col. 19, ll.

16-17.  Claim 13 of the '970 Patent claims the method of Claim 1 with the additional

limitation that the "flattening" step includes the step of "compressing the anatomy

surrounding the vein at the location of the distal region of the elongate member."  <u>See</u> '970

Patent, col. 19, ll. 28-31.

Claim 15 of the '970 Patent is an independent claim that claims a "method of treating

venous insufficiency," specifically, a method comprising the following steps:

(1) "introducing an elongate member having an axis into a vein having an inner wall";

(2) "moving the inner wall of the vein toward the axis of the elongate member at a distal

region of the elongate member, independently of the elongate member"; (3) "applying

energy from the distal region of the elongate member to the vein to create a thermal effect

in the vein so as to reduce the diameter of the vein and lead to occlusion of the vein"; and

(4) "retracting the elongate member along the vein during the step of applying energy to

form an occlusion along the area of the vein where the elongate member is retracted during

the step of applying energy."  <u>See</u> '970 Patent, col. 20, ll. 3-17.  Claim 17 of the '970 Patent

claims the method of Claim 15 with the additional limitation that the "moving" step includes

the step of "compressing the anatomy surrounding the vein at the location of the distal

region of the elongate member."  <u>See</u> '970 Patent, col. 20, ll. 21-24.  Claim 19 of the '970

Patent claims the method of Claim 15 with the additional limitation that the energy applied

is "light energy."  <u>See</u> '970 Patent, col. 28-29.  Claim 20 of the '970 Patent claims the

method of claim 19 with the additional limitations that the "elongate member" is "a fiber

optic" and that the "light energy" is applied with "the fiber optic."  <u>See</u> '970 Patent, col. 20, ll.

30-32.

The specifications of the '433 and '970 Patents are identical to each other, and each

is identical to the 1997 application from which both patents are derived.  (<u>See</u> Steenburg

Decl. Ex. 58.)

**DISCUSSION**

Section 112 provides that a "specification shall contain a written description of the invention." See 35 U.S.C. § 112, ¶ 1.  "Adequate written description means that the applicant, in the specification, must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the claimed invention." Agilent Technologies, Inc. v. Affymetrix, Inc., 567 F.3d 1366, 1379 (Fed. Cir. 2009) (internal quotation, citation and alteration omitted).  Stated otherwise, the specification "considered as a whole must convey to one of ordinary skill in the art, either explicitly or inherently, that [the inventor] invented the subject matter claimed in the [ ] patent." See Reiffin v. Microsoft Corp., 214 F.3d 1342, 1346 (Fed. Cir. 2000).  "[W]hatever the specific articulation, the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art."  Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co., 598 F.3d 1336, 1351 (2010).  "[C]ompliance with the 'written description' requirement of § 112 is a question of fact."  Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

Because patents are presumed valid, a party seeking to invalidate a patent by summary judgment must demonstrate it is undisputed that "clear and convincing evidence" exists to establish the inventor did not comply with the written description requirement, see ICU Medical, Inc. v. Alaris Medical Systems, Inc., 558 F.3d 1368, 1376 (Fed. Cir. 2009), specifically, that no trier of fact could reasonably find the specification "conveyed with reasonable clarity to those of ordinary skill in the art that [the inventor] has in fact invented the [invention] recited in [the] claims," see Vas-Cath, 935 F.2d at 1567 (reversing order granting summary judgment of invalidity for failure to comply with written description requirement in light of triable issues of fact).

As noted, defendants argue that three claims of the '433 Patent and ten claims of the '970 Patent are invalid for failure to comply with the written description requirement.  In their motion, defendants characterize plaintiff's infringement contentions as follows: "[Plaintiff] alleges that defendants indirectly infringe the '433 and '970 claims when, *inter*

4

*alia*, they sell single fiber optic lines that doctors place inside veins and use to apply laser energy.  [Plaintiff] focuses particular attention on ordinary bare-tip laser fibers . . . . "  (See Defs.' Mot. at 2:25-28 (internal citation omitted).)  With respect to the issue of invalidity, defendants argue the subject claims are "invalid because a person of ordinary skill in the art reading the September 1997 application on which the patents are based would not understand the invention to include applying energy to veins by means of a single bare-tip fiber."  (See id. at 3:12-14 (internal citation omitted).)  In other words, defendants' theory is that a person of ordinary skill in the art, having read the specification, would not understand the applicant to have invented a method of applying energy to veins in the manner employed by the accused products, specifically, a single bare-tip fiber, and, consequently, the subject claims are invalid.

As plaintiff correctly notes, the Federal Circuit has held that "[t]he invention is, for purposes of the 'written description' inquiry, <u>whatever is now claimed</u> [in the patent]."  See Vas-Cath, 935 F.2d at 1664 (emphasis in original).  Consequently, for purposes of the written description requirement, the issue is not whether a specification provides an adequate description of an accused product, but, rather, whether the specification provides an adequate description of the claimed invention.  For example, in Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306 (Fed. Cir. 2003), where the plaintiff had alleged defendant's customers infringed plaintiff's claimed method for "lifting eggs" when those customers used defendant's "moving conveyor," the Federal Circuit found unpersuasive defendant's "contention that the [subject] patent does not adequately disclose lifting eggs from a moving conveyor," for the reason that such argument "merely revive[d] its non-infringement argument in the cloak of a validity challenge."  See id. at 1321 (affirming jury's finding that patent claiming method to lift eggs was "not invalid for lack of an adequate written description"); see also, e.g., Inline Connection Corp. v. Earthlink, Inc., 684 F. Supp. 2d 496, 528, 531 (D. Del. 2010) (holding "written description analysis examines whether the inventor possessed the claimed invention, not whether he possessed or invented the accused technology"; rejecting defendant's arguments that claims were invalid because

1    specification did not "teach anything" about defendant's accused product).

2         The cases on which defendants rely address whether a particular claim element is

3    adequately described in the specification.  See, e.g., PowerOasis, Inc. v. T-Mobile USA,

4    Inc., 522 F.3d 1299, 1307-11 (Fed. Cir. 2008) (determining whether specification

5    adequately described claimed "customer interface" element).  Here, by contrast,

6    defendants fail to identify any particular claim element(s) not adequately disclosed.  Rather,

7    as discussed above, defendants argue that the specification does not disclose use of

8    "single bare-tipped fiber."  None of the claims of the '433 or the '970 Patents, however,

9    include a limitation requiring the person performing the method use a "single bare-tipped

10   fiber" to apply energy.  Consequently, defendant's argument is misplaced, at least when

11   raised in support of a contention that the claims are invalid for lack of an adequate written

12   description.  See Phillips Petroleum Co. v. United States Steel Corp., 673 F. Supp. 1278,

13   1290-91 (D. Del. 1987) (rejecting defendant's argument that patent inventing "crystalline

14   polypropylene" molecules was invalid for failure to "describe" molecules with particular

15   viscosity and weight of accused products; noting claims did not "contain[ ] a limitation

16   regarding intrinsic viscosity or molecular weight," and, consequently, defendant's

17   contentions were "immaterial" with respect to whether claims were adequately described),

18   aff'd, 865 F.2d 1247, 1251-52 (Fed. Cir. 1989) (affirming district court; characterizing

19   defendant's argument as "relat[ing] to infringement, not to patentability").

20        Accordingly, defendant has not shown it is undisputed that Claims 1, 2, and 10 of the

21   '433 Patent and Claims 1, 2, 3, 8, 9, 13, 15, 17, 19 and 20 of the '970 Patent, or any of

22   them, are invalid for failure to satisfy the written description requirement.

23                                   **CONCLUSION**

24        For the reasons stated above, defendants' the motion is hereby DENIED.

25        **IT IS SO ORDERED.**

26

27   Dated:  August 3, 2010

28                                        MAXINE M. CHESNEY
                                          United States District Judge

                                          6