IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP d/b/a VNUS MEDICAL TECHNOLOGIES<br><br>    Plaintiff<br><br>   v.<br><br>BIOLITEC, INC., et al.,<br><br>    Defendants<br>_____/ | No. C-08-3129 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART TOTAL VEIN SOLUTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT OF NO CONTRIBUTORY INFRINGEMENT** |

Before the Court is defendant Total Vein Solutions, LLC's ("TVS") "Motion for Summary Judgment of No Contributory Infringement," filed June 25, 2010. Plaintiff Tyco Healthcare Group LP d/b/a VNUS Medical Technologies ("VNUS") has filed opposition, to which TVS has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In its First Amended Complaint ("FAC"),[2] VNUS alleges it owns all rights to five patents, specifically, U.S. Patent Nos. 6,752,803 ("'803 Patent"), 6,769,433 ("'433 Patent"),

---

[1] By a Clerk's notice filed July 22, 2010, the matter was taken under submission.

[2] The FAC was filed on November 14, 2008 in Vnus Medical Technologies, Inc. v. Total Vein Solutions, LLC, Case No. 08-4234 ("TVS Action"). By order filed November 18, 2008, the Court consolidated the TVS Action with Tyco Healthcare Group LP v. biolitec, Inc., Case No. 08-3129 ("biolitec Action") and, by separate order filed November 18, 2008, directed that all further filings in the TVS Action be made in the biolitec Action.

1  6,258,084 ("'084 Patent"), 7,396,355 ("'355 Patent"), and 7,406,970 ("'970 Patent").  (See
2  FAC ¶ 8.)  VNUS further alleges that "TVS has directly and/or indirectly infringed (including
3  contributory and/or inducement of infringement) the claims of the '803, '433, '084, '355 and
4  '970 [P]atents by making, using, selling, offering to sell and/or instructing users how to use
5  products for endovenous laser and/or radiofrequency treatment, including laser fibers,
6  procedure packs, access devices and kits, under the trade names 'Total Vein Systems' and
7  'Total Vein Solutions.'"  (See FAC ¶ 9.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

//

**DISCUSSION**

By the instant motion, TVS argues it is entitled to summary judgment on VNUS's claim of direct infringement and on VNUS's claim of contributory infringement.[3]

**A. Direct Infringement**

Each claim in the five subject patents claims a method for treating either a "vein," see, e.g., '433 Patent, col. 19, ll. 15-17, or a "hollow anatomical structure," see, e.g., '803 Patent, col. 17, ll. 666-67. Consequently, a person who engages in direct infringement would necessarily be a person treating a vein or hollow anatomical structure. See Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method.") (emphasis in original).

In its motion, TVS states that, although the FAC alleges TVS has directly infringed the claims in each of the five subject patents, TVS does not "understand" VNUS to "continue" to pursue such allegation. (See TVS's Mem. of P. & A., filed June 25, 2010, at 2:26-27.) TVS requests that, "for clarity," the Court nonetheless "rule that TVS is not liable for direct infringement" for the reason that "TVS is not a medical facility and does not offer or perform medical procedures" (see id. at 2:27-28).

In its opposition, VNUS fails to respond in any manner to TVS's statements regarding its understanding of VNUS's claim of direct infringement; rather, VNUS focuses exclusively on its claim of contributory infringement. Moreover, although TVS did not cite to any evidence to show it does not perform medical procedures, VNUS itself has offered such evidence. Specifically, VNUS offers, for another purpose, the testimony of David Centanni, TVS's Chief Executive Officer, that TVS "provide[s] supplies for in-office-based surgical procedures" (see Lisson Decl. Ex. 34 at 44), and an American College of Phlebology document stating TVS is a company that "markets" certain "surgical packs" and "a complete line of surgical laser fibers and venous access products (see id. Ex. 15 at 38).

Accordingly, to the extent VNUS alleges a claim of direct infringement against TVS,

---

[3] TVS does not seek summary judgment on VNUS's claim that TVS has engaged in inducement of infringement.

3

1  TVS is entitled to summary judgment.

2  **B. Contributory Infringement**

3  "The patent laws provide that whoever sells an apparatus for use in practicing a
4  patented method, knowing it to be 'especially made or especially adapted for use in an
5  infringement of such patent, and not a staple article or commodity of commerce suitable for
6  substantial noninfringing use, shall be liable as a contributory infringer.'" Vita-Mix Corp. v.
7  Basic Holding, Inc., 581 F.3d 1317, 1327 (Fed. Cir. 2009) (quoting 35 U.S.C. § 271(c)).
8  "Contributory infringement imposes liability on one who embodies in a non-staple device
9  the heart of a patented process and supplies the device to others to complete the process
10 and appropriate the benefit of the patented invention." Id.

11 A noninfringing use is "substantial" when it is "not unusual, far-fetched, illusory,
12 impractical, occasional, aberrant, or experimental." See id. Whether a noninfringing use is
13 "substantial" is an issue of fact. See, e.g., i4i Limited Partnership v. Microsoft Corp., 598
14 F.3d 831, 851 (Fed. Cir. 2010) (affirming jury's decision that defendant engaged in
15 contributory infringement, in light of evidence accused product's noninfringing use "was not
16 a practical or worthwhile use for the [consumers] for which the [accused device] was
17 designed and marketed"). Consequently, for purposes of summary judgment, a defendant
18 is entitled to summary judgment unless a trier of fact could reasonably find the accused
19 product's noninfringing use(s) is/are insubstantial. See, e.g., Vita-Mix, 581 F.3d at 1328
20 (affirming order granting summary judgment of no contributory infringement, where "no
21 reasonable jury could find [the accused product's noninfringing use] is an insubstantial
22 use"); cf., e.g., Ricoh Co. v. Quanta Computer, Inc., 550 F.3d 1325, 1340 (Fed. Cir. 2008)
23 (reversing order granting summary judgment of no contributory infringement in light of
24 "material issue of fact of whether [the accused products] have no substantial noninfringing
25 use other than to practice [the] claimed methods").

26 As discussed below, TVS argues that certain of its accused products are not
27 especially made or especially adapted for use in practicing VNUS's patented methods, but,
28 rather, are products suitable for substantial noninfringing uses.

**1. Introducers**

TVS sells "introducer kits" (see Buche Decl. Ex. F), which kits, according to TVS, include at least one "introducer" of various lengths (see TVS's Mem. of P. & A. at 4:19-23). In support of the instant motion, TVS offers evidence that "introducers" are capable of being used in a number of medical procedures "other than endovenous treatment." (See Buche Decl. Ex. AAA ¶ 11.) In particular, TVS relies on the declaration of the President of Argon Medical, Inc., the company that sells introducers to TVS for resale, who states that introducers are "often used in diagnostic/interventional cardiac catheterization labs [and] interventional radiology." (See id.)

In its opposition, VNUS offers no evidence to establish that "introducers," as a general matter, are incapable of substantial, non-infringing uses and, indeed, admits its expert has concluded that "generic" introducers can be used in "nonvenous applications." (See Pl.'s Opp., filed July 9, 2010, at 7:20-22; see also id. at 8:3 ("Generic introducers may well be used in other procedures.").) Instead, relying on its expert, Robert T. Andrews, M.D. ("Dr. Andrews"), VNUS submits evidence that particular types of introducers sold by TVS, specifically, "long" introducers that also have "markers" or a "locking adapter" or both, have no substantial non-infringing use. (See Lisson Decl. Ex. 31 at 227; see Pl.s' Opp. at 7:19.)[4] In particular, Dr. Andrews, in his expert report and at his deposition, offered the opinion that such introducers would not be used for medical procedures other than the claimed methods. (See id. Ex. 31 at 226-28, 235, Ex. 41 at 84; Andrews Decl. ¶ 2.) Whether, as TVS argues in its reply, such opinion is unworthy of credence is a matter for the trier of fact. See McGinest v. GTE Service Corp., 360 F.3d 1103, 1113 n. 5 (9th Cir. 2004) (holding "it is axiomatic that disputes about material facts and credibility determinations must be resolved at trial, not on summary judgment").

//

---

[4] In its opposition, VNUS states that Dr. Andrews' reference to "long" introducers is a reference to introducers "greater than 11 cm in length." (See Pl.'s Opp. at 7:19.) Although VNUS does not cite to the portion of Dr. Andrew's expert report or testimony in which he so opines, TVS, in its reply, does not dispute that Dr. Andrews defined "long" in such manner.

Accordingly, to the extent TVS seeks summary judgment on VNUS's contributory infringement claim as it pertains to introducers greater than 11 cm in length that have markers and/or a locking adapter, the motion will be denied, and to the extent TVS seeks summary judgment on VNUS's contributory infringement claim as it pertains to other introducers, the motion will be granted.[5]

### 2. Procedure Packs

TVS sells "procedure packs," which are medical-related products sold as a package. (See Buche Decl. Ex. R.) For example, one of the accused products, a procedure pack with the model number "TVS 4002" includes, inter alia, a 35 cm introducer, two extra-large gowns, ten sponges, a table cover, an IV set, and a scalpel. (See id. Ex. R at TVSB04028.) TVS argues that its "packs" have substantial non-infringing uses.

At the outset, the Court notes that VNUS, in its opposition, states that the accused packs are packs with an introducer greater than 11 cm in length with markers and/or a locking adapter, and TVS, in its reply, does not appear to dispute such assertion. As discussed above, a triable issue of fact exists as to whether such an introducer lacks any substantial, noninfringing use. For this reason, summary judgment is not appropriate as to procedure packs that include such introducers. See Vita-Mix, 581 F.3d at 1327 (holding "infringer does not evade liability [for contributory infringement] by bundling an infringing device with separate and distinct components that are capable of noninfringing use").

Moreover, the evidence on which TVS relies is insufficient to "point[ ] out" an "absence of evidence to support the nonmoving party's case." See Exigent Technology, Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1308 (Fed. Cir. 2006) (setting forth showing necessary for party seeking summary judgment as to issue on which it does not have burden at trial). In that regard, TVS first relies on testimony offered by its expert, Wayne S. Gradman, M.D. ("Dr. Gradman"), who opines that a particular pack with the product name "TVS 4018" can be used by physicians engaged in noninfringing "treatment of ovarian vein

---

[5] Neither party has identified the product numbers corresponding to introducers greater than 11 cm in length that have markers or a locking adaptor, or both.

1  embolization" (see Buche Decl. Ex. N at 111).  TVS's reliance on such testimony is
2  misplaced, however, because TVS 4018 is not an accused product.  (See Buche Reply
3  Decl. Ex. EEE.)  Similarly unhelpful is Dr. Gradman's testimony that he has used "packs" to
4  perform "[m]icro phlebectomies" (see Buche Decl. Ex. N at 15); because Dr. Gradman did
5  not identify any particular pack he may have used when performing micro phlebectomies,
6  the Court cannot determine whether he was referring to any of the accused packs.
7       Accordingly, to the extent TVS seeks summary judgment on VNUS's contributory
8  infringement claim as it pertains to procedure packs, the motion will be denied.

   **3.  Laser Fibers**

10      TVS sells laser fibers of various lengths.  (See id. Ex. S at TVSB14000.)  VNUS has
11  identified TVS's 400 micron and 600 micron laser fibers as accused products.  (See Buche
12  Reply Decl. Ex. EEE.)
13      In support of the instant motion, TVS offers evidence that 400 micron and 600
14  micron lasers are used in a number of medical procedures "other than endovenous laser
15  ablation" ("EVLA").  (See Buche Decl. Ex. BBB ¶ 9.)  In particular, according to the
16  company that sells lasers to TVS, the same lasers it sells to TVS for resale are "used in
17  connection with the following non-EVLA procedures: ENT, thorax surgery, general surgery,
18  [ ] orthopedics surgery (disc decompression)[,] urology [and] lipolysis."  (See id.)
19  Additionally, TVS relies on the opinion of its expert, Dr. Gradman, who opines that 400
20  micron and 600 micron laser fibers "have a huge variety of medical uses," such as use "in
21  neurological microsurgery" and "in treating spinal osteoid osteomas."  (See Buche Decl. Ex.
22  DDD at 6-8.)
23      VNUS fails to identify any evidence to the contrary, and, consequently, fails to show
24  that 400 micron and 600 micron laser fibers have no substantial noninfringing uses.
25  Rather, VNUS relies on evidence that, VNUS contends, would support a finding that "TVS
26  targets vein doctors who only use laser fibers for infringing endovenous ablation
27  procedures."  (See Pl.'s Opp. at 9:18-19.)  The evidence on which VNUS relies may be
28  relevant to establishing a claim of inducement pursuant to 35 U.S.C. § 271(b).  See Metro-

1 Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936-37 (2005) (describing
2 "inducement rule" in patent law as "one who distributes a device with the object of
3 promoting its use to infringe . . . is liable for the resulting acts of infringement by third
4 parties"); Hewlett Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir.
5 1990) (noting scope of activities prohibited by § 271(b) is "much broader" than scope
6 prohibited by § 271(c)). VNUS, however, cites no case, and the Court has located none,
7 holding that where a defendant sells a "staple article," see 35 U.S.C. § 271(c), to a narrow
8 clientele which, in turn, does not use the product to engage in noninfringing activities, the
9 defendant has engaged in contributory infringement.

10 The lack of such case authority is not surprising given the language of 35 U.S.C.
11 § 271(c), which requires the accused "material or apparatus" be "especially made or
12 especially adapted for use in an infringement of [a] patent." See 35 U.S.C. § 271(c); see
13 also Hewlett Packard, 909 F.2d at 1469 (holding § 271(c) codified common law doctrine
14 prohibiting sale of "component" that "had no other use except with [a] claimed product or
15 process"). Here, as discussed above, it is undisputed that 400 micron and 600 micron
16 lasers fibers are not "especially made or especially adapted" for any particular use, let
17 alone for use in infringing any of VNUS's claims. Moreover, as the Supreme Court has
18 recognized, "a finding of contributory infringement is normally the functional equivalent of
19 holding that the disputed article is within the monopoly granted to the patentee." See Sony
20 Corp. v. Universal City Studios, Inc., 464 U.S. 417, 441 (1984). Plainly, the subject
21 disputed articles, 400 micron and 600 micron laser fibers, are not within the monopoly
22 granted to VNUS.

23 Accordingly, to the extent TVS seeks summary judgment on VNUS's contributory
24 infringement claim as it pertains to laser fibers, the motion will be granted.

25 **4. Laser Consoles**

26 TVS sells "laser consoles" known as the "Optical Advantage 1500" ("OA 1500") and
27 the "Thermalite 1470" ("1470"). TVS argues that both consoles are capable of substantial,
28 //

8

noninfringing uses.[6]

With respect to the OA 1500, TVS offers evidence that such product can be used to treat "skin lesions," "red [and] blue facial veins," and "spider telangiectasia" (see Buche Decl. Ex. OO), as well as "plantar fasciitis" and "hamstring pulls" (see id. Ex. PP). VNUS offers no evidence to the contrary, and, indeed, fails to discuss the OA 1500 in any manner in its opposition.

Accordingly, to the extent TVS seeks summary judgment on VNUS's contributory infringement claim as it pertains to the OA 1500, the motion will be granted.

With respect to the 1470, TVS offers evidence that the Food and Drug Administration ("FDA") has approved the 1470 "for delivery of laser light to soft tissue in non-contact mode during general surgery procedures" (see id. Ex. QQ), and, in conformity therewith, that TVS advertises the 1470 as appropriate for "a variety of [g]eneral and [v]ascular [s]urgical [p]rocedures" (see id. Ex. RR). Additionally, TVS offers the testimony of its expert, Dr. Gradman, who opines that the 1470 is appropriate for "urological use" (see id. Ex. N at 90), as well as a declaration from the President of Quanta Systems, SPA., the company from which TVS purchases the 1470s, who states the 1470 "has been successfully used in other procedures, such as pulmonary surgery, urology, proctology [and] dermatology" (see id. Ex. CCC ¶ 9).

The Court finds the above-referenced evidence offered by TVS is sufficient to meet its initial burden to demonstrate the 1470 is "suitable for substantial, noninfringing use."[7] See 35 U.S.C. § 271(c); cf. Exigent Technology, 442 F.3d at 1308-09 (holding, for

---

[6] Although the OA 1500 is included on the list of accused products VNUS served on TVS, the 1470 is not. (See Buche Reply Decl. Ex. EEE.) Both parties, however, appear to be of the view that VNUS has otherwise identified the 1470 as an accused product.

[7] TVS also offers evidence that the FDA is considering whether to approve the 1470 for use in liposuction procedures, and that its expert and the manufacturer of the 1470 each expect the FDA to grant such approval. (See id. Ex. N at 90, CCC ¶ 10.) TVS, however, has not shown that a use not presently in existence, but which may occur in the future, can constitute a "substantial, noninfringing use" for purposes of § 271(c). Cf. Vita-Mix, 581 F.3d at 1327 (holding substantial noninfringing uses are uses that are "not unusual" or "experimental").

purposes of claim of direct infringement, defendant meets initial burden by filing motion for summary judgment in which defendant "stat[es] that the patentee [has] no evidence of infringement and point[s] to the specific ways in which accused systems [do] not meet the claim limitations").

The Court next considers whether VNUS, by its own evidence, has established a triable issue of fact exists as to whether the 1470 has no substantial, noninfringing uses. As discussed below, the Court finds VNUS has failed to make such a showing.

First, VNUS relies on an email in which an employee of TVS advised an employee of an import company that the "primary use" of a particular device being imported was "endovenous laser ablation." (See Lisson Decl. Ex. 36 at TVSB13725.) Although VNUS appears to rely on such statement as an admission by TVS, VNUS offers no evidence to support a finding that TVS's employee was referring to the 1470. Indeed, the evidence offered by VNUS indicates the TVS employee was referring to devices described as "Diode Medical Laser Family, Models 4, 6, 30" and having a "510(k)" number of K072034 (see id. Ex. 36 at TVSB13724-25), which number, according to evidence offered by VNUS for another purpose, is not the 510(k) number for the 1470 (see id. Ex. 51).[8]

Second, VNUS relies on TVS's 2010 catalog, which includes a description of the 1470 as "the latest in endovenous laser technology." (See Lisson Decl. Ex. 39 at TVSB14024.) Even assuming the statement could be understood as an admission that a user of the 1470 can employ the device to perform VNUS's claimed methods,[9] the statement cannot be reasonably understood as an admission that the 1470 has no other

---

[8] The FDA may approve the use of a device that is "'substantially equivalent' to an existing predicate device to avoid the premarket approval process"; such approval process is "known colloquially as the '§ 501(k) process.'" See In re Orthopedic Bone Screw Liability Litig., 159 F.3d 817, 818-19 (3rd Cir. 1998).

[9] The Court notes that VNUS does not purport to have invented all endovenous laser treatment methods. Indeed, VNUS, for another purpose, has relied on an opinion discussing endovenous methods patented by a different entity. See Diomed, Inc. v. Angiodynamics, Inc., 450 F. Supp. 2d 130, 135 (D. Mass. 2006) (referring to Diomed, Inc. patent that claims "'method' of treating blood vessels through the use of laser energy," and, in particular, one claim "address[ing] the means of inserting, positioning and emitting laser energy into a blood vessel").

use.

Finally, VNUS relies on its expert, Dr. Andrews, who opines that any use of the 1470 for "transdermal applications" is "insubstantial" (see Lisson Decl. Ex. 41 at 76) and, in particular, that the 1470 "would not be usable, for example, for treating spider veins or telangiectasias" (see id. Ex. 31 at 182).  Assuming such evidence would be sufficient to create a triable issue of fact as to whether transdermal applications would constitute insubstantial uses of the 1470, such evidence is not relevant with respect to the other uses shown by TVS, such as pulmonary surgery, urology, and proctology applications.

Accordingly, to the extent TVS seeks summary judgment on VNUS's contributory infringement claim as it pertains to the 1470, the motion will be granted, and, as noted above, to the extent TVS seeks summary judgment on VNUS's contributory infringement claim as it pertains to the OA 1500, the motion will be granted.

## CONCLUSION

For the reasons stated above, TVS's motion for summary judgment is hereby GRANTED in part and DENIED in part as follows:

1. To the extent TVS seeks summary judgment on VNUS's claim of direct infringement, the motion is GRANTED.

2. To the extent TVS seeks summary judgment on VNUS's claim of contributory infringement as it pertains to (a) introducers other than those greater than 11 cm in length that have markers and/or a locking adapter, (b) laser fibers, and (c) laser consoles, the motion is GRANTED.

3. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated:  August 11, 2010

MAXINE M. CHESNEY
United States District Judge