**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP d/b/a VNUS MEDICAL TECHNOLOGIES<br><br>Plaintiff<br><br>v.<br><br>BIOLITEC, INC., et al.,<br><br>Defendants<br>_____ / | No. C-08-3129 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART BIOLITEC, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION LIMITING DAMAGES** |

Before the Court is defendant biolitec, Inc.'s ("biolitec") "Motion for Summary Judgment of Non-Infringement and in the Alternative for Summary Adjudication Limiting Damages," filed June 25, 2010. Plaintiff Tyco Healthcare Group LP d/b/a VNUS Medical Technologies ("VNUS") has filed opposition, to which biolitec has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In its Second Amended Complaint ("SAC"), VNUS alleges that it owns all rights to five patents, specifically, U.S. Patent Nos. 6,752,803 ("'803 Patent"), 6,769,433 ("'433 Patent"), 6,258,084 ("'084 Patent"), 7,396,355 ("'355 Patent"), and 7,406,970 ("'970

---

[1] By a Clerk's notice filed July 22, 2010, the matter was taken under submission.

Patent"). (See SAC ¶ 12.) VNUS further alleges that "[b]iolitec has directly and/or indirectly infringed (including contributory and/or inducement of infringement) the claims of the '803, '433, '084, '355 and '970 [P]atents by making, using, selling, offering to sell and/or instructing users how to use products for endovenous laser treatment, including the [b]iolitec 'ELVeS - Endo Laser Vein System' and 'ELVeS PL.'" (See SAC ¶ 13.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

## DISCUSSION

By the instant motion, biolitec argues it is entitled to summary judgment on VNUS's claims of indirect infringement. In the alternative, biolitec argues that, in the event a triable

2

issue of fact exists as to VNUS's inducement claim, biolitec is entitled to an order limiting VNUS's damages to those based on specific acts of infringement proven at trial.

**A. Contributory Infringement**

"The patent laws provide that whoever sells an apparatus for use in practicing a patented method, knowing it to be 'especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.'" Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1327 (Fed. Cir. 2009) (quoting 35 U.S.C. § 271(c)). "Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention." Id.

A noninfringing use is "substantial" when it is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." See id. Whether a noninfringing use is "substantial" is an issue of fact. See, e.g., i4i Limited Partnership v. Microsoft Corp., 598 F.3d 831, 851 (Fed. Cir. 2010) (affirming jury's decision that defendant engaged in contributory infringement, in light of evidence accused product's noninfringing use "was not a practical or worthwhile use for the [consumers] for which the [accused device] was designed and marketed"). Consequently, for purposes of summary judgment, a defendant is entitled to summary judgment unless a trier of fact could reasonably find the accused product's noninfringing use(s) is/are insubstantial. See, e.g., Vita-Mix, 581 F.3d at 1328 (affirming order granting summary judgment of no contributory infringement, where "no reasonable jury could find [the accused product's noninfringing use] is an insubstantial use"); cf., e.g., Ricoh Co. v. Quanta Computer, Inc., 550 F.3d 1325, 1340 (Fed. Cir. 2008) (reversing order granting summary judgment of no contributory infringement in light of "material issue of fact of whether [the accused products] have no substantial noninfringing use other than to practice [the] claimed methods").

According to biolitec, VNUS has identified the following products as accused products: (1) Ceralas D15 810 nm laser console ("810 console"); (2) Ceralas D15 980 nm

3

laser console ("980 console"); (3) Ceralas E15 1470 nm laser console ("1470 console"); (4) bare tip laser fibers; and (5) "various procedure 'kits.'" (See Def.'s Mot., filed June 25, 2010, at 3:3-6.) biolitec argues that each such product is used by customers for substantial, noninfringing uses. The Court addresses the accused products, in turn.

**1. 810 and 980 Consoles**

biolitec sells "Ceralas D15 810 nm and D15 980 nm diode laser consoles." (See Foley Decl. ¶ 4.) biolitec argues that said consoles are appropriate for a number of substantial, noninfringing uses. In support of such argument, biolitec offers evidence to support a finding that each of said consoles has been approved by the Food and Drug Administration ("FDA") for "numerous different applications." (See id.) In particular, according to biolitec, the 810 console can be used to treat "spider veins," to excise "cutaneous lesions (e.g., birthmarks)," and to remove "damaged tissue from wounds (i.e., debridement)" (see id. ¶ 10), and the 980 console can be used to perform "tonsillectom[ies]" and "neck dissection" procedures, to remove "benign lesions from the ear, nose and throat," and to excise "carcinoma of the larynx" (see id. ¶ 5; see also Steenburg Decl. Ex 52 at 57 (testimony by physician that 980 console is used to remove "skin lesions" and in "veterinary medicine [,] urology [and] opthalmopathy").)

VNUS fails to identify any evidence to the contrary, and, consequently, fails to show the 810 and 980 consoles have no substantial noninfringing uses. Rather, VNUS relies on evidence that, VNUS contends, would support a finding that "biolitec sold those [products] to physicians who only use them for endovenous ablation."[2] (See Pl.'s Opp., filed July 9, 2010, at 9:18-19.) The evidence on which VNUS relies may be relevant to establishing a

---

[2]The Court understands VNUS's reference to "endovenous ablation" to be limited to its claimed methods, as VNUS does not purport to have invented all endovenous ablation procedures. Indeed, VNUS, for another purpose, has relied on an opinion discussing endovenous methods patented by a different entity. See Diomed, Inc. v. Angiodynamics, Inc., 450 F. Supp. 2d 130, 135 (D. Mass. 2006) (referring to Diomed patent that claims "'method' of treating blood vessels through the use of laser energy," and, in particular, one claim therein "address[ing] the means of inserting, positioning and emitting laser energy into a blood vessel"). Moreover, biolitec has offered evidence, undisputed by VNUS, that biolitec is the assignee of a patent that claims "endovenous laser ablation procedures." (See Foley Decl. ¶ 7.)

4

1  claim of inducement pursuant to 35 U.S.C. § 271(b).  See Metro-Goldwyn-Mayer Studios
2  Inc. v. Grokster, Ltd., 545 U.S. 913, 936-37 (2005) (describing "inducement rule" in patent
3  law as "one who distributes a device with the object of promoting its use to infringe . . . is
4  liable for the resulting acts of infringement by third parties"); Hewlett Packard Co. v.
5  Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990) (noting scope of activities
6  prohibited by § 271(b) is "much broader" than scope prohibited by § 271(c)).  VNUS,
7  however, cites no case, and the Court has located none, holding that where a defendant
8  sells a "staple article," see 35 U.S.C. § 271(c), to a narrow clientele which, in turn, uses the
9  product to engage in infringing activities, the defendant has engaged in contributory
10 infringement.

11      The lack of such case authority is not surprising given the language of 35 U.S.C.
12 § 271(c), which requires the accused "material or apparatus" be "especially made or
13 especially adapted for use in an infringement of [a] patent."  See 35 U.S.C. § 271(c); see
14 also Hewlett Packard, 909 F.2d at 1469 (holding § 271(c) codified common law doctrine
15 prohibiting sale of "component" that "had no other use except with [a] claimed product or
16 process").  Here, there is no evidence to support a finding that the 810 and 980 consoles
17 are "especially made or especially adapted" for use in infringing any of VNUS's claims.
18 Indeed, biolitec has offered evidence, undisputed by VNUS, that biolitec sold those
19 consoles before any of the patents at issue herein were issued (see Foley Decl. ¶¶ 4, 9),
20 and there is no evidence, or even allegation, that the consoles biolitec sold after the
21 subject patents issued were in any manner adapted or changed.  Moreover, as the
22 Supreme Court has recognized, "a finding of contributory infringement is normally the
23 functional equivalent of holding that the disputed article is within the monopoly granted to
24 the patentee." See Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 441 (1984).
25 Plainly, the subject disputed articles, the 810 and 980 consoles, are not within the
26 monopoly granted to VNUS.

27      Accordingly, to the extent biolitec seeks summary judgment on VNUS's contributory
28 infringement claim as it pertains to the 810 and 980 consoles, the motion will be granted.

**2. Bare Tip Laser Fibers**

biolitec sells "blunt (i.e. bare) tip laser fibers." (See Foley Decl. ¶ 9.) Such fibers, biolitec asserts, are appropriate for a number of substantial, noninfringing uses. In support of its argument, biolitec offers evidence to support a finding that bare tip laser fibers are used for "numerous different medical applications, including otolaryngology (e.g., tonsillectomy), urology, podiatry, and pulmonary procedures." (See id.) In its opposition, VNUS offers no evidence to support a finding that bare tip laser fibers, as a general matter, are incapable of any substantial, non-infringing use. Rather, VNUS makes two arguments as to why summary judgment is inappropriate.

First, VNUS relies on evidence that, VNUS contends, would support a finding that "biolitec sold those [ ] fibers to physicians who only use them for endovenous ablation." (See Pl.'s Opp. at 9:18-19.) For the reasons stated above with respect to the 810 and 980 consoles, this argument is unavailing.

Second VNUS relies on the opinion of its expert, Robert T. Andrews, M.D. ("Dr. Andrews"), specifically, Dr. Andrews' opinion that, given the manner in which biolitec's catheters or sheaths with locking features work with laser fibers, such locking features provide a "specific advantage" to users only when the users perform "endovenous ablation procedures." (See Lisson Decl. Exs. 31 at 235, 41 at 69.) Assuming, arguendo, Dr. Andrews' reference to "endovenous ablation procedures" can be understood as a reference to the claimed methods, see supra n.2, VNUS fails to explain how Dr. Andrews' opinion supports a finding that the bare tip laser fibers themselves, as opposed to the particular catheters/sheaths he describes, lack any substantial, noninfringing use, and the Court finds it does not.

Accordingly, to the extent biolitec seeks summary judgment on VNUS's contributory infringement claim as it pertains to bare tip laser fibers, the motion will be granted.

**3. 1470 Console and Procedure Kits**

biolitec sells "the Ceralas E15 1470 nm laser console" (see Foley Decl. ¶ 16) as well as "procedure kits" (see id. Exs. 4, 5). biolitec contends such products have a substantial,

noninfringing use, specifically, to perform "endovenous procedures" that do not involve "compressing the vein." (See Def.'s Mot. at 7:19-20.)

biolitec argues, and VNUS does not dispute, that each claim asserted against biolitec requires compression of a vein. See, e.g., '084 Patent, col. 17, ll. 63-67 (claiming step of "injecting a tumescent fluid solution into selected tissue . . . to cause the tissue to become tumescent and compress the hollow anatomical structure at the treatment site to a compressed size"); '433 Patent, col. 19, ll. 20-22 (claiming step of "pre-shaping the vein . . . so as to reduce the diameter of the vein").[3] Consequently, a person who engages in direct infringement must compress the vein being treated. See Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method.") (emphasis in original). It necessarily follows that VNUS cannot establish its claim of contributory infringement against biolitec, based on biolitec's sales of the 1470 and/or procedure kits, if physicians can use those products in such a manner that does not compress the vein being treated, and provided such use is substantial.

In support of the instant motion, biolitec submits the deposition testimony of two physicians, John Mauriello, M.D. ("Dr. Mauriello") and Michael Bardwil, M.D. ("Dr. Bardwil"), each of whom states he uses the 1470 console to perform endovenous procedures. In particular, biolitec relies on Dr. Mauriello's testimony that he believes it would be "a detriment to compress the vessel" (see id. Ex 52 at 28), and that he does not "take any effort to avoid [compression][4] or cause it" (see id. Ex. 52 at 151-52), as well as Dr. Bardwil's testimony that a person performing endovenous procedures doesn't "seem to need [compression] with the laser" (see id. Ex. 53 at 39). Whether a user of the 1470 console and/or procedure kits intends to cause compression, however, is not dispositive

---

[3]By order filed October 23, 2009, the Court construed "pre-shaping the vein" to mean "applying compression external to the vein to shape." (See Order Construing Claims, filed October 23, 2009, at 5:7-12.)

[4]Dr. Mauriello does not explain why, if he believes compression could be detrimental, he does not take steps to avoid it.

7

1  with respect to whether such user is infringing; rather, the question is whether, irrespective
2  of the user's subjective intent, he or she is in fact practicing the claimed methods, e.g.,
3  compressing a vein as a result of the administration of tumescent anesthesia. See BMC
4  Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("Direct
5  infringement is a strict liability offense, but it is limited to those who practice each and every
6  element of the claimed invention.").

7  biolitec also relies on testimony by Dr. Mauriello and Dr. Bardwil regarding what
8  those physicians have observed when viewing the vein he is treating by means of an
9  ultrasound machine. Specifically, Dr. Mauriello, when asked if he had observed "the vein
10 decrease in diameter as a consequence of administering local anesthesia around it,"
11 responded, "[I]f I said no, I would be blind because you can see that at times, sure," (see
12 Steenburg Decl. Ex. 52 at 55), while Dr. Bardwil testified that he "usually" looks at the
13 ultrasound machine as he applies tumescent anesthesia to "make sure that [he has]
14 surround[ed] the vein with the fluid" and that on "some occasions" he has "see[n] the vein is
15 a circle and that [the] circle appears to become small" (see id. Ex. 53 at 39-40).

16 The above-quoted testimony supports a finding that when said physicians inject
17 tumescent anesthesia, compression has occurred at least at times. biolitec fails to explain
18 how such testimony nonetheless would foreclose a finding of contributory infringement. To
19 the extent, however, biolitec is arguing that if "at times" or on "some occasions" the
20 testifying physicians observed compression, then at other "times" or on other "occasions"
21 they must not have observed compression, neither physician so testified, at least
22 expressly. Consequently, the Court cannot find the trier of fact would be obligated to
23 interpret the subject testimony in such a manner. See Matsushita, 475 U.S. at 587
24 (holding, on summary judgment, evidence must be "viewed in the light most favorable to
25 the party opposing the motion").

26 biolitec further argues that physicians can use the 1470 console and the procedure
27 kits without using any tumescent anesthesia, but, rather, with nerve block anesthesia,
28 which anesthesia does not cause compression. In support of this argument, biolitec relies

on the testimony of Phu Do, M.D. ("Dr. Do"), who states that on over 100 occasions, he has performed endovenous laser ablation using the 1470 console and biolitec's kits, wherein he employed "a nerve block anesthetic technique," rather than tumescent anesthesia, and that compression of the vein did not occur. (See Do Decl. ¶¶ 3, 4.) Dr. Do's testimony is sufficient to identify a noninfringing use for the 1470 console and the kits, and VNUS does not argue to the contrary. Rather, VNUS argues that a triable issue of fact exists as to whether the use identified by Dr. Do is substantial. In addition to pointing to Dr. Do's testimony that he is unaware of any other physician who uses a nerve block aesthetic when performing endovenous procedures with biolitec's products (see Lisson Decl. Ex. 103 at 49), VNUS relies on the opinion of its expert Dr. Andrews, who states that practicing endovenous ablation techniques with a nerve block is "not advisable" because tumescent anesthesia "reduces the risk of complications including skin burns and nerve injury," whereas the use of nerve block anesthesia "runs the risk of permanent nerve damage and compromises the patient's ability to ambulate immediately following the procedure" (see id. Ex. 41 at 34-35; Andrews Decl. ¶ 2.) If a trier of fact were to credit Dr. Andrews' opinion, a reasonable trier of fact could find the nerve block technique practiced by Dr. Do is "impractical" in light of the risks. See Vita-Mix, 581 F.3d at 1327 (observing "impractical" use of accused product does not constitute "substantial" use for purposes of § 271(c)).[5]

Accordingly, to the extent biolitec seeks summary judgment on VNUS's contributory infringement claim as it pertains to the 1470 console and its kits, the motion will be denied.[6]

---

[5] VNUS also asserts that biolitec "has not obtained FDA 510(k) approval to promote" use of nerve block anesthesia with its products (see Pl.'s Opp. at 5:6-8), apparently to support an argument that such use would be experimental. See Vita-Mix, 581 F.3d at 1327 (observing "experimental" use of accused product does not constitute "substantial" use for purposes of § 271(c)). VNUS, however, fails to cite to any evidence to support such assertion.

[6] By order filed August 11, 2010, the Court found defendant Total Vein Solutions, LLC ("TVS") was entitled to summary judgment on VNUS's claim of contributory infringement as based on TVS's sales of its 1470 console product. In its motion, TVS sought summary judgment for reasons different than those set forth in biolitec's motion. Although TVS, in its reply, joined in the arguments made by biolitec, biolitec has not joined in TVS's motion, nor has biolitec provided any argument or authority to support a finding that the Court's rulings as to TVS likewise would be applicable to biolitec.

**B. Inducement of Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement." DSU Medical Corp. v. JMS Co., 471 F. 3d 1293, 1305 (Fed. Cir. 2006). Stated otherwise, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." See id. at 1306 (internal quotation and citation omitted) (emphasis in original). Consequently, a defendant is entitled to summary judgment where the "record is devoid of direct or circumstantial evidence that [the defendant] intend[ed] to encourage infringement by its customers." See Vita-Mix, 581 F.3d at 1329.

In that regard, courts have found the requisite intent can be inferred from certain types of actions, for example, "advertising an infringing use or instructing how to engage in an infringing use." See Grokster, 545 U.S. at 937-40; see, e.g., Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1364 n. 4 (Fed. Cir. 2006) (holding requisite intent could be inferred from evidence defendant "provided [an] instruction sheet to customers directing them to perform specific acts leading to the assembly of infringing devices").

Here, biolitec argues that if physicians using its products administer tumescent anesthesia in accordance with biolitec's "Instructions For Use" ("IFUs") (see Foley Decl. Exs. 4, 5), compression may but does not necessarily result; biolitec offers evidence that, if credited by the trier of fact, could support such a finding. (See Steenburg Decl. Ex. 6 at 34-40, 44-45, Ex. 34 at 172-74, Ex. 37 at 53-54.) Although, based on such evidence, a trier of fact could find the biolitec IFUs do not necessarily teach an infringing method, VNUS has offered evidence that, if credited by a trier of fact, could support a finding that physicians administering tumescent anesthesia in conformity with the IFUs necessarily would cause the vein being treated to compress. (See Lisson Decl. Ex. 30 at 32, Ex. 31 at 137, Ex. 41 at 25, 27-29, 32, and Tabs E and F thereto, Ex. 106 at VNUS_044898;

10

Andrews Decl. ¶ 2.)[7] In short, a triable issue of fact exists as to the requisite intent. See Golden Blount, 438 F.3d at 1364.[8]

Accordingly, to the extent biolitec seeks summary judgment on VNUS's inducement claim, the motion will be denied

**C. Limitation On Damages**

biolitec argues that because use of biolitec's accused products will not necessarily infringe VNUS's patents, biolitec, in the event it does not prevail on its motion for summary judgment on VNUS's inducement claim, is entitled to an order stating "VNUS's damages shall be limited to those based on any specific acts of infringement that VNUS proves at trial." (See Def.'s Mot. at 15:22-23.) VNUS argues such an order would be premature. The Court agrees.

The principle on which biolitec relies is applicable to a claim of indirect infringement where the plaintiff seeks to establish damages under a "lost profits" theory. See Standard Haven Products, Inc. v. Gencor Industries, Inc., 953 F.2d 1360, 1374 (Fed. Cir. 1992) (holding where plaintiff sought to establish "lost profits" as remedy for claim of indirect infringement, amount of lost profits could only be based on six of ten sales of accused device, because plaintiff did not establish remaining four sales resulted in act of direct

---

[7] biolitec argues that the Court should not consider the expert opinions offered by Dr. Andrews in his report, for the asserted reason such opinions are based on "false" statements. (See Def.'s Opp. to VNUS's Mot. for Leave, filed July 21, 2010, at 2.) biolitec, however, fails to establish that, for purposes of summary judgment, the Court can find Dr. Andrews' opinions are based on any "false" statement. Indeed, the asserted contradictory testimony by Dr. Andrews could reasonably be interpreted by the trier of fact to be consistent with, or at a minimum not contrary to, his expert report. (Compare Steenburg Decl. Ex. 35 at 119 (Dr. Andrews' testimony that "you will have compression of the vein" as result of injecting tumescent anesthesia), with Lisson Decl. Ex. 41 at 32 (Dr. Andrews' report stating physicians have "long-standing practice of employing tumescent anesthesia to beneficially compress the vein and protect surrounding structures from thermal damage during endovenous ablation").)

[8] Citing DSU, biolitec argues that a trier of fact could not find biolitec has the requisite intent in light of evidence that some of its customers have no intent to cause compression when administering tumescent anesthesia. As discussed in DSU, the requisite intent for purposes of a claim under 271(b) is the "intent to cause direct infringement." See DSU, 471 F.3d at 1306. Nothing in DSU, however, states or suggests that where a customer acting in conformity with a supplier's IFUs in fact infringes but does not have the subjective intent to infringe, the supplier cannot, as a matter of law, have engaged in inducement.

11

infringement by purchaser). The principle, however, does not apply to a claim of indirect infringement where the plaintiff seeks to establish damages under a "reasonable royalty" theory. See Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1323-24 (Fed. Cir. 2009) (rejecting defendant's argument that patentee, in order to establish reasonable royalty as remedy for claim of inducement, "had to tie its damages claim to demonstrated instances of direct infringement").

Here, biolitec has not argued, let alone shown that as a matter of law, VNUS is precluded from establishing damages under a reasonable royalty theory.

Accordingly, to the extent the motion seeks an order limiting any award of damages to specific acts of infringement, the motion will be denied as premature.

## CONCLUSION

For the reasons stated above, biolitec's motion is hereby GRANTED in part and DENIED in part as follows:

1. To the extent biolitec seeks summary judgment on VNUS's claim of contributory infringement as it pertains to 810 consoles, 980 consoles, and bare tip laser fibers, the motion is GRANTED.

2. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: August 23, 2010

MAXINE M. CHESNEY
United States District Judge