Matthew B. Lehr (Bar No. 213139)
Diem-Suong T. Nguyen (Bar No. 237557)
David J. Lisson (Bar No. 250994)
Chung G. Suh (Bar No. 244889)
Jeremy Brodsky (Bar No. 257674)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California  94025
Telephone: (650) 752-2000
Facsimile: (650)  752-2111

Attorneys for Plaintiff
Tyco Healthcare Group LP d/b/a
VNUS Medical Technologies

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP d/b/a VNUS MEDICAL TECHNOLOGIES, <br><br> Plaintiff, <br><br> v. <br><br> BIOLITEC, INC. and NEW STAR LASERS, INC. d/b/a COOLTOUCH, INC., <br><br> Defendants. | LEAD CASE NO. C08-03129 MMC <br><br> CASE NO. C08-03129 MMC <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1** <br><br> **[REDACTED]** <br><br><br> Date:    September 14, 2010 <br> Time:   9:30 a.m. <br> Judge:  Hon. Maxine M. Chesney |
| TYCO HEALTHCARE GROUP LP d/b/a VNUS MEDICAL TECHNOLOGIES, <br><br> Plaintiff, <br><br> v. <br><br> TOTAL VEIN SOLUTIONS, LLC d/b/a TOTAL VEIN SYSTEMS, <br><br> Defendant. | CASE NO. C08-04234 MMC <br> (consolidated with C08-03129 MMC) |

1

## TABLE OF CONTENTS

2

P<small>AGE</small>

3  I.       LICENSES IN THIS CASE.................................................................................2

4          A.      VNUS's Licensing of the Patents-in-Suit .............................................2

5          B.                      **REDACTED**                          ..............................................3

6  II.      ARGUMENT .......................................................................................................5

7          A.      Licenses for the Patents-in-Suit May Be the "Most Reliable" Evidence of a
8                  Reasonable Royalty ...............................................................................5

           B.      VNUS's Licenses of the Patents-in-Suit Are Admissible as the Most Reliable
9                  Evidence of a Reasonable Royalty ........................................................7

10         C.      The ADI, VSI, and Dornier Licenses Are Not Inadmissible Under Rule 408............9

11         D.      The Licenses Are Not Inadmissible Hearsay.........................................10

12  III.    CONCLUSION.................................................................................................11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

3

### CASES

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
4    No. 5:09-cv-135 (E.D. Tex. Mar. 31, 2010) ................................................................. 6

5  *Broadcort Capital Corp. v. Summa Med. Corp.*,
    972 F.2d 1183 (10th Cir. 1992) ................................................................. 10
6

*Datatreasury Corp. v. Wells Fargo & Co.*,
7    No. 2:06-cv-72, 2010 WL 903259 (E.D. Tex. Mar. 4, 2010) ................................. 6, 7

8  *Fenner Inv., Ltd. v. Hewlett-Packard Co.*,
    No. 6:08-cv-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) ........................... 6, 7
9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)...................... 5
10

*Hudspeth v. Comm'r of Internal Revenue Serv.*, 914 F.2d 1207 (9th Cir. 1990) ........................... 10
11

*IP Innovation LLC v. Red Hat, Inc.*,
12    No. 2:07-cv-447, 2010 WL 986620 (E.D. Tex. Mar. 2, 2010) ................................... 6

13  *Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).................................................................. 5
14

*Matsuura v. E.I. du Pont De Nemours and Co.*,
15    No. 96-01180, 2006 WL 2734291 (D. Haw. Sept. 22, 2006) ................................... 10

16  *Midwest Indus. Inc. v. Karavan Trailers Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999)................................................................. 9
17

*Orlando v. Carolina Cas. Ins. Co.*,
18    No. Civ-F-07-0092, 2007 WL 781598 (E.D. Cal. Mar. 13, 2007) ............................. 9

19  *ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*,
    No. 6:08-cv-325, 2010 WL 3021550 (E.D. Tex. Aug. 2, 2010)........................... 6, 11
20

*ResQNet.com, Inc. v. Lansa, Inc.*,
21    594 F.3d 860 (Fed. Cir. 2010)............................................................ 1, 5, 6

22  *Towerridge, Inc. v. T.A.O., Inc.*,
    111 F.3d 758 (10th Cir. 1997) ................................................................. 10
23

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
24    563 F.3d 1271 (Fed. Cir. 2009)................................................................. 5

25  *Tyco Healthcare Group LP v. E-Z-EM, Inc.*,
    No. 2:07-cv-262, 2010 WL 774878 (E.D. Tex. Mar. 2, 2010)................................... 6
26

27

28

**RULES**

Fed. R. Evid. 801(c) ................................................................................................ 10

Fed. R. Evid. 804(b)(3) ........................................................................................... 10

1    It is telling that Defendants mention the Federal Circuit's decision earlier this year in

2  *ResQNet* for the first time on page seven of a barely more than eight-page brief, after forcing the

3  Court to wade through citations to more than 20 pre-*ResQNet* decisions.  And it is conspicuous that

4  Defendants ignore completely the bulk of the district court opinions that have considered the

5  impact of *ResQNet*, opinions acknowledging a significant shift in perspective regarding the

6  potential relevance to patent damages of licenses that arise out of litigation.

7    VNUS does not dispute that prior to *ResQNet*, the weight of authority supported exclusion

8  of licenses arising out of litigation.  But *ResQNet* brought to that issue the Federal Circuit's recently

9  renewed emphasis on the principles that trial courts "must carefully tie proof of damages to *the*

10  *claimed invention's footprint* in the market place" and "must exercise vigilance when considering

11  past licenses to technologies *other* than the patent in suit."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594

12  F.3d 860, 869 (Fed. Cir. 2010) (emphasis added).  To apply these principles to the question of

13  admissibility of litigation-related licenses in a manner that is grounded in common sense and

14  economic realism is to appreciate, as the Federal Circuit now clearly does, that the old cases upon

15  which Defendants rely swept with too broad a broom, depriving fact-finders of any information

16  about historical licenses having a genuine factual connection to the invention at issue, and too often

17  leaving them instead to consider licenses having little or no connection to the invention, parties

18  and/or market actually at issue in the pending case.

19    *ResQNet* stands, without question, at least for the proposition that in some cases the

20  license(s) *most reliably relevant* to determination of a reasonable royalty will have arisen out of

21  litigation.  For a number of reasons, this is plainly one such case.

22    First, the three licenses in question are the *only* licenses that have ever existed for the

23  Patents-in-Suit.

24    Second, all three were entered into *by VNUS* as licensor, and all three with licensee

25  companies that (like Defendants) were at the time of the licenses and are today *competitors of*

26  *VNUS* in the market for endovenous ablation products.

27    Third, these were not lump-sum settlements that conflated compensation to compromise

28  past damages claims in litigation with compensation for future use of the Patents-in-Suit.  Instead,

1

1   they broke out separately from payments for past sales the *going forward* royalty structure

2   according to which future use of claimed inventions would be licensed.  This is significant not only

3   because (like a hypothetical negotiated reasonable royalty) the agreed license structures had to

4   accommodate the parties' expectations with respect to their ongoing business operations and

5   viability, and not only because *ResQNet* found a running royalty license arising out of litigation to

6   be "the most reliable license" in that case, but also because the particular type of running royalty

7   structure used in the existing licenses strongly supports the type of running royalty structure that

8   VNUS advances as the measure of reasonable royalty damages in this case.

9           Fourth, in the context of VNUS's lost profits analysis, the terms of these licenses establish

10   as a matter of simple mathematics the royalty payments VNUS would have received for the portion

11   of Defendants' infringing sales that, in the "but for infringement" world, would have been made by

12   the licensees rather than by VNUS.

13          Finally, the licenses that *Defendants* intend to have the jury consider are conspicuously

14   lacking in meaningful relevance to the Patents-in-Suit or the circumstances of a hypothetical

15   reasonable royalty negotiation.  They are clearly far less relevant and less reliable than the licenses

16   that Defendants seek to exclude.

17          Defendants' Motion *in Limine* No. 1 should be denied.

18   **I.      LICENSES IN THIS CASE**

19          **A.      *VNUS's Licensing of the Patents-in-Suit***

20          VNUS has licensed the Patents-in-Suit to only three companies: AngioDynamics, Inc.

21   ("ADI"), Vascular Solutions, Inc. ("VSI"), and Dornier MedTech America, Inc. ("Dornier").  Like

22   Defendants in this case, all three companies were and are direct competitors of VNUS who sell

23   products in the endovenous ablation device market.[1]

24          In 2008, VNUS settled *VNUS Med. Techs., Inc. v. Diomed Holdings, Inc. et al.* ("*VNUS I*"),

25

26

_____

27       [1] *See* Exhibit 26 to the accompanying Declaration of Diem-Suong T. Nguyen (the "Nguyen Decl.") (Excerpt of Bersin Rebuttal Expert Report) at 13; *see also* Nguyen Decl. 30 (Excerpt of Bersin Depo.) at 101:23-102:14, 104:17-19.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1
CASE NOS. C08-03129 MMC & C08-04234 MMC

1   in which VNUS accused ADI and VSI of infringing three of the Patents-in-Suit.[2]   **REDACTED**

2                                              **REDACTED**

3

4        In July 2010, VNUS and Dornier reached an agreement resolving all claims in this

5   litigation, in which VNUS has asserted the same three patents as it did in *VNUS I* and two newly

6   issued continuations of those patents.                    **REDACTED**

7

8

9   ***B.***                        **REDACTED**

10       While minimizing the relevance of the only actual licenses of the Patents-in-Suit,

11                                     **REDACTED**

12

13                                     **REDACTED**

14

15

16

17

18

19

20

21   _____

22       [2] Nguyen Decl. Ex. 31 (Final ADI/VSI License).  VNUS recently became aware that, due to
     an inadvertent error in compiling signature pages, the version of the ADI and VSI license
     agreement produced was not the final form of the agreement.  VNUS accordingly is submitting the
23   true final form, which has been produced to Defendants and in all relevant respects is identical to
     the version attached as Steenberg Decl. Ex. 1.

24       [3] Nguyen Decl. Ex. 31 (Final ADI/VSI License) at 3-4.

25       [4] Steenberg Decl. Ex. 10 at 2-3, 4-5.

26       [5] Nguyen Decl. Ex. 32 (Excerpt of Stuckwisch Rebuttal Expert Report) at 25, Table 2.

         [6] Nguyen Decl. Ex. 33 (Excerpt of Stuckwisch Depo.) at 167:12-168:3.
                                     **REDACTED**
     **REDACTED**  Nguyen Decl. Ex. 33 (Excerpt of Stuckwisch Depo.) at 172:17-22.

                                           3

1

**REDACTED**

2

3

4

5

6

7

8

9

**REDACTED**

10

11

12 Moreover, the '777 patent is substantially narrower than the VNUS patents because it is relevant

13 only to the use of laser devices in the endovenous ablation market, while VNUS's patents cover use

14 of both laser and radio-frequency devices.[15]   Finally, a straightforward design-around of the '777

15 Patent is available to avoid infringement even with respect to laser devices.[16]

16

17

18

_____

19     [8] Nguyen Decl. Ex. 26 (Excerpt of Bersin Rebuttal Expert Report) at 46, Exhibit 4.

20     [9] Nguyen Decl. Ex. 30 (Excerpt of Bersin Depo.) at 217:16-218:3, 219:5-11.

21     [10] Nguyen Decl. Ex. 26 (Excerpt of Bersin Rebuttal Expert Report) at 40-42; *see also* Nguyen Decl. Exs. 34 and 35 (VNUS_140935 and VNUS_140918).

22     [11] Nguyen Decl. Exs. 34 (VNUS_140935) at 2; and 35 (VNUS_140918) at 2.

23     [12] Nguyen Decl. Ex. 30 (Excerpt of Bersin Depo.) at 195:21-196:3, 199:20-200:1.

     [13]       **REDACTED**
          **REDACTED**
                                                  Nguyen Decl. Exs. 32 (Excerpt of
25 Stuckwisch Rebuttal Expert Report) at 25, n. 127; and 26 (Excerpt of Bersin Rebuttal Expert Report) at 46.

26     [14] Nguyen Decl. Ex. 33 (Excerpt of Stuckwisch Depo.) at 178:14-17.

27     [15] Nguyen Decl. Ex. 36 ('777 Patent) at claims 1, 9 and 21.

28     [16] Nguyen Decl. Ex. 37 (Excerpt of Hennings Depo.) at 106:22-107:9.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1
CASE NOS. C08-03129 MMC & C08-04234 MMC

## II.      ARGUMENT

### A.      *Licenses for the Patents-in-Suit May Be the "Most Reliable" Evidence of a Reasonable Royalty*

The Federal Circuit has recently highlighted the importance of a realistic approach to the calculation of damages and the determination of a reasonable royalty.  Specifically, the court has emphasized the need to control what licenses should be considered in the analysis and to link any such license directly to the infringed patent.[17]  *See ResQNet.com*, 594 F.3d at 871; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009).  Thus, in *Lucent Techs.*, for example, the court overturned a damages verdict because license agreements considered were "radically different from the hypothetical agreement under consideration." *Lucent Techs.*, 580 F.3d at 1327. Similarly, in *ResQNet*, the Federal Circuit overturned the district court because the licenses used by the plaintiff's damages expert had "no relationship to the claimed invention." *ResQNet.com*, 594 F.3d at 870.

As part of its emphasis on a more precise analysis, the Federal Circuit has abandoned the traditional rule that licenses arising out of litigation are generally irrelevant to the determination of a reasonable royalty.  Significantly, in *ResQNet*, "the *most reliable* license in [the] record arose out of litigation." *ResQNet.com*, 594 F.3d at 872 (emphasis added).  The acknowledgment that litigation-related licenses may be highly relevant, and are not necessarily categorically different from licenses entered into outside of litigation, is not surprising given the Federal Circuit's recent observation that a license and a covenant not to sue in a settlement agreement are the same.  *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1274-76 (Fed. Cir. 2009). Licenses, by their nature, are entered into in the shadow of litigation, whether or not a formal complaint has yet been filed or explicitly threatened.  While litigation factors may affect the terms reached in a license arising out of litigation, such a license may nonetheless be more probative than

---

[17] Such licenses are generally considered under the first or second factors going to reasonable royalty that were laid out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971):  (1) the royalties received by the patentee for the licensing of the patent-in-suit, and (2) the rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

1   unrelated licenses concerning different technologies or parties.  Accordingly, the court in *ResQNet*

2   instructed the district court to consider the litigation-related agreement on remand and to disregard

3   licenses that were not connected to the patent-in-suit.  *ResQNet.com*, 594 F.3d at 872-3.

4         Following *ResQNet*, numerous district courts have acknowledged the probative value of

5   licenses arising out of litigation and have held them to be admissible.  *See Datatreasury Corp. v.*

6   *Wells Fargo & Co.*, No. 2:06-cv-72, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010) ("In light of

7   *ResQNet*, litigation-related licenses should not be excluded."); *ReedHycalog UK, Ltd. v. Diamond*

8   *Innovations Inc.*, No. 6:08-cv-325, 2010 WL 3021550, at *3 (E.D. Tex. Aug. 2, 2010) ("The

9   probative value of the five licenses involving the Patents-in-Suit that resulted from litigation

10  outweighs the danger of potential prejudice or jury confusion of the issues."); *Advanced Tech.*

11  *Incubator, Inc. v. Sharp Corp.*, No. 5:09-cv-135, slip. op. at 6 (E.D. Tex. Mar. 31, 2010) (Ex. 2)

12  (denying motion to exclude litigation-related licenses on the ground that *ResQNet* "found that

13  litigation-related licenses can be highly probative of a reasonable royalty"); *see also Tyco*

14  *Healthcare Group LP v. E-Z-EM, Inc.*, No. 2:07-cv-262, 2010 WL 774878, at *2 (E.D. Tex. Mar.

15  2, 2010) (holding settlement agreement and negotiations discoverable because "a prior, related

16  settlement agreement . . . may be central to the fact-finder's determination of damages using a

17  hypothetical negotiation analysis").

18        The fact that Defendants refuse to acknowledge these cases is notable.  Indeed, all but two

19  of the cases cited in their entire brief predate *ResQNet*.  In one of the two post-*ResQNet* cases,

20  moreover, the court did not even address the admissibility of litigation-related licenses.  It simply

21  noted that two non-litigation-related licenses were more probative than the studies used by the

22  plaintiff's damages expert.  *IP Innovation LLC v. Red Hat, Inc.*, No. 2:07-cv-447, 2010 WL

23  986620, at *3 (E.D. Tex. Mar. 2, 2010).  In the only other post-*ResQNet* case cited by Defendants,

24  the district court held that the Federal Circuit's decision did not compel the admission of settlement

25  agreements for the purpose of showing customary business practice.  *Fenner Inv., Ltd. v. Hewlett-*

26  *Packard Co.*, No. 6:08-cv-273, 2010 WL 1727916, at *3 (E.D. Tex. Apr. 28, 2010).  The court

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1
CASE NOS. C08-03129 MMC & C08-04234 MMC

specifically distinguished the circumstance where, as here, licenses to the actual patents at issue in the litigation were being considered under the first *Georgia-Pacific* factor.[18]  *Id.*

**B.     *VNUS's Licenses of the Patents-in-Suit Are Admissible as the Most Reliable Evidence of a Reasonable Royalty***

The facts of this case put it squarely on point with *ResQNet*.  As in that case, the only reliable comparable licenses are those that arose out of litigation.  VNUS's agreements with ADI, VSI and Dornier are the only licenses that cover the patents and claims at issue in this case.  Moreover, those agreements license that technology to direct competitors who, like Defendants, sell products in the endovenous ablation device market.[19]  Finally, like the license found relevant in *ResQNet*, VNUS's agreements set forth a running royalty structure to cover ongoing use of the patents.

It is helpful to consider the significance of the ADI, VSI and Dornier licenses in comparison to the irrelevance of                          REDACTED


                                                                      REDACTED




These differences are fundamental.  First, at the time of the hypothetical negotiation,
                                                   REDACTED

                                         REDACTED


---

[18] Defendants suggest that the fact that *ResQNet* was tried before a judge as opposed to a jury is significant.  This reasoning was explicitly rejected in *Datatreasury*, where the court noted that "the licenses at issue were considered by that trial court sitting as trier of fact, just as the jury will sit in [this] case."  *Datatreasury Corp.*, 2010 WL 903259, at *2.

[19] Nguyen Decl. Exs. 26 (Excerpt of Bersin Rebuttal Expert Report) at 13; and 30 (Excerpt of Bersin Depo.) at 101:23-102:14, 104:17-19.

[20] Nguyen Decl. Exs. 33 (Excerpt of Stuckwisch Depo.) at 172:17-22; 34 (VNUS_140935) at 2; and 35 (VNUS_140918) at 2.

[21] *See, e.g.,* Nguyen Decl. Exs. 38 (Excerpt of Furcht Depo.) at 43:25-44:8, 45:2-11; and 39 (Excerpt of Nina Davis Depo.) at 33:15-25.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1
CASE NOS. C08-03129 MMC & C08-04234 MMC

1

                                **REDACTED**

2

3          When licensing to competitors such as Defendants,

4  VNUS would have insisted on a running royalty with a fixed fee per unit (as opposed to a

5  percentage of revenues) to avoid the risk of price erosion caused by competitors lowering their

6  prices and to ensure a certain level of compensation for sales lost to licensees.  In contrast, a license

7  is the only way for non-practicing licensors such   **REDACTED**   and      **REDACTED**      to

8  derive revenue from their technology, making such parties amenable to a much lower royalty rate.

9  Related parties,               **REDACTED**              would likely

10  demand yet lower rates.

11        In light of the relative importance of the ADI, VSI, and Dornier licenses, Defendants'

12  trumped-up claims of juror confusion and trial complexity are particularly misplaced.  (Defs.' Mot.

13  No. 1 at 5-6).  First, contrary to Defendants' claims, there will be no need to delve into the details

14  of VNUS's infringement case against ADI, VSI, or Dornier.  The license agreements are not being

15  used to show infringement but rather to demonstrate the license fees for the Patents-in-Suit that are

16  being paid by market participants.  Any use of a license agreement to support an opinion regarding

17  proper measurement of reasonable royalty damages invites some degree of comparison between the

18  circumstances surrounding that license and the circumstances applicable to the case at hand.

19  Defendants dramatically call such a comparison a "mini-trial," but the fact remains that it requires

20  relatively little investment of trial resources and little risk of "confusion" and "diversion" when, as

21  with the existing VNUS licenses, the number of licenses is small and the overlap of licensor,

22  patents and market both among the licenses and also with the pending case is so great.  A much

23  greater risk of a confusing sideshow is created when parties attempt,      **REDACTED**      to rely

24  upon a multitude of licenses having no meaningful relationship to the hypothetical negotiation of a

25  reasonable royalty between the litigants.

26        Second, the need to highlight the "particular benefits" received by each licensee would

27  occur regardless of whether the license arose out of litigation.  If this were sufficient to require

28

                                        8

1 exclusion, then potentially comparable licenses could never be used in the reasonable royalty

2 analysis.

3        Third, the concern that the number of patents covered by the licenses will add to confusion

4 is a red herring.  VNUS's endovenous ablation patents of greatest relevance and value to ADI, VSI,

5 Dornier, *and Defendants* are obviously those that it has asserted in *VNUS I* and this case.  As is

6 customary, the ADI, VSI, and Dornier licenses included all of VNUS's patents in the field so as to

7 ensure a final resolution.  However, the technology at the heart of the licenses and that generates

8 the economic value they reflect is that which is covered by the Patents-in-Suit that were asserted in

9 litigation.  Inclusion of the add-ons is readily explained, and any effort by Defendants to explore

10 them in detail would only put Defendants' credibility at risk before the jury.

11        On the basis of these exaggerated concerns, Defendants would have the Court exclude the

12 most relevant licenses                              **REDACTED**

13                          However, given that the litigation-related licenses here, as in

14 *ResQNet*, are the "most reliable license[s] in the record," it would constitute legal error to do so.

15        **C.      The ADI, VSI, and Dornier Licenses Are Not Inadmissible Under Rule 408**

16        Defendants' assertion that Federal Rule of Evidence 408 prohibits the admissibility of the

17 ADI, VSI, or Dornier license agreements—based solely on pre-*ResQNet* cases—also fails.  First, as

18 discussed, the Federal Circuit has observed that such running royalty licenses can be important to

19 the reasonable royalty analysis.  Defendants' reading of Rule 408 would wholly undermine the

20 Federal Circuit's rulings in an area unique to patent law and within its exclusive jurisdiction.  Their

21 interpretation must therefore be rejected.  *See Midwest Indus. Inc. v. Karavan Trailers Inc.*, 175

22 F.3d 1356, 1359 (Fed. Cir. 1999) (explaining that Federal Circuit law applies "beyond the limits of

23 substantive patent law and into areas in which the disposition of the nonpatent-law issues is

24 affected by the special circumstances of the patent law setting in which those issues arise.").

25 Second, the ADI, VSI, and Dornier settlements resolved different claims than those involving

26 Defendants and no precedent mandates that agreements resolving different VNUS claims be

27 excluded.  *See Orlando v. Carolina Cas. Ins. Co.*, No. Civ-F-07-0092, 2007 WL 781598, at *8, n.9

28 (E.D. Cal. Mar. 13, 2007) (holding that Rule 408 "[does] not apply to claims that are not the

9

1  subjects of the negotiations"); *Matsuura v. E.I. du Pont De Nemours and Co.*, No. 96-01180, 2006

2  WL 2734291, at *2 (D. Haw. Sept. 22, 2006); *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770

3  (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a

4  claim different than the one litigated."); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d

5  1183, 1194 (10th Cir. 1992) (allowing evidence of settlement discussions because the evidence was

6  not admitted to prove the validity or amount of the "claim under negotiation").[22]  Finally, the

7  going-forward license payments by ADI, VSI, and Dornier are not consideration in compromise of

8  the claims in the past litigations but are instead consideration for post-litigation use of the VNUS

9  patents.  The lump-sum payments for past infringement are properly viewed as having been in

10 settlement of the claims that were at issue.[23]  The going-forward royalty is a license for future sales

11 that were not the subject of litigation.[24]

12        ## D.  *The Licenses Are Not Inadmissible Hearsay*

13        Defendants' final claim is that the ADI, VSI and Dornier licenses are inadmissible as

14 hearsay because they include a statement by VSI and ADI acknowledging the validity and

15 infringement of VNUS's three patents that were in suit at the time of the agreement.  A document

16 or statement is only hearsay, however, if it is offered to prove the truth of the matter asserted.  Fed.

17 R. Evid. 801(c).[25]  Neither the licenses nor any statements in them will be used for this purpose.

18 First and foremost, the amount and structure of the royalties will be used to show the royalties

19 VNUS lost on sales the licensees would have made in lieu of a portion of Defendants' infringing

20 sales and to assist in determining a reasonable royalty applicable to the Patents-in-Suit.  Moreover,

21

22     [22] Defendants suggest that Ninth Circuit law extends Rule 408 to all claims and all parties.
   *Hudspeth v. Comm'r of Internal Revenue Serv.*, 914 F.2d 1207, 1213-14 (9th Cir. 1990), however,
23 considered the public's interest in insuring that the tax commissioner not be bound by past
   agreements which clearly does not apply in this case.  The remaining cases cited by Defendants for
   this proposition are not binding on this Court and conflict with the district court precedent cited
24 above.

25     [23] Nguyen Decl. Ex. 31 (Final ADI/VSI Settlement) at 6; Steenberg Ex. 10 at 6.

26     [24] To the extent the Court considers such lump-sum payments to be excludable under Rule
   408, VNUS would propose to introduce a redacted version of the license agreements or a summary
   of their terms without this information.

27     [25] Even if that statement was offered to prove its truth, it would nonetheless be admissible as
   a statement against interest under Fed. R. Evid. 804(b)(3).
28

1   to the extent any VNUS expert refers to the statement that ADI and VSI agree that certain patents

2   are "valid, enforceable and indirectly infringed," they will do so for a similarly non-hearsay

3   purpose.  VNUS's damages expert may note the fact that ADI and VSI so agreed only in order to

4   explain the difference between the ADI/VSI license              **REDACTED**

5                                                          VNUS's validity and infringement experts may reference the

6   fact of ADI and VSI's acknowledgment to show industry respect for the claimed inventions and the

7   fact that a design-around is not easily available.[27]

8        Finally, to the extent that the Court does consider ADI and VSI's acknowledgment of

9   validity and infringement to be inadmissible hearsay, the appropriate remedy would be for VNUS

10  to introduce a redacted version of the ADI and VSI license or, alternatively, provide a summary of

11  its licensing terms without this information.  *See ReedHycalog UK,* 2010 WL 3021550, at *3

12  (permitting plaintiff to identify the licenses, the licensees, the rates of the licenses, and the royalties

13  received while not identifying the licenses as having resulted from litigation).  In light of the highly

14  probative value of the licenses themselves, to exclude them in their entirety is both drastic and

15  unnecessary.

16  **III.   CONCLUSION**

17        For these reasons, Defendants' Motion *in Limine* to exclude the ADI, VSI and Dornier

18  settlement agreements should be denied.

19  //

20

21

22

23

24

25

26

27       [26] Steenberg Ex. 13 at 5.

28       [27] Steenberg Exs. 7 at 13 n.6; and 8 at 59.

1

2   Dated:   September 7, 2010                    ATTORNEYS FOR PLAINTIFF
                                                  TYCO HEALTHCARE GROUP LP d/b/a
3                                                 VNUS MEDICAL TECHNOLOGIES

4

5                                            By:   _/s/ Diem-Suong T. Nguyen_____
                                                  Matthew B. Lehr (Bar No. 213139)
6                                                 Diem-Suong T. Nguyen (Bar No. 237557)
                                                  David J. Lisson (Bar No. 250994)
7                                                 Chung G. Suh (Bar No. 244889)
                                                  Jeremy Brodsky (Bar No. 257674)
8                                                 DAVIS POLK & WARDWELL LLP
                                                  1600 El Camino Real
9                                                 Menlo Park, CA  94025
                                                  (650) 752-2000/(650) 752-2111 (fax)
10                                                mlehr@dpw.com
                                                  nguyen@dpw.com
11                                                dlisson@dpw.com
                                                  gsuh@dpw.com
12                                                jbrodsky@dpw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12