1  Matthew B. Lehr (Bar No. 213139)
   Diem-Suong T. Nguyen (Bar No. 237557)
2  David J. Lisson (Bar No. 250994)
   Chung G. Suh (Bar No. 244889)
3  Jeremy Brodsky (Bar No. 257674)
   DAVIS POLK & WARDWELL LLP
4  1600 El Camino Real
   Menlo Park, California  94025
5  Telephone: (650) 752-2000
   Facsimile: (650)  752-2111
6
   Attorneys for Plaintiff
7  Tyco Healthcare Group LP d/b/a
   VNUS Medical Technologies
8

9              UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12  TYCO HEALTHCARE GROUP LP d/b/a      )   LEAD CASE NO. C08-03129 MMC
    VNUS MEDICAL TECHNOLOGIES,          )
13                                      )   CASE NO. C08-03129 MMC
                 Plaintiff,            )
14                                      )   **PLAINTIFF'S OMNIBUS OPPOSITION
         v.                             )   AND RESPONSE TO DEFENDANTS'
15                                      )   MOTIONS *IN LIMINE* NOs. 2-7**
    BIOLITEC, INC. and NEW STAR LASERS, )
16  INC. d/b/a COOLTOUCH, INC.,         )   **[REDACTED]**
                                        )
17               Defendants.            )
                                        )
18                                      )   Date:   September 14, 2010
                                        )   Time:   9:30 a.m.
19                                      )   Judge:  Hon. Maxine M. Chesney
                                        )
20                                      )
                                        )
21  ─────────────────────────────       )
    TYCO HEALTHCARE GROUP LP d/b/a      )   CASE NO. C08-04234 MMC
22  VNUS MEDICAL TECHNOLOGIES,          )   (consolidated with C08-03129 MMC)
                                        )
23               Plaintiff,            )
                                        )
24       v.                             )
                                        )
25  TOTAL VEIN SOLUTIONS, LLC d/b/a     )
26  TOTAL VEIN SYSTEMS,                 )
                                        )
27               Defendant.             )
                                        )
28

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 .......................1

        A.      The 510(k) Submissions Support an Inference of Copying and Therefore Are
                Probative of Nonobviousness, Inducement, and Willful Infringement ......................2

        B.      The 510(k) Submissions Would Neither Mislead the Jury Nor Unfairly Prejudice
                Defendants ....................................................................................................4

III.    OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 3 .......................5

        A.      Defendants' Requested Prohibition on Collective References Would Result in
                Uncertainties and Ancillary Disputes That Would Prolong Trial..............................5

        B.      Defendants Have Not Shown That They Would Be Unfairly Prejudiced by Any
                Collective References ......................................................................................6

        C.      A Prohibition Against Collective References Would Unfairly Prejudice VNUS's
                Presentation of Its Case....................................................................................8

IV.     OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4 .......................9

        A.      The Excessive Scope of Defendants' Requested Relief Would Exclude Evidence
                of Tumescent Anesthesia Relevant to Issues Other Than Secondary Indicia...........10

        B.      Evidence of Both the Compressive and Insulative Benefits of Tumescent
                Anesthesia Is Relevant and Admissible to Show Secondary Indicia........................12

V.      OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5 .....................13

        A.      Disclosure of the Testimony Would Inform the Jury's Evaluation of
                Contradictory Expert Opinions and Therefore Is Permissible Under Rule 703 ........14

        B.      Dr. Navarro's Testimony Should Be Admissible as a Statement Against Interest....16

VI.     OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6 .....................18

        A.      Ms. Davis's Supplemental Report ..........................................................................18

        B.      Defendants Are Not Unfairly Prejudiced by Ms. Davis's Statements......................20

VII.    RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 7.........................22

VIII.   CONCLUSION.................................................................................................22

i

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

# TABLE OF AUTHORITIES

Page

## CASES

*Acumed LLC v. Stryker Corp.*
    483 F.3d 800 (Fed. Cir. 2007)..................................................................................2-3

*Acumed LLC v. Stryker Corp.*
    No. 04-CV-0513-BR, 2006 WL 3409074 (D. Or. Apr. 17, 2006)..................................3

*Advanced Display Sys., Inc. v. Kent State Univ.*
    212 F.3d 1272 (Fed. Cir. 2000).....................................................................................3

*Applera Corp. v. MJ Research Inc.*
    372 F. Supp. 2d 233 (D. Conn. 2005)............................................................................3

*Bowers v. NCAA*
    563 F. Supp. 2d 508 (D.N.J. 2008) ..............................................................................13

*C & E Servs., Inc. v. Ashland Inc.*
    539 F. Supp. 2d 316 (D.D.C. 2008) .........................................................................8, 13

*Church & Dwight Co., Inc. v. Abbott Labs.*
    No. 05-2142 (GEB) (JJH), 2008 WL 2565550 (D.N.J. June 23, 2008) ........................3

*Coles v. Perry*
    217 F.R.D. 1 (D.D.C. 2003)..........................................................................................21

*Diversitech Corp. v. Century Steps, Inc.*
    850 F.2d 675 (Fed. Cir. 1989)........................................................................................3

*DR Sys., Inc. v. Eastman Kodak Co.*
    No. 08-cv-669, 2009 WL 3756765 (S.D. Cal. Nov. 9, 2009).......................................20

*Dukes v. Wal-Mart*
    222 F.R.D. 189 (N.D. Cal. 2004)..................................................................................20

*In re Agribiotech, Inc.*
    No. CV-S-02-0537-PMP (LRL), 2005 U.S. Dist. LEXIS 6467 (D. Nev. Mar. 4, 2005) ............17

*In re Prempro Prods. Liability Litig.*
    No. 4:03CV1507-WRW, 2007 WL 4287844 (E.D. Ark. Dec. 5, 2007)..........................9

*Ind. Ins. Co. v. Gen. Elec. Co.*
    326 F. Supp. 2d 844 (N.D. Ohio 2004)........................................................................10

*J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co.*
    106 F.3d 1563 (Fed. Cir. 1997)......................................................................................4

*Luke v. Family Care & Urgent Med. Clinics*
    323 Fed. App'x 496 (9th Cir. 2009) .............................................................................21

ii

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

*Lyons P'ship, L.P. v. AAA Entm't Inc.*
No. 98 Civ. 0475 (DAB)(MHD), 1999 WL 1095608 (S.D.N.Y. Dec. 3, 1999)........................ 17

*Marriner v. Cal. Army Nat'l Guard*
No. CV-F-00-5176, 2006 WL 2402063 (E.D. Cal. Aug. 18, 2006) .............................. 4

*Minix v. Canarecci*
No. 3:05-CV-144-RM, 2009 WL 212109 (N.D. Ind. Jan. 26, 2009) ............................ 15

*Optivus Tech., Inc. v. Ion Beam Applications*
No. CV-0302952-SJO (VBKx), 2005 WL 6070811 (C.D. Cal. Mar. 14, 2005)..................... 3

*Penederm, Inc. v. Alzo, Inc.*
No. 95-1222-FMS, 1996 WL 724766 (N.D. Cal. Dec. 6, 1996) ............................... 3

*Pfingston v. Ronan Eng'g Co.*
284 F.3d 999 (9th Cir. 2002) ....................................................... 20

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005)..................................................... 12

*Procter & Gamble Co. v. McNeil-PPC, Inc.*
615 F. Supp. 2d 832 (W.D. Wisc. 2009).............................................. 21

*Sandata Techs., Inc. v. Infocrossing, Inc.*
No. 05-civ-09546, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ........................... 21

*Stryker Corp. v. Intermedics Orthopedics, Inc.*
96 F.3d 1409 (Fed. Cir. 1996)........................................................ 3

*Turner v. Burlington N. Santa Fe R.R. Co.*
338 F.3d 1058 (9th Cir. 2003) ...................................................... 16

*United States v. Garcia*
447 F.3d 1327 (11th Cir. 2006) ..................................................... 15

*United States v. Huckins*
53 F.3d 276 (9th Cir. 1995) ........................................................ 16

*United States v. Mejia*
545 F.3d 179 (2d Cir. 2008)......................................................... 16

## STATUTES AND RULES

21 U.S.C. § 360c(i)(1)(A) ........................................................... 2

35 U.S.C. § 286 .................................................................... 1

Fed. R. Civ. P. 26(a) ........................................................... 19, 20

Fed. R. Civ. P. 37(c)(1) ........................................................... 20

Fed. R. Evid. 402 ................................................................. 10

Fed. R. Evid. 403 ............................................................................................. 4, 5, 9, 10

Fed. R. Evid. 703 ............................................................................................. 1, 14, 15

Fed. R. Evid. 804(a)(5) ............................................................................................. 17

Fed. R. Evid. 804(b)(3) ............................................................................................. 14, 16, 17

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1    I.      **INTRODUCTION**

2          Plaintiff Tyco Healthcare Group LP d/b/a VNUS Medical Technologies ("VNUS")

3    respectfully submits this omnibus memorandum of law in opposition and response to Defendants'

4    Motions *in Limine* Nos. 2-7, filed on August 30, 2010.  Defendants' Motions *in Limine* Nos. (2) to

5    preclude VNUS from relying on evidence related to 510(k) statements of substantial equivalence;

6    (3) to preclude collective reference to Defendants; (4) to preclude VNUS from referring to

7    insulation and anesthesia as benefits of tumescent anesthesia; (5) to preclude VNUS from using

8    testimony from *Diomed, Inc. v. AngioDynamics, Inc. et al.* (D. Mass. No. 04-10019-NMG); and (6)

9    to preclude VNUS's damages expert from testifying regarding certain statements in her

10   supplemental report, should be denied for the reasons set forth below.[1]

11   II.     **OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2**

12         In their Motion *in Limine* No. 2 ("Defs.' Mot. No. 2"), Defendants correctly observe that

13   representations of substantial equivalence to the VNUS Closure system, which laser companies

14   made when seeking FDA clearance to market their endovenous laser ablation ("EVLA") products,

15   do not prove direct infringement.  Defendants, however, leap from this premise to argue that those

16   510(k) submissions are irrelevant to any other issues in this case.  Their arguments misapprehend

17   the evidence and the law.

18         Defendants' motion should be denied because the 510(k) submissions they seek to exclude:

19   (1) demonstrate that the laser companies knew of the commercial embodiment of VNUS's

20   inventions before bringing their infringing products to market; (2) are relevant to nonobviousness

21   and biolitec's inducement and willful infringement because the submissions, in combination with

22   other evidence, support an inference of copying; (4) will help, rather than confuse the jury; and (5)

23   are not, as Defendants posit, *unfairly* prejudicial.[2]

24   ──────────────────────────
              [1] VNUS does not oppose Defendants' Motion *in Limine* No. 7.

25         [2] Even more unavailing are Defendants' arguments that biolitec's submissions must be
     excluded under the statute of limitations or for VNUS's purported inability to establish a
26   foundation.  *See* Defs.' Mot. No. 2 at 6.  35 U.S.C. § 286, on its face, only acts as a time bar on
     damages for infringement and cannot provide a basis for exclusion of evidence relevant to
27   nonobviousness.  Moreover, VNUS will easily be able to establish a foundation for regulatory
     documents that came from biolitec's files or, alternatively, may seek admission of the evidence
28   through expert testimony under Fed. R. Evid. 703.

                                              1

**A.** ***The 510(k) Submissions Support an Inference of Copying and Therefore Are Probative of Nonobviousness, Inducement, and Willful Infringement***

The statements of substantial equivalence that biolitec and other laser companies made to the FDA clearly demonstrate their knowledge of VNUS's commercial embodiment of its patented methods—the VNUS Closure system and procedure. *See* 21 U.S.C. § 360c(i)(1)(A) ("substantial equivalence" means that the device has the same intended use and same technological characteristics, or is as safe and effective, as the predicate device). The 510(k) submissions further show that VNUS's competitors possessed this knowledge before introducing their infringing EVLA products to market. For instance, in support of statements to the FDA that its accused product "has the same specific intended use" and "exact same indication for use" as the predicate VNUS Closure system, **REDACTED**

In light of this evidence and the stark similarities between the Closure procedure and the infringing EVLA methods that followed on its heels,[5] the jury would be entitled to infer that biolitec and other laser competitors, which relied on Closure as a predicate device, copied VNUS's commercial embodiment of its inventions.[6] *See Acumed LLC v. Stryker Corp.*, No. 04-CV-0513-

---

[3] *See* Exhibit 1 to the accompanying Declaration of Diem-Suong T. Nguyen (the "Nguyen Decl.") (11/07/01 biolitec 510(k) submission) at BIO002777-78, BIO002832-40 **REDACTED** *see also* D.I. 113, Appendix 2 (list of asserted claims).

[4] Nguyen Decl. Ex. 3 (C0023926-30) at C0023927.

[5] *See*, *e.g.*, Nguyen Decl. Ex. 4 (Excerpt of Andrews Expert Report) at 10-11 (describing the parallels between the Closure and EVLA procedures and concluding that "[i]n all meaningful ways, the procedures for and clinical outcomes with the VNUS Closure technique and those of the various laser systems for endovenous ablation are nearly identical").

[6] The fact that VNUS did not copy its own predicate device is not determinative of the *relevance* of the laser companies' 510(k)s as circumstantial evidence of copying. *See* Defs.' Mot. No. 2 at 4. Indeed, the testimony highlighted in Defendants' brief confirms that, unlike the EVLA (continued)

2

1   BR, 2006 WL 3409074, at *2-3 (D. Or. Apr. 17, 2006) (510(k) application that referenced the

2   patentee's product supported a finding that defendants "deliberately copied" the product), *aff'd*, 483

3   F.3d 800 (Fed. Cir. 2007); *see also Church & Dwight Co., Inc. v. Abbott Labs*., No. 05-2142 (GEB)

4   (JJH), 2008 WL 2565550, at *2 (D.N.J. June 23, 2008) (the fact that a developer of the infringing

5   device had seen the patentee's commercial embodiments prior to market entry provided evidence of

6   copying). Thus, because they support an inference of copying, the 510(k) submissions are relevant

7   to multiple issues in this case, including nonobviousness of the claimed inventions and biolitec's

8   active inducement and willful infringement. *See, e.g.*, *Advanced Display Sys., Inc. v. Kent State*

9   *Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000) ("Objective considerations such as . . . copying . . .

10  'may often be the most probative and cogent evidence' of nonobviousness.") (citations omitted);

11  *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 679 (Fed. Cir. 1989) (accord); *Applera*

12  *Corp. v. MJ Research Inc*., 372 F. Supp. 2d 233, 236 (D. Conn. 2005) (defendants encouraged

13  infringement by copying patented features that would attract customers); *Acumed*, 483 F.3d at 811

14  (evidence of copying supports willfulness finding); *Stryker Corp. v. Intermedics Orthopedics, Inc.*,

15  96 F.3d 1409, 1414 (Fed. Cir. 1996) (rejecting infringer's argument that "slavish copying" of the

16  patentee's product must be found for copying to bear on willfulness); *Penederm, Inc. v. Alzo, Inc.*,

17  No. 95-1222-FMS, 1996 WL 724766, at *4 (N.D. Cal. Dec. 6, 1996) ("Copying, either of the

18  patent or a commercial embodiment of the patented invention, provides particularly probative

19  evidence of willful infringement."). Furthermore, given that direct evidence of copying is rarely

20  available, the 510(k)s have significant probative value to the jury's determination of these issues.

21      Defendants fail to cite to a single case holding that 510(k) evidence is irrelevant to copying,

22  as opposed to direct infringement.[7] Instead, they attempt to confuse the issues by resorting to

23

24  products that relied on Closure for FDA clearance, VNUS's RFS device is "totally different" from its predicate. *Id.* As such, Defendants' argument on this point is a red herring.

25      [7] In *Optivus Tech., Inc. v. Ion Beam Applications*, No. CV-0302952-SJO (VBKx), 2005 WL 6070811, at *17 (C.D. Cal. Mar. 14, 2005), for example, the court discounted a 510(k) report

26  because the similarities between the accused device and the patent at issue were not discussed in the report. In contrast, the 510(k) submissions that Defendants seek to exclude state that the EVLA

27  devices have the same *intended use* as the Closure system. Since the 510(k)s explicitly reference a use that embodies the claimed methods, they are relevant to show that the applicants were aware of and copied those methods by adopting them for EVLA.

28

3

1   arguments on disputed issues of fact for determination by the jury.  In particular, Defendants appear

2   to argue for exclusion on the basis that the evidence of copying purportedly lacks a nexus to the

3   merits of the claimed inventions.  *See* Defs.' Mot. No. 2 at 4-5.  That assertion is contrary to the

4   reasoned opinions of VNUS's experts.[8]  Moreover, there is a presumption of a nexus where, as

5   here, biolitec and other competitors relied on Closure—and not any of the unsuccessful

6   electrocoagulation methods that preceded VNUS's inventions—as a predicate device.  *See*, *e.g.*,

7   *J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997).

8         **B.**    ***The 510(k) Submissions Would Neither Mislead the Jury Nor Unfairly Prejudice Defendants***

9

10         Lastly, Fed. R. Evid. 403 does not warrant exclusion of statements of substantial

11   equivalence made by every laser company that relied on Closure as a predicate device.  With the

12   exception of biolitec, none of those companies is accused of infringement in this case.  Yet

13   Defendants do not even attempt to explain how the probative value of evidence relevant to copying

14   by *non-parties* is substantially outweighed by the risk of unfair prejudice to Defendants or

15   confusion of the issues with respect to Defendants.  This motion, like Defendants' Motion *in*

16   *Limine* No. 5, is a thinly veiled attempt to exclude VNUS from offering persuasive evidence of

17   copying and should be denied.

18         Nothing in the FDA submissions, including those of biolitec, is so inflammatory as to drive

19   the jury to make an emotional decision or to draw a conclusion other than what the evidence plainly

20   shows: that competitors were familiar with VNUS's commercialized inventions before they

21   introduced their EVLA products and that they likely copied VNUS's inventions.  *See Marriner v.*

22   *Cal. Army Nat'l Guard*, No. CV-F-00-5176, 2006 WL 2402063, at *15 (E.D. Cal. Aug. 18, 2006)

23   (noting that "all relevant evidence is prejudicial" and "[u]nfair prejudice 'means an *undue* tendency

24   to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'").

25   ─────────────

26       [8] *See*, *e.g.*, Nguyen Decl. Ex. 5 (Excerpt of Grundfest Rebuttal Expert Report) at 56, 63-64, n. 115 (citing the failure of prior art electrocoagulation procedures to "unite the critical elements

27   found in the Asserted Claims" and evidence of VNUS's public teaching of the patented methods, including the use of tumescent anesthesia for compression, prior to the introduction of EVLA

28   procedures).

4

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1   Far from misleading the jury, such evidence would *assist* it in evaluating nonobviousness, biolitec's

2   inducement, and biolitec's willfulness.  Accordingly, Defendants cannot rely on Rule 403 to

3   exclude the 510(k) submissions.

4        To ensure that there is no potential risk of confusion or unfair prejudice to Defendants,

5   however, VNUS would stipulate to redact biolitec's FDA submissions for use at trial to eliminate

6   references to the "same intended use as," "same indications for use as," or "substantial equivalence

7   to" Closure.  This would enable VNUS to present clear evidence that the laser company applicants

8   knew of VNUS's commercial embodiment before they entered the market, while addressing any

9   cognizable Rule 403 concerns.

10  **III.**  **OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 3**

11       In their Motion *in Limine* No. 3 ("Defs.' Mot. No. 3"), Defendants fail to identify a single

12  instance in which VNUS has unfairly attributed the actions of one defendant to another, and yet

13  they seek an unmanageable, unfairly prejudicial, and premature order prohibiting VNUS from

14  collectively referring to biolitec, CoolTouch, and/or TVS.  Defendants request, in particular, that

15  this Court broadly prohibit VNUS from referring to Defendants as "defendants" or "by using other

16  generic, collective words."[9]  If granted, this request would impose an onerous, highly ambiguous,

17  and unqualified restriction on VNUS's ability to present its case without regard to whether a

18  collective reference to Defendants is merited, harmless, unintentional or, as Defendants baldly

19  assert in their motion, potentially prejudicial.[10]

20      **A.**  ***Defendants' Requested Prohibition on Collective References Would Result in Uncertainties and Ancillary Disputes That Would Prolong Trial***

21

22       The proposed order is quite simply a request for an extraordinary limitation on VNUS's

23  ability to present its case.  "Defendants" is a term of legal art that is ubiquitous in legal

24  

25      [9] *See* D.I. 273 (Proposed Order for Defs.' Mot. No. 3).

26      [10] Defendants did not move to bifurcate trial, nor did they complain when having codefendants was to their benefit earlier in this action.  Defendants are attempting to have their
27  cake and eat it too by benefiting from the resources of codefendants in presenting their case while requiring VNUS to present three entirely distinct cases even where the evidence warrants collective references.

28

proceedings.[11]  As a practical matter, it would be nearly impossible for the term "Defendants" to be

avoided by all parties during the course of an extended trial.  Defendants request, moreover, a

prohibition against the use of "other generic, collective words."  This prohibition is extremely

ambiguous and broad.  If granted, VNUS would not be able to present any aspect of its case

without worrying that Defendants would assert that VNUS was somehow using "other generic,

collective words" to refer to Defendants.  Defendants' proposed relief would likely spawn an

unending series of mini-trials regarding whether VNUS had or had not used "other generic,

collective words" and/or whether Defendants were entitled to relief based on accidental and

harmless uses of the word "Defendants."  A prohibition against collective references would further

prolong trial by requiring VNUS to unnecessarily present many aspects of its case three times in

circumstances where collective references are warranted based on evidence that each of the

Defendants does the same thing.  In addition, such repeated presentations would likely imply to the

jury that Defendants performed substantively different actions and accordingly would unfairly

prejudice VNUS's case.

### B.   *Defendants Have Not Shown That They Would Be Unfairly Prejudiced by Any Collective References*

In contrast to the heavy burden that Defendants' proposed order would impose on VNUS

and the Court, Defendants are unlikely to be unfairly prejudiced by the absence of such an order.

First and foremost, Defendants' alleged concern that VNUS will fill in gaps in its case is wholly

unsupported by the record.  Defendants have not identified any specific instance where VNUS

collectively referred to Defendants to fill in gaps in its case.  Defendants' citation to allegedly

generic language in the expert report of Dr. Andrews is unavailing.  *See* Defs.' Mot. No. 3 at 2.  Dr.

Andrews's opinions are based on numerous citations to specific evidence for each individual

defendant and his use of the word "Defendants" is warranted precisely because he is relying on

---

[11] While Defendants assert that the sheer number of times the word "defendants" is used in the expert report of Dr. Andrews (allegedly "more than 130 times" in a 100-page report) evidences VNUS's motive to fool the jury (*see* Defs.' Mot. No. 3 at 3; Nguyen Decl. Ex. 4 (Excerpt of Andrews Expert Report) at 100), Defendants use the term 18 times in their own nine-page motion to exclude licenses of VNUS's patents.  *See* Defs.' Mot. No. 1.  The simple fact is that the term "Defendants" is ubiquitous.  This underscores the onerous nature of Defendants' request.

1  evidence for each defendant.  In circumstances where the evidence cited by Dr. Andrews does not

2  support a collective reference to Defendants, Dr. Andrews refers to the relevant subset of

3  Defendants by name.[12]  While Defendants complain about Dr. Andrews's use of the word

4  "Defendants," they tellingly have not explained how his collective reference was inaccurate or

5  unfairly prejudicial.  If Dr. Andrews uses the word "Defendants" frequently, it is because VNUS

6  has an exceedingly strong case of infringement based on evidence specific as to all three

7  Defendants.  Defendants similarly dispute Ms. Davis's conclusion that each of the Defendants

8  would pay the same royalty rate.  *See* Defs.' Mot. No. 3 at 2-3.  This dispute, however, goes to the

9  merits of Ms. Davis's opinion and not to any improper attempt to fill in gaps in the evidence.  If

10 Defendants believe Ms. Davis's opinion is wrong, they must prove that to the jury.

11       Without specific evidence to support their requested relief, Defendants resort to misleading

12 the Court.  Their assertion that VNUS has refused to instruct the jury that Defendants may not be

13 treated as a single entity has no merit.  *See* Defs.' Mot. No. 3 at 3.  The truth is that VNUS has

14 proposed the Ninth Circuit's Model Jury Instruction No. 1.5, which expressly instructs the jury that

15 they "should decide the case as to *each defendant separately*."[13]  How Defendants can characterize

16 this instruction as part of VNUS's plot to fool the jury, VNUS cannot comprehend.  VNUS

17 objected to Defendants' proposed instruction solely because it was unnecessary and confusing in

18 light of the evenhanded, succinct, and straightforward model jury instruction that VNUS proposed.

19 Moreover, in the extremely limited circumstances where the jury may be susceptible to confusion

20 due to collective references, counsel and this Court are more than competent to introduce and

21 identify the parties, explain their respective roles in this litigation, and, in the unlikely event that it

22 is necessary, provide a limiting instruction to clarify that the jury must decide the case separately

23

24

---

[12] For example, **REDACTED**  **REDACTED**  *See* Nguyen Decl. Ex. 4 (Excerpt of Andrews Expert Report) at 95.

26

27 [13] D.I. 288 (VNUS's Proposed Jury Instructions and Objections to Instructions Proposed by Defendants) at 4; Nguyen Decl. Ex. 6 (Ninth Circuit Model Civil Jury Instruction No. 1.5 (2007)) (emphasis added).

28

7

1    for each Defendant.  Accordingly, it is highly unlikely that the jury will be misled if Defendants'

2    motion is denied.

3          **C.    *A Prohibition Against Collective References Would Unfairly Prejudice VNUS's
                    Presentation of Its Case***

4

5          Far more substantial than the limited likelihood of juror confusion if Defendants' motion is

     denied is the unfair prejudice to VNUS that would result if Defendants' motion is granted.  For

6    example, while Defendants complain that Dr. Andrews referred to direct infringement in the

7    singular (*see* Defs.' Mot. No. 3 at 2), whether or not there is a single accepted EVA procedure that

8    reflects the established standard of care is a substantive issue in this case directly related to whether

9    Defendants' products have substantial noninfringing uses.[14]  To the extent Defendants argue

10   otherwise (*see* Defs.' Mot. No. 3 at 2), a factual issue that is ill-suited for determination by this

11   Court in the guise of Defendants' motion *in limine* exists.[15]  *See C & E Servs., Inc. v. Ashland Inc.*,

12   539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("[A] motion *in limine* should not be used to resolve

13   factual disputes or weigh evidence.").

14         In some instances, moreover, the content of the relevant evidence inherently requires VNUS

15   to collectively refer to more than one Defendant.  For example, TVS advertises that its laser fibers

16   are for use with CoolTouch and biolitec laser consoles.[16]  This evidence is relevant because it

17   demonstrates TVS's knowledge of how its products are used.  The broad and ambiguous scope of

18   Defendants' proposed exclusion of the use of "other, generic collective words" would result in a

19

20   _____

21         [14] *See* Nguyen Decl. Exs. 7 (Excerpt of Andrews Depo.) at 136:2-13 and 4 (Excerpt of
     Andrews Expert Report) at 10 and 73.  Dr. Andrews's view that there is a single accepted
     procedure is shared by numerous witnesses in this case, including biolitec's infringement expert.
22   *See* Nguyen Decl. Exs. 8 (Excerpt of Do Depo.) at 54:10-55:7 (testifying that there has been an
     accepted method of doing EVLA for a number of years) and
                                              **REDACTED**

23

24         [15] TVS specifically requested that the Court consider the procedures performed with its
     products the same as those performed with biolitec's products for the purpose of summary
     judgment: "[T]o the extent that packs, introducers, fibers, and consoles are interchangeable, the
25   same noninfringing procedures would apply to both sets of products.  TVS specifically adopts the
     procedures set forth in biolitec motion as constituting further noninfringing uses of TVS's
26   products."  D.I. 231 (TVS's Motion for Summary Judgment of No Contributory Infringement) at 4-
     5, n. 5.  TVS should not be allowed to change course when its prior position may no longer be to its
     benefit, and assert that it has nothing in common with the other Defendants.
27
           [16] Nguyen Decl. Ex. 10 (TVSB_13998-14024) at TVSB_14001.
28

8

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

series of mini-trials regarding how and in what manner VNUS and/or its witnesses may introduce and/or discuss this indisputably relevant evidence. Defendants have not shown or even attempted to show, as required by Rule 403, how the relevance of this or other evidence that would be excluded by their requested relief is substantially outweighed by other considerations.

In short, Defendants have not shown that any evidence that would be excluded is irrelevant or that its relevance is substantially outweighed by other considerations as required by Rule 403. Contrastingly, if Defendants' motion *in limine* is granted, the term "Defendants" and anything else that could be considered "generic, collective words" will unnecessarily be placed under a microscope for the duration of trial, will inevitably result in a series of unnecessary disputes, thereby prolonging trial, and will unfairly prejudice VNUS's ability to present its substantive case. VNUS believes all parties and the Court would be better served by the approach taken by the court in *In re Prempro Prods. Liability Litig.*, No. 4:03CV1507-WRW, 2007 WL 4287844 (E.D. Ark. Dec. 5, 2007):

> If Plaintiff attempts to argue or indicate that some act or omission on the part of one Defendant applies to another Defendant—when it does not—bring it to my attention and I will rule then and there. I do not think this will be a problem, but if I am wrong I will act on the question when it arises.

*Id.* at *3 (denying motion *in limine* to bar reference to "Defendants" collectively where evidence pertains only to one). For these reasons, VNUS respectfully requests that Defendants' Motion *in Limine* No. 3 be denied.

## IV.  OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4

Defendants ask the Court to prohibit VNUS from "offering evidence related to purported benefits of using 'tumescent anesthesia' for pain relief and/or to thermally insulate tissue" under the guise of their alleged concerns regarding use of this evidence as secondary indicia of nonobviousness. *See* Proposed Order for Defendants' Motion *in Limine* No. 4 ("Defs.' Mot. No. 4") (D.I. 275). That request should be denied for the following reasons.

9

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 – CASE NOS. C08-03129 MMC & C08-04234 MMC

**A.**    *The Excessive Scope of Defendants' Requested Relief Would Exclude Evidence of Tumescent Anesthesia Relevant to Issues Other Than Secondary Indicia.*

Defendants have not identified a single, concrete piece of evidence that they seek to exclude for the Court's and/or VNUS's review.  There is accordingly no basis to evaluate and conclude that any of the as-of-yet unidentified evidence that Defendants seek to exclude is (1) not relevant under Fed. R. Evid. 402 or (2) relevant but substantially outweighed by the supposed confusion it would cause the jury under Fed. R. Evid. 403.  Defendants' broadly requested relief cannot be granted because they have not provided any basis to evaluate the relevance of that evidence on grounds not addressed by their motion.  *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) ("The court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds.").

Indeed, Defendants conspicuously fail to acknowledge that their proposed relief would exclude key evidence that they already attempted to discount on summary judgment and that is probative of issues other than secondary indicia.  If the Court were to grant Defendants' motion, VNUS would be precluded from introducing evidence that physicians who use tumescent anesthesia only for the purposes of insulation and/or anesthesia still infringe the asserted claims.[17] The Court rejected biolitec's argument on summary judgment that such evidence was irrelevant to inducement because biolitec could not have the specific intent to induce infringement by these physicians.[18]  Having failed to convince the Court to adopt its overly restrictive view of the requisite intent for inducement, biolitec now joins the other Defendants in seeking an unmerited exclusionary order that would preclude VNUS from arguing or introducing evidence relating to infringement by physicians who both insulate and compress, or anesthetize and compress, the

---

[17] *See*, *e.g.*, Nguyen Decl. Ex 7 (Excerpt of Andrews Depo.) at 119:6-17, 125:13-18, 147:12-148:8.

[18] *See* D.I. 259 (biolitec Summary Judgment Infringement Order) at 11, n. 8.  *See also* D.I. 218 (biolitec Motion for Summary Judgment of Noninfringement) ("Given that many doctors themselves desire only anesthesia and insulation (with any vein compression being an unintended side-effect), biolitec cannot possibly have the 'specific intent' to cause compression that DSU requires.").

10

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1  vein.[19]  As Defendants must realize, the evidence that such an order would exclude is quite relevant

2  because, as this Court recognized in its August 23, 2010 Order on biolitec's motion for summary

3  judgment, infringement is a strict liability offense.[20]

4       The extraordinarily broad scope of Defendants' motion to exclude *any evidence related to*

5  "purported benefits of using 'tumescent anesthesia' for pain relief and/or to thermally insulate

6  tissue" warrants further illustration.  Defendants' proposed order would prohibit VNUS from

7  offering into evidence the '084, '803, and '355 Patents (collectively the "Tumescent Patents")

8  because these patents, as set forth below, identify insulation of surrounding tissue as a benefit of

9  VNUS's claimed inventions.  Critical evidence relied upon by VNUS for disputed issues additional

10  to secondary indicia likewise would be excluded according to the terms of Defendants' proposed

11  order.  Such evidence would include a study funded by biolitec that illustrates that non-tumescent

12  procedures are not a substantial noninfringing use of Defendants' products and describes the

13  benefits of tumescent anesthesia additional to compression.[21]  Defendants' unsupported motion

14  does not justify, under any rule of evidence or law, the exclusion of this evidence and other

15  evidence of its ilk.[22]

16

17  _____

18  [19] If this evidence is excluded, Defendants will certainly argue that physicians who do not seek to compress the vein do not infringe.  *See* D.I. 218 (biolitec's Motion for Summary Judgment of Non-Infringement) at 8, 9 (arguing that biolitec does not infringe based on evidence that certain physicians allegedly use tumescent anesthesia for the purpose of insulation and not compression).

19

20  [20] *See* D.I. 259 (biolitec Summary Judgment Infringement Order) at 8.

21  [21] Nguyen Decl. Ex 11 (Almeida et al., "Saphenous Laser Ablation at 1470nm Targets the Vein Wall, Not Blood," 43(5) VASCULAR & ENDOVASCULAR SURGERY 467-472 (Oct./Nov. 2009). VNUS2_083400-05) at VNUS2_083403-04.  Descriptions of the combined benefits of tumescent anesthesia, including insulation of surrounding tissue, are ubiquitous in the literature, testimony, and other evidence regarding EVA procedures relevant to this case.  Consequently, Defendants' proposed order would prevent VNUS from introducing evidence on indisputably permissible topics, including secondary indicia of nonobviousness based on increased efficacy caused by compression of the vein while applying energy.  *See, e.g.*, Nguyen Decl. Exs. 12 (Almeida, "RFA Versus Laser Ablation of the Saphenous Vein," SUPPLEMENT TO ENDOVASCULAR TODAY 15-19 (Nov./Dec. 2004). BIO010279-83) at BIO010280 (describing the three benefits of using tumescent anesthesia in VNUS's patented method) and 13 (Weiss & Munavalli, "Endovenous Ablation of Truncal Veins," SEMIN CUTAN MED SURG 24:193-199 (2005). C0009852-58 ) at C0009854 (same).

26  [22] Defendants also rely on the anesthetic benefits of tumescent anesthesia in support of their argument that the Tumescent Patents are obvious.  *See* D.I. 219 at 17.  If Defendants' motion is granted, VNUS will not be able to respond.  Defendants cannot have it both ways.  If this Court grants their motion, which proposes to preclude only VNUS from introducing evidence, Defendants too must be excluded from referring to the anesthetic benefits of tumescent anesthesia.

28

**B.**     *Evidence of Both the Compressive and Insulative Benefits of Tumescent Anesthesia Is Relevant and Admissible to Show Secondary Indicia*

Defendants' stated, pretextual reason for seeking relief—lack of relevance as evidence of secondary indicia of nonobviousness—is likewise without merit.  Defendants first argue that the benefit of insulation of surrounding tissues is irrelevant because it is not part of the claimed invention.[23]  Evidence shows, however, that insulation of surrounding tissues is a benefit of VNUS's asserted claims.[24]  Indeed, the Tumescent Patents clearly describe insulation as a benefit of the claimed inventions: "The *benefits of tumescence would include [ ] insulating most of the surrounding tissue and nerves* from the damage of heat conducting from the treated vein."  Nguyen Decl. Exs. 15 ('084 Patent) at 17:26-29, 16 ('803 Patent) at 17:37-41, and 17 ('355 Patent) at 17:15-18 (emphasis added).[25]  These include the first-filed and first-issued '084 Patent-in-Suit, which does not have dependent claims reciting insulation.[26]

While Defendants may disagree with VNUS's evidence that practice of the asserted claims inherently causes insulation of surrounding tissues,[27] they must do so at trial and cannot seek

---

[23] This opposition does not address the Defendants' attempt to exclude VNUS from relying on anesthetic effect for secondary indicia because VNUS does not intend to rely on any evidence of secondary indicia that is based *solely* on anesthetic benefits of the asserted claims.  Nonetheless, Defendants' motion is still improper with respect to the exclusion of such evidence because it seeks to exclude the evidence entirely without regard to relevance to other issues.

[24] *See, e.g.*, Nguyen Decl. Exs. 5 (Excerpt of Grundfest Rebuttal Expert Report) at 26, 45, 54 and 14 (Excerpt of Sarkar Rebuttal Expert Report) at 34.

[25] *See also* Nguyen Decl. Exs. 15 ('084 Patent) at 5:9-15, 19-24 (describing a need for an improved method that compresses and insulates and explaining that the claimed invention solves this need); 16 ('803 Patent) at 5:18-23, 28-32 (same); and 17 ('355 Patent) at 5:12-17, 23-27 (same).

[26] Contrary to Defendants' assertion (*see* Defs.' Mot. No. 4 at 2), VNUS refrained from asserting claims of the '803 and '355 Patents explicitly reciting insulation in the interest of economy.  Defendants' suggestion that VNUS believed that these dependent claims were invalid based on the articles cited by Defendants that allegedly describe insulation is false and misleading.  The asserted claims on which these claims depend claim compression and, accordingly, would still be valid even if the prior art included insulation.

[27] Defendants' cited "evidence" that fluid heated to 210 degrees does not insulate, is not relevant.  During Dr. Sarkar's deposition, he was asked by biolitec's counsel if the use of fluid heated to 210 degrees—a mere 2 degrees below the boiling point of water—would not insulate a vein.  Dr. Sarkar naturally responded that nobody would perform a procedure in such a manner but that the use of superheated fluid would not insulate.  *See* Defs.' Mot. No. 4 at 1, n. 1; Steenburg Decl. Ex. 26 at 132:8-133:3.  However, Dr. Sarkar's testimony regarding superheated fluid is irrelevant because claims are read in light of the specification.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).  The shared specification of the '084, '803 and '355 Patents, as set forth above, states that a benefit of the claimed invention is insulation of surrounding tissues.

---

12

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1   resolution of disputed factual issues in a motion *in limine*.  *C & E Servs.*, 539 F. Supp. 2d at 323

2   ("[A] motion *in limine* should not be used to resolve factual disputes or weigh evidence."); *Bowers*

3   *v. NCAA*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008) (denying a motion *in limine* because the

4   underlying "arguments raise questions of fact to be decided by the jury, and are not properly raised

5   through *in limine* motions on the eve of trial").

6          Defendants also erroneously assert that evidence of secondary indicia related to insulation is

7   not relevant because the prior art describes methods that include the benefit of insulation.  *See*

8   Defs.' Mot. No. 4 at 3.  Contrary to Defendants' assertion, insulation in the manner claimed by the

9   Tumescent Patents is not present in the prior art.  In particular, VNUS's patented methods use

10  relatively large amounts of fluid to compress and circumferentially insulate surrounding tissue and

11  nerves, whereas the art relied upon by Defendants describes only the use of a small amount of fluid

12  superficially to protect "skin from burning" without compression.[28]  Again, these disputed facts

13  cannot be decided by a motion *in limine*.  Accordingly, Defendants' stated grounds for excluding

14  evidence are also meritless.

15         For the reasons discussed above, the Court should deny Defendants' Motion *in Limine*

16  No. 4.

17  **V.      OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5**

18         biolitec first introduced the issue of alleged independent invention of VNUS's claimed

19  methods through the opening expert report of Dr. Jean François Mercier.  In his report, Dr. Mercier

20  cited such alleged independent invention by Dr. Robert Min as a factor supporting his opinion that

21  the "Tumescent Patents" are invalid for obviousness.  Despite having opened the door, Defendants

22  now move the Court to exclude highly probative evidence that contradicts their obviousness claim

23  and instead shows that Dr. Min and his colleagues copied the claimed methods from VNUS's

24  inventors.

25

26  ───────────────────

        [28] *Compare* Nguyen Decl. Ex. 15 ('084 Patent) at 17:26-29 *and* Steenburg Decl. Ex. 33 at
27  BIO098580.  *See also* Steenburg Decl. Ex. 34 at BIO006491-92 (describing the combined use of
    fluid and manual methods to protect skin from burning); Nguyen Decl. Ex. 5 (Excerpt of Grundfest
28  Rebuttal Expert Report) at 26-28, 57.

13

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

Defendants' Motion *in Limine* No. 5 ("Defs.' Mot. No. 5") nominally requests the exclusion of all testimony from the '777 litigation relating to a patent on which Dr. Min and Dr. Luis Navarro are named as inventors.[29]  However, the substance of their motion addresses only Dr. Navarro's testimony at trial that he and his co-inventors got the idea of using tumescent anesthesia to collapse the vein from inventors of three of VNUS's patents-in-suit.[30]  Defendants' motivation for seeking to exclude the testimony is clear: it discredits Dr. Mercier's supposition that Dr. Min independently began performing the claimed methods of EVA with tumescent compression.[31]

Defendants cannot seek shelter under the hearsay rule against admission of Dr. Navarro's trial testimony.  Fed. R. Evid. 703 permits VNUS's experts, who have reasonably relied on the testimony to rebut Dr. Mercier's opinions, to disclose this basis for their rebuttal opinions of nonobviousness—even if it is otherwise inadmissible.  Admission of Dr. Navarro's testimony would assist the jury's evaluation of contradictory expert opinions on a key issue in dispute, whereas its exclusion would serve no purpose but to insulate Dr. Mercier's opinions from challenge.  In any event, Defendants' request for exclusion is premature because the testimony will be admissible at trial as a statement against interest under Fed. R. Evid. 804(b)(3) if Dr. Navarro, who is beyond the subpoena power of this Court, declines to appear voluntarily.

At bottom, Defendants are asking the Court to exclude inherently reliable and probative evidence simply because it may cause the jury to believe VNUS's experts over biolitec's.  Their motion should be denied.

A.   ***Disclosure of the Testimony Would Inform the Jury's Evaluation of Contradictory Expert Opinions and Therefore Is Permissible Under Rule 703***

Defendants acknowledge that VNUS's experts may base their opinions on inadmissible evidence, including hearsay statements, so long as the evidence is "of a type reasonably relied

---

[29] *See* Steenburg Decl. Ex. 35 at VNUS 006359.

[30] *See*, *e.g.*, Steenburg Decl. Exs. 39 at 82:21-83:16 and 32 ('084 Patent cover page).

[31] *See* Steenburg Decl. Ex. 44 at 60-61.  While Defendants make much of the distinction they draw between compression of the vein to collapse and compression to less than collapse, they cannot deny that both are encompassed within the asserted claims.

14

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1    upon" by medical experts when forming such opinions.  Defs.' Mot. No. 5 at 6 (citing Fed. R. Evid.

2    703).  Notwithstanding their own experts' reliance on testimony from this and other litigations,[32]

3    Defendants brazenly misrepresent that VNUS's experts do not rely on such materials.  Defs.' Mot.

4    No. 5 at 1, 6.  In reality, VNUS's experts confirmed that they, like other reasonable experts in the

5    medical field, routinely rely on litigation transcripts *when rendering expert opinions.*[33]  *See, e.g.*,

6    *Minix v. Canarecci*, No. 3:05-CV-144-RM, 2009 WL 212109, at *4 (N.D. Ind. Jan. 26, 2009)

7    (including "pleadings and deposition testimony" among the "type of evidence upon which

8    reasonable experts in the medical field regularly rely").

9         Rule 703 also expressly permits VNUS's experts to disclose the testimony as a basis for

10   their opinions where, as here, the evidence's "probative value in assisting the jury to evaluate the

11   opinion substantially outweighs [any] prejudicial effect."  Aside from Dr. Navarro's testimony,

12   none of the materials cited in the parties' respective expert reports elucidate *how* Dr. Min came to

13   apply tumescent compression to EVA: Dr. Mercier relies on evidence that purportedly shows that

14   Dr. Min used tumescent compression before VNUS published the claimed methods, whereas

15   VNUS's experts rely on evidence of VNUS's public teaching of the claimed methods before Dr.

16   Min adopted tumescent anesthesia for compression.[34]  VNUS's experts applied their expertise to

17   Dr. Navarro's testimony and additional source materials to draw an inference of copying and to

18   reach their ultimate opinions of nonobviousness.[35]  Dr. Navarro's testimony therefore is the most

19   probative evidence available to assist the jury's evaluation of contradictory expert opinions on

20   copying versus independent invention.  *See, e.g.*, *United States v. Garcia*, 447 F.3d 1327, 1337

21   (11th Cir. 2006) (admitting hearsay evidence where expert had "applied his expertise in relying on"

22

23        [32] *See, e.g.*, Nguyen Decl. Exs. 18 (Excerpt of Mercier Expert Report) at Exhibit A (List of
     Materials Considered – Depositions); 19 (Excerpt of Crockett Opening Expert Report) at 19-20;
24   and 20 (Excerpt of Crockett Rebuttal Expert Report) at 1-3.

25        [33] *See* Steenburg Decl. Exs. 26 at 234:10-17 and 42 at 157:5-24.  Defendants' motion fails
     to cite a single case finding sworn testimony to be an unreliable basis for expert opinions.

26        [34] *See* Steenburg Decl. Ex. 44; Nguyen Decl. Exs. 5 (Excerpt of Grundfest Rebuttal Expert
     Report) at 61-62, 64-65 and 14 (Excerpt of Sarkar Rebuttal Expert Report) at 34-35, 39-40.

27        [35] *Id.*

28

15

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1    the evidence); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (testimony was not flawed

2    where the expert provided information to the jury that "resulted from his synthesis of various

3    source materials").[36]

4         The probative value of the testimony also substantially outweighs any prejudicial effect.  If

5    the testimony is admitted, Defendants can cross-examine VNUS's experts using the testimony

6    itself, and thereby advance Defendants' theory that Dr. Min had been using tumescent compression

7    for EVA and learned from Goldman and Weiss only to use tumescent anesthesia to compress the

8    vein enough to cause contact.  *See* Defs.' Mot. No. 5 at 2.  Moreover, any purported prejudice may

9    easily be cured by Defendants' substantive use of other testimony by Drs. Navarro and Min from

10   VNUS's litigation against Diomed.[37]  In contrast, exclusion of the testimony would unduly impair

11   VNUS's ability to counter Dr. Mercier's opinions on an alleged independent invention that

12   Defendants themselves put at issue.  Furthermore, any concern of potential prejudice is minimal

13   given the inherent reliability of Dr. Navarro's sworn trial testimony under cross-examination (as

14   explained below).  *Cf. United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (witness

15   testimony was *not* inherently reliable where not made under oath at trial and subject to cross-

16   examination).

17        **B.    *Dr. Navarro's Testimony Should Be Admissible as a Statement Against Interest***

18        Dr. Navarro's testimony will also satisfy the requirements for admissibility under Rule

19   804(b)(3) if he declines to appear at the trial of this case.  Rule 804(b)(3) provides an exception to

20   the hearsay rule for a statement "which was at the time of its making so far contrary to the

21   declarant's pecuniary . . . interest . . . that a reasonable person in the declarant's position would not

22   have made the statement unless believing it to be true."  During the trial of the '777 litigation,

23   VNUS was engaged in its own patent infringement suit against Diomed and was seeking damages

---

24        [36] In contrast, the expert in *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1062

25   (9th Cir. 2003) relied solely on an inadmissible lab report to form his ultimate conclusion that
     gasoline had been poured into the soil to cause a fire.

26        [37] Defendants have reserved their rights to do so in the Joint Pretrial Statement filed on

27   August 30, 2010.  *See* D.I. 286 at 36-37 (specifying topics of testimony as "(1) the process by
     which he and others independently developed an innovative endovenous laser ablation method and
     (2) his experience as to the use of tumescent anesthesia").

28

1    and an injunction against Diomed's infringing sales of kits and lasers.[38]  Dr. Navarro was receiving

2    royalties from these sales pursuant to Diomed's license to the '777 patent.[39]  His testimony that he

3    learned from the VNUS inventors to apply tumescent anesthesia to compress the vein—whether

4    only partially or to complete collapse—was damaging to Diomed's noninfringement, no

5    willfulness, and invalidity defenses.[40]  The testimony therefore was contrary to his pecuniary

6    interest in continuing royalty payments from Diomed and is sufficiently trustworthy to be

7    admissible.  *See Lyons P'ship, L.P. v. AAA Entm't Inc.*, No. 98 Civ. 0475 (DAB)(MHD), 1999 WL

8    1095608, at *5 n. 5 (S.D.N.Y. Dec. 3, 1999) (recognizing that even admissions by settling

9    defendants concerning the frequency of their infringements might arguably constitute admissible

10   statements against pecuniary interest); *see also In re Agribiotech, Inc.*, No. CV-S-02-0537-PMP

11   (LRL), 2005 U.S. Dist. LEXIS 6467, at *41-42 (D. Nev. Mar. 4, 2005).

12       The unavailability prong of Rule 804(b)(3) is the only potential barrier to admission of Dr.

13   Navarro's testimony.  To establish unavailability, VNUS need only show that it has been unable to

14   procure Dr. Navarro's testimony or attendance at trial through process or other reasonable means.

15   *See* Fed. R. Evid. 804(a)(5).  VNUS had no reason to notice Dr. Navarro's deposition because

16   Defendants did not put Dr. Min's alleged independent invention at issue until after the close of fact

17   discovery.[41]  Accordingly, Defendants cannot be heard to complain that VNUS failed to procure his

18   deposition testimony.  *See* Defs.' Mot. No. 5 at 5.  Counsel for VNUS has attempted to contact Dr.

19   Navarro, who is outside the subpoena power of the Court, to request his attendance at trial and is

20   awaiting a response.[42]  Given the history of VNUS's prior suit against Diomed, however, Dr.

21   Navarro's voluntary appearance is unlikely, and in that case, he will be an unavailable declarant.

22

23   ───────────────
     [38] *See* Steenburg Decl. Ex. 39; Nguyen Decl. Exs. 21 (VNUS Complaint Against Diomed) and 22 (*VNUS v. Diomed* Case Docket).

24   [39] Nguyen Decl. Ex. 23 ('777 Litigation Trial Testimony – Day 2) at 125:21-126:13.

25   [40] *See* Nguyen Decl. Ex. 24 (Diomed Answer).

26   [41] *See* D.I. 152 (Stipulated Request and [Proposed] Order Pursuant to Civil L.R. 6-2 to Extend Certain Discovery Deadlines and Order Thereon, dated Nov. 20, 2009); Steenburg Decl. Ex. 44.

27   [42] *See* Nguyen Decl. Ex. 25 (The Vein Treatment Center webpage); ¶ 2.

28

1   Defendants' request for exclusion of his prior trial testimony therefore is premature.  Finally,

2   because Defendants have failed to explain the grounds for exclusion of any other testimony from

3   the '777 litigation, their motion should be denied.

4   **VI.     OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6**

5          biolitec seeks to prevent Julie Davis, VNUS's damages expert, from testifying to statements

6   included in a section of her supplemental expert report that biolitec insisted she submit.  Those

7   statements are fully consistent with the opinions Ms. Davis expressed in her original report, and all

8   Defendants have had ample opportunity to respond to them, including in their own supplemental

9   reports.  Accordingly, since it cannot show that Ms. Davis's supplementation was unjustified or that

10  it suffered any resulting unfair prejudice, biolitec's motion must be denied.

11         **A.     *Ms. Davis's Supplemental Report***

12         On April 2, 2010, Ms. Davis submitted an expert report on the issue of damages.[43]

13  Amongst other opinions expressed, Ms. Davis included a detailed analysis of the competitive

14  relationship of the parties.  Specifically, she opined that VNUS and Defendants are competitors in

15  the varicose vein treatment device market and cited a number of VNUS's     **REDACTED**

16                                           third-party market analyses in support of that opinion.[44]

17                                     **REDACTED**

18

19

20          Accordingly, VNUS objected to the references to the agreement on the grounds that it

21  had been unavailable to both VNUS and Ms. Davis at the time Ms. Davis submitted her opening

22  report.[47]  Following a meet and confer, VNUS agreed to withdraw its objection provided that

23

24         [43] Steenburg Decl. Ex. 6.

25         [44] *Id.* at 45-46.

26         [45]                **REDACTED**

27         [46] *See, e.g,* Nguyen Decl. Ex. 27 (Suh/Buche email exchange).

    [47] Steenburg Decl. Ex. 48 at 2.

28

1    Defendants permitted Ms. Davis to render opinions regarding                **REDACTED**

2                                                                               biolitec's counsel agreed to this

3    proposal so long as "any additional opinion offered by Ms. Davis is summarized in a supplemental

4    written expert report."[49]

5            Pursuant to this compromise, Ms. Davis included her opinions regarding

6            **REDACTED**                 in her supplemental expert report dated July 30, 2010.[50]

7    Ultimately, she concluded that the **REDACTED** is not instructive to the reasonable royalty analysis in

8    this case.  Among the reasons for her conclusion was that "unlike VNUS and the Defendants in this

9    case,                  **REDACTED**                                    This opinion was wholly

10   consistent with the opinion expressed in Ms. Davis's opening report that VNUS and Defendants are

11   competitors.  As required by Fed. R. Civ. P. 26(a)(2)(b), Ms. Davis also stated the basis for that

12   opinion, including the fact that she had reviewed documents depicting VNUS and Defendants as

13   competitors.                      **REDACTED**

14

15

16           Pursuant to the November 2009 Stipulation and Order, all Defendants had the opportunity

17   to submit supplemental rebuttal reports following Ms. Davis's final report.  Under that order,

18   Defendants' supplemental rebuttal reports could analyze: (1) VNUS's supplemental expert report

19   related to damages (*i.e.*, Ms. Davis's July 30 report containing the statements in dispute) and (2) the

20

21

22   —————————————

23       [48] *Id.* at 1.

         [49] *Id.*

24       [50] Nguyen Decl. Ex. 28 (Davis Supplemental Expert Report) at 2-3.  While biolitec included
     certain pages from Ms. Davis's supplemental report in the Declaration of Charles T. Steenburg,
25   they did not include the entirety of her opinions regarding the TVS/Endolaser license.  VNUS
     accordingly attaches the entirety of those opinions as Nguyen Decl. Ex. 28.

26       [51] Nguyen Decl. Ex. 28 (Davis Supplemental Expert Report) at 2-3.

27       [52] Nguyen Decl. Exs. 28 (Davis Supplemental Expert Report) at 3 and 29 (Stuckwisch
     Rebuttal Expert Report - List of Materials Cited).

28

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1    parties' supplemental summary sales and financial data.[53]  Ms. Stuckwisch was the only expert to

2    submit a supplemental rebuttal report, which she served on August 13, 2010.[54]

3          **B.**    ***Defendants Are Not Unfairly Prejudiced by Ms. Davis's Statements***

4          biolitec's assertion that Ms. Davis should not be permitted to testify regarding the

5    statements made in her supplemental report must be rejected because (1) biolitec itself insisted that

6    Ms. Davis provide the supplementation; (2) the opinions she expressed in her supplemental report

7    are the same as those she previously expressed; and (3) biolitec cannot demonstrate any unfair

8    prejudice.

9          In order to exclude evidence under Fed. R. Civ. P. 37(c)(1), a court must find a violation of

10   Fed. R. Civ. P. 26(a) that is both unjustified and prejudicial.  *Dukes v. Wal-Mart*, 222 F.R.D. 189,

11   195-96 (N.D. Cal. 2004) (refusing to exclude expert testimony because opposing party had failed to

12   establish sufficient prejudice).  Courts have emphasized that they will not exclude testimony absent

13   a finding of unfair prejudice.  *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002);

14   *see also DR Sys., Inc. v. Eastman Kodak Co.*, No. 08-cv-669, 2009 WL 3756765, at *14 (S.D. Cal.

15   Nov. 9, 2009).

16         In this case, the justification for Ms. Davis's supplementation is clear: despite repeated

17   requests,        **REDACTED**        license to which her statements are directed after

18   she submitted her original report.[55]  In an attempt to compromise, VNUS withdrew its objection to

19   TVS's late production on the condition that Ms. Davis would be allowed to opine on   **REDACTED**

20         While biolitec insisted that any such opinions be memorialized in a written report, both

21   TVS and biolitec nonetheless agreed to this proposal.  Accordingly, in her supplemental report, Ms.

22   Davis set out her opinion that        **REDACTED**

23                                   She also explained how she came

---

[53] D.I. 152 (Stipulated Request and [Proposed] Order Pursuant to Civil L.R. 6-2 to Extend Certain Discovery Deadlines and Order Thereon, dated Nov. 20, 2009).

[54] Nguyen Decl. Ex. 29 (Stuckwisch Supplemental Expert Report).

[55] Nguyen Decl. Ex. 27 (Suh/Buche email exchange).

[56] Steenburg Decl. Ex. 48 at 2.

20

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC

1  to this conclusion.  More than simply being "justified," the disputed statements were included in

2  Ms. Davis's report because of an agreement with Defendants that biolitec now wishes to back away

3  from.

4       Moreover, the statements in dispute do not constitute new or different opinions than those

5  expressed in Ms. Davis's original report.  The conclusion that Defendants and VNUS are

6  competitors within the same market and that they accordingly sell to the same customers is fully

7  consistent with the originally expressed opinion that VNUS and Defendants compete in the

8  varicose vein treatment market.[57]  The documents cited in support of this conclusion had all been

9  produced to Defendants and cannot be said to be "new" to them.          **REDACTED**

10                              The cases cited by biolitec to justify exclusion,

11  which all dealt with attempts to introduce completely new opinions and theories, are simply

12  inapplicable to these facts.[58]

13      Finally, regardless of the justification for or novelty of the disputed statements, biolitec

14  simply cannot show any unfair prejudice arising from Ms. Davis's testimony.  This is because all

15  Defendants and their experts had ample opportunity to respond to those statements in their

16  supplemental rebuttal reports.  The November 2009 Stipulation and Order expressly provided that

17  those reports could include an analysis of anything in Ms. Davis's supplemental report, including

18  the statements now in dispute.[59]  Ultimately, biolitec chose not to include a response in Ms.

19  Stuckwisch's report.  However, it cannot be said to have been unfairly prejudiced by two sentences

20  included in a written report provided over two months before trial.  Accordingly, biolitec's motion

21

22      [57] Steenburg Decl. Ex. 6 at 45-47; Nguyen Decl. Ex. 28 (Davis Supplemental Expert
    Report) at 3.

23      [58] *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 499 (9th Cir. 2009)
    (excluded declarations included "a new theory as to a key element of Plaintiffs' medical negligence
24  claim"); *Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 837-39 (W.D. Wisc.
    2009) (excluded report addressed a new theory of infringement for the first time and new opinions
25  as to the meaning of claim terms); *Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003) (excluded expert
    report addressed a "new matter"); *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-civ-09546,
    2007 WL 4157163, at *9 (S.D.N.Y. Nov. 16, 2007) (court struck multiple supplemental reports
26  totaling hundreds of pages that were produced for the first time at and after the expert's deposition).

27      [59] D.I. 152 (Stipulated Request and [Proposed] Order Pursuant to Civil L.R. 6-2 to Extend
    Certain Discovery Deadlines and Order Thereon, dated Nov. 20, 2009).

28

1  to exclude the last two sentences and related footnotes on page 3 of Ms. Davis's expert report

2  should be denied.

3  **VII.    RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 7**

4       VNUS does not oppose this motion.

5  **VIII.   CONCLUSION**

6       For all of the above reasons, Defendants' Motions *in Limine* Nos. 2 through 6 should be

7  denied.

8   Dated:    September 7, 2010                    ATTORNEYS FOR PLAINTIFF
                                                  TYCO HEALTHCARE GROUP LP d/b/a
9                                                 VNUS MEDICAL TECHNOLOGIES

10

11                                    By:   /s/ Diem-Suong T. Nguyen
                                            Matthew B. Lehr (Bar No. 213139)
12                                          Diem-Suong T. Nguyen (Bar No. 237557)
                                            David J. Lisson (Bar No. 250994)
13                                          Chung G. Suh (Bar No. 244889)
                                            Jeremy Brodsky (Bar No. 257674)
14                                          DAVIS POLK & WARDWELL LLP
                                            1600 El Camino Real
15                                          Menlo Park, CA  94025
                                            (650) 752-2000/(650) 752-2111 (fax)
16                                          mlehr@dpw.com
                                            nguyen@dpw.com
17                                          dlisson@dpw.com
                                            gsuh@dpw.com
18                                          jbrodsky@dpw.com

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OMNIBUS OPPOSITION AND RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 2-7 –
CASE NOS. C08-03129 MMC & C08-04234 MMC